## No. 25-5724

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

———————

NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY
JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ
HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R.
HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES
DORSAINVIL, and G.S.,
*Plaintiffs-Appellees*,

vs.

KRISTI NOEM, in her official capacity as Secretary of Homeland
Security, UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, and UNITED STATES OF AMERICA,
*Defendants-Appellants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA, NO. 3:25-CV-01766-EMC
HONORABLE EDWARD M. CHEN

———————

## RESPONSE IN OPPOSITION TO DEFENDANTS-
## APPELLANTS' MOTION FOR A STAY PENDING APPEAL AND
## MOTION FOR AN IMMEDIATE ADMINSITRATIVE STAY

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

Ahilan T. Arulanantham (SBN 237841)
  *Counsel of Record*
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW
AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

*Attorneys for Plaintiffs-Appellees*

Additional Counsel for Plaintiffs-Appellees

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# TABLE OF CONTENTS

STANDARD OF REVIEW ................................................................ 3

ARGUMENT ................................................................................ 4

    I.    THE COURT SHOULD DENY DEFENDANTS'
        MOTION FOR FAILURE TO COMPLY WITH
        RULE 8 .......................................................................... 4

    II.   THE SUPREME COURT STAY OF THE
        DISTRICT COURT'S POSTPONEMENT ORDER
        DOES NOT ESTABLISH DEFENDANTS'
        LIKELIHOOD OF SUCCESS NOW ............................. 5

    III.  DEFENDANTS' UNEXPLAINED REQUEST
        FOR AN IMMEDIATE "ADMINISTRATIVE"
        STAY IS MERITLESS ................................................. 8

    IV.  DEFENDANTS FAIL TO ESTABLISH ANY OF
        THE FACTORS REQUIRED FOR A STAY
        PENDING APPEAL ...................................................... 10

        A.   DEFENDANTS DO NOT SHOW A
            "STRONG LIKELIHOOD" OF SUCCESS
            ON THE MERITS. ............................................. 10

        B.   DEFENDANTS FAIL TO SHOW
            IRREPARABLE HARM, AND THE
            EQUITIES FAVOR PLAINTIFFS ..................... 19

        C.   THE DISTRICT COURT GRANTED
            APPROPRIATE RELIEF. .................................. 21

    V.   EVEN IF A STAY WERE WARRANTED, IT
        SHOULD NOT EXTEND TO HAITIANS OR TO
        VENEZUELAN TPS HOLDERS WHO
        ALREADY RECEIVED TPS-RELATED
        DOCUMENTS .............................................................. 25

CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf,*
　952 F.3d 999 (9th Cir. 2020) ...................................................... 3

*Am. Trucking Ass'ns v. Frisco Transp. Co.,*
　358 U.S. 133 (1958) .................................................................. 17

*Biden v. Texas,*
　142 S. Ct. 926 (2022) .................................................................. 8

*Biden v. Texas,*
　597 U.S. 785 (2022) .................................................................. 22

*CASA de Md., Inc. v. Trump,*
　355 F. Supp. 3d 307 (D. Md. 2018) ........................................... 13

*CASA, Inc. v. Noem,*
　2025 WL 1907378 (D. Md. July 10, 2025) ........................... 13, 21

*Centro Presente v. DHS,*
　332 F. Supp. 3d 393 (D. Mass. 2018) ........................................ 13

*China Unicom (Ams.) Ops. Ltd. v. FCC,*
　124 F.4th 1128 (9th Cir. 2024)................................................... 12

*Cooper v. Harris,*
　581 U.S. 285 (2017) .................................................................... 4

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
　603 U.S. 799 (2024) .................................................................. 25

*Dep't of Com. v. New York,*
　588 U.S. 752 (2019) .................................................................... 8

*Dickens v. Ryan,*
　744 F.3d 1147 (9th Cir. 2014) ................................................... 10

*Gebhardt v. Nielsen*,
  879 F.3d 980 (9th Cir. 2018) .................................................... 15

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) .................................................. 10

*Haitian Evangelical Clergy Ass'n. v. Trump*,
  2025 WL 1808743 (E.D.N.Y. July 1, 2025) .......................... 21, 23

*HECA v. Trump*,
  No. 1:25-cv-01464 (E.D.N.Y. July 1, 2025) ............................... 13

*Immigr. Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ........................................ 21, 22, 23

*Immigr. Defs. Law Ctr. v. Noem*,
  2025 WL 2017247 (9th Cir. July 18, 2025) ............................... 19

*McNary v. Haitian Refugee Ctr.*,
  498 U.S. 479 (1991) ....................................................... 13, 14, 15

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ....................................................... 4

*Nakka v. USCIS*,
  111 F.4th 995 (9th Cir. 2024) ............................................. 14, 15

*Nat'l TPS All. v. Noem*,
  2025 WL 2233985 (N.D. Cal. July 31, 2025) ............................. 21

*Nat'l TPS All. v. Noem*,
  2025 WL 2487771 (9th Cir. Aug. 29, 2025) ....................... *passim*

*Nat'l TPS All. v. Noem*,
  773 F. Supp. 3d 807 (N.D. Cal. 2025) ....................................... 21

*Nat'l Urb. League v. Ross*,
  977 F.3d 698 (9th Cir. 2020) ................................................. 4, 9

*Noem v. Nat'l TPS All.*,
  145 S. Ct. 2728 (2025) ......................................................... 2, 22

iv

*Patel v. Garland,*
    596 U.S. 328 (2022) .................................................. 14

*Proyecto San Pablo v. I.N.S.,*
    189 F.3d 1130 (9th Cir. 1999) .................................. 14

*Ramos v. Nielsen,*
    321 F. Supp. 3d 1083 (N.D. Cal. 2018) ..................... 13

*Ramos v. Wolf,*
    975 F.3d 872 (2020) ................................................ 13

*Reno v. Cath. Soc. Servs., Inc.,*
    509 U.S. 43 (1993) .................................................. 14

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) .................................. 23

*Saget v. Trump,*
    375 F. Supp. 3d 280 (E.D.N.Y. 2019)......................... 13

*Texas v. United States,*
    40 F.4th 205 (5th Cir. 2022).................................... 21

*Trump v. Boyle,*
    145 S. Ct. 2653 (2025) .......................................... 5, 6

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ................................ 7, 19, 22, 24

*Trump v. Wilcox,*
    145 S. Ct. 1415 (2025) .......................................... 5, 6

*U.S. v. Texas,*
    143 S. Ct. 51 (2022) ................................................. 8

*Vasquez Perdomo v. Noem,*
    148 F.4th 656 (9th Cir. 2025)..................................... 1

*In re Zermeno-Gomez,*
    868 F.3d 1048 (9th Cir. 2017) .................................. 10

**Statutes**

5 U.S.C. § 706(2) ............................................................ 24

8 U.S.C. § 1252(f)(1) ........................................... 21, 22, 23

8 U.S.C. § 1254a(b)...................................................*passim*

8 U.S.C. § 1254a(c) ........................................................ 15

28 U.S.C. § 1292............................................................ 21

**Other Authorities**

Fed. R. App. P. 8(a) ........................................................ 4

Fed. R. Civ. P. 11(b)(2), (3) ........................................... 2

## INTRODUCTION

DHS Secretary Noem's extraordinary decision purporting to vacate the TPS extension for Venezuela was truly unprecedented in both its form and content. It was the first vacatur of a TPS extension in the 35-year history of the TPS statute. And it was the single largest act of de-documentation in U.S. immigration history, as it laid the groundwork to strip 600,000 people of the right to live and work in this country.

Given the importance of the issues at stake and the real possibility of Supreme Court review, Defendants' stay application warrants oral argument and a detailed written opinion about whether the district court's decision should be stayed. *Cf. Vasquez Perdomo v. Noem*, 148 F.4th 656, 677−78 (9th Cir. 2025).

After hearing argument, this Court should find Defendants' request meritless, for several reasons. Two apply at the threshold. First, Defendants did not seek a stay pending appeal from the district court, but rather a stay pending a decision to seek appeal. This Court recently denied another stay request for precisely that reason. Second, Defendants' request for an "immediate administrative stay" fails because they provide no argument for it, and in any event, such a stay would not be "administrative," as it would alter the status quo.

Beyond those threshold defects are substantive flaws.

1

Defendants rely principally on the Supreme Court's decision staying preliminary relief, asserting "the district court's decision rested on the same grounds as the earlier order that the Supreme Court stayed." Mot. at 1. That is false. *Cf.* Fed. R. Civ. P. 11(b)(2), (3). One of the three grounds for relief here was not litigated at the preliminary relief stage. *See infra* Section IV.A.2.c. Moreover, the form of relief granted—"set aside" under APA Section 706, rather than "postpone[ment]" under APA Section 705—was not previously at issue. The district court explained why that distinction matters for purposes of a stay, *see* Dkt. 296[1] ("Stay Order") at 2−4, but Defendants simply ignore those arguments. Moreover, the Supreme Court's unreasoned two-paragraph order did not order a stay "while the litigation unfolds." Mot. 5. Its stay applied only to the district court's preliminary relief order during the pendency of Defendants' appeal from it. *See Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2729 (2025) (mem.). That period has ended now that there is final judgment on the merits, and the stay order provides no reasons to support applying its rationale to the final judgment.

With respect to likely success, Defendants' jurisdictional objections based on 8 U.S.C. § 1254a(b)(5)(A) recycle arguments this Court recently rejected. *See Nat'l TPS All. v. Noem*, 2025 WL

---

[1] All citations to "Dkt." refer to No. 25-cv-1766 (N.D. Cal.).

2487771, at *10 (9th Cir. Aug. 29, 2025). Defendants note that decision could be vacated, but it has not been; and besides, Defendants offer no reasons for this Court to deviate from its well-reasoned analysis there. Nor do they respond to the most serious defects in their position, including that it would bar judicial review over (other) blatantly unlawful TPS decisionmaking—like a TPS extension for 50 years—and that it cannot be reconciled with the statute's other uses of the word "determination."

On the merits, Defendants offer scarcely any rebuttal to the district court's opinion, including its detailed findings regarding the insufficiency—and inconsistency—of the reasons provided for the vacatur, and a separate finding that the Secretary did not consult with other agencies prior to making her country-conditions assessment, as the statute requires.

Finally, Defendants advance arguments against the scope of relief that seek to rewrite existing law. Those arguments cannot justify emergency relief on the shadow docket.

## STANDARD OF REVIEW

A stay requires proving "irreparable injury is the more ... likely outcome" "during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citation omitted). Defendants also must make "a strong showing [they are] likely to succeed," *id.* at 1006 (citation omitted),

3

overcoming a "highly deferential" abuse-of-discretion standard, *Microsoft Corp. v. Motorola, Inc.,* 696 F.3d 872, 881 (9th Cir. 2012), as well as the clear error standard for factual findings, where this Court "affirm[s] ... so long as [a finding] is 'plausible'" "even if another [finding] is equally or more so." *Cooper v. Harris*, 581 U.S. 285, 293, 309 (2017). A stay is inappropriate where, as here, "the status quo would be seriously disrupted." *Nat'l Urb. League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020).

## ARGUMENT

## I.   THE COURT SHOULD DENY DEFENDANTS' MOTION FOR FAILURE TO COMPLY WITH RULE 8

Federal Rule of Appellate Procedure 8 requires that a party seeking a stay pending appeal "must ordinarily move first in the district court." Fed. R. App. P. 8(a). Defendants have not done so. Rather, Defendants sought a stay below only "to permit [them] to complete the process of seeking authorization from the Solicitor General to pursue an appeal." Dkt. 281 at 4. Nor have Defendants "state[d] any reasons given by the district court" for denying their stay request. Fed. R. App. P. 8(a)(2)(A)(ii).

Here, the district court issued a separate decision denying Defendants' motion for stay, which Defendants ignore. *See* Stay Order. This Court recently denied a stay motion for failure to comply with Rule 8 in a virtually identical situation. *See* Order at

4

1–2, *Vasquez Perdomo v. Noem*, No. 25-4312 (9th Cir. July 16, 2025), ECF No. 9 (denying motion for stay pending appeal where Defendants "sought a [district court] stay only 'to allow the Solicitor General to determine whether to appeal and seek a stay pending appeal'" and "[n]either the [stay] motions nor any supplement thereto contain the statements regarding the district court's actions required"). It should do so here as well.

## II. THE SUPREME COURT STAY OF THE DISTRICT COURT'S POSTPONEMENT ORDER DOES NOT ESTABLISH DEFENDANTS' LIKELIHOOD OF SUCCESS NOW

The Supreme Court's unreasoned two-paragraph stay order at an earlier stage of this case does not justify a stay now. "[A] stay-stage decision does not control here," Mot. 16, for several reasons.[2]

First, the Supreme Court stay of the district court's postponement order lacks any reasoned explanation, distinguishing this case from *Trump v. Boyle*, 145 S. Ct. 2653 (2025), on which Defendants rely. Mot. 5. *Boyle* treated another shadow docket order—*Trump v. Wilcox*, 145 S. Ct. 1415 (2025)—as "control[ling]" for purposes of "exercise [of] equitable discretion in like cases," even as it acknowledged that *Wilcox* was "not conclusive as to the

---

[2] The recent stay orders in other TPS cases that Defendants cite did not treat the Supreme Court's stay order in this case as controlling; but instead rested on reasons specific to those cases. Mot. 5–6.

5

merits." 145 S. Ct. at 2654. The order in *Wilcox* is fundamentally different from the prior stay order here because it contained two pages of substantive reasoning as to why equitable factors warranted a stay. *Wilcox* reasoned "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Id.* (quoting *Wilcox*, 145 S. Ct. at 1415); *see also Wilcox*, 145 S. Ct. at 1415 ("the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation" justified a stay). *Wilcox* also distinguished among  different kinds of federal officers. *Id.* (discussing Federal Reserve Board officers). In contrast, the stay order here provided no analysis, whether regarding the merits or any equitable factors. All that can be gleaned from that order is that the Supreme Court rejected Defendants' position regarding the TPS statute's jurisdiction-stripping provision, because it "expressly stated that its order was without prejudice to a challenge based on invalidation of TPS documentation already issued before the vacatur decision." Stay Order 3−4 n.2.

Second, the Supreme Court's "decision[] addressed [an] order[] issued under §705, not §706." Mot. 17. Section 705 of the APA differs from final relief under Section 706 for purposes of stay litigation, as the district court explained. *See* Dkt. 279 ("MSJ

Order") at 33; Stay Order 2–4. Before the Supreme Court, Defendants argued Section 705 authorizes postponement of agency action only to the extent necessary to "prevent irreparable injury," and that Plaintiffs had failed to show the requisite irreparable harm. Dkt. 144-2 at 32–33. Again, because the Supreme Court provided no explanation for its decision, it is impossible to know whether it credited these arguments. *See, e.g., Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025) (explaining stay may be granted based on "a threshold error" without assessing whether the opposing party "will prevail on the underlying merits"). Thus, it is not possible to discern what, if anything, the Court thought about the underlying merits or the propriety of granting relief under Section 706.

Third, the district court's final judgment finds Plaintiffs likely to succeed on their APA challenge to the Venezuela termination on a substantive ground that was not before the Supreme Court when it stayed the postponement order: that DHS failed to comply with the statutory requirement to "consult[] with appropriate agencies" when assessing country conditions, as the TPS statute requires. 8 U.S.C. § 1254a(b)(3)(A); MSJ Order 50–53. Defendants cannot establish likelihood of success on this claim—which provides a wholly independent ground on which to affirm the district court's final judgment as to the Venezuela termination—based on a stay order that never considered it.

7

Fourth, the district court's final judgment rests on facts uncovered after the Supreme Court's stay. Stay Order 4–6 (describing extensive development of record and influence of new facts on judgment). For example, Plaintiffs' claim that Secretary Noem's reasoning was pretextual was based in significant part on facts uncovered *after* the Supreme Court issued its stay. MSJ Order 45–46, 54–58. The Supreme Court has held that such facts matter. *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) ("If judicial review is to be more than an empty ritual, it must demand something better than the explanation offered for the action taken in this case."). As a result, the Supreme Court's stay of an interim order issued at an earlier stage cannot predict the likelihood of success on appeal of a final judgment based on a robust factual record. Indeed, if Defendants were always entitled to stays of district court orders dictating some aspect of immigration policy on a nationwide basis, they would have won stays in cases where they did not. *See, e.g.*, *Biden v. Texas*, 142 S. Ct. 926 (2022) (mem.) (denying stay request) and *U.S. v. Texas*, 143 S. Ct. 51 (2022) (mem.) (same).

## III. DEFENDANTS' UNEXPLAINED REQUEST FOR AN IMMEDIATE "ADMINISTRATIVE" STAY IS MERITLESS

The Court should deny Defendants' request for an immediate "administrative" stay for three reasons. *First*, Defendants advance

8

literally no argument for that request. They state they seek it in the title to their motion, and then repeat the request in its very last line. Because Plaintiffs have had no notice as to what reasons Defendants might advance for this request, it would violate basic principles of fairness to grant it.

*Second*, the arguments Defendants advanced for the stay itself do not support an administrative stay. Defendants did not seek an administrative stay when Plaintiffs won preliminary relief, *see* Motion for Stay Pending Appeal of Postponement Order, *NTPSA I*, No. 25-2120 (Apr. 4, 2025), ECF No. 3.1, nor did they seek it in the appeal they took from an order granting preliminary relief in the other recent TPS case before this Court. *See* Motion for Stay Pending Appeal, *NTPSA v. Noem (NTPSA II)*, No. 25-4901, (Aug. 8, 2025), ECF No. 6.1.

*Third*, the stay Defendants seek would not be "administrative." "[A]n administrative stay 'is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits.'" *Ross*, 977 F.3d at 700−01 (citation omitted); *see also id.* at 702 (the "touchstone is the need to preserve the status quo," because the "weighing [of] the *Nken* factors" occurs later). For purposes of litigation concerning stays and other forms of preliminary relief, the status quo is "the last uncontested status which preceded the pending controversy."

9

*GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1210 (9th Cir. 2000) (citation omitted). Here, the last uncontested status is the January 17, 2025 extension of TPS for Venezuela, which is what the district court's order restored. The proposed "administrative" stay would thus upend, the status quo.

## IV. DEFENDANTS FAIL TO ESTABLISH ANY OF THE FACTORS REQUIRED FOR A STAY PENDING APPEAL

### A. Defendants Do Not Show a "Strong Likelihood" of Success on the Merits.

#### 1. Defendants Are Not Likely to Succeed on the Vacatur Authority Claim.

Barely three weeks ago, this Court held "Plaintiffs are likely to succeed on the merits" of their vacatur authority claim. *NTPSA,* 2025 WL 2487771, at *10–15. Defendants act as if this Court's prior opinion does not exist, apparently because they have decided it is "likely to be vacated as moot." Mot. 7–8 n.2 (citing *In re Pattullo*, 271 F.3d 898, 900–01 (9th Cir. 2001) (granting motion to vacate memorandum disposition where case became moot *before* decision issued)). But the decision whether to vacate an opinion based on post-publication mootness is not for Defendants to make. It "is within [the Court's] discretion based on equity." *Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (citation omitted). "[U]nless and until overruled by a body competent to do so," this Court's opinion "constitutes binding authority 'which must be followed.'" *In re*

10

*Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (citation omitted).

Even if this Court's opinion were not binding, Defendants offer no reason to reconsider it. As this Court carefully explained then, the TPS statute's jurisdiction-stripping provision does not bar review of Plaintiffs' vacatur authority claim, because "[t]he extent of statutory authority granted to the Secretary is a first order question that is not a 'determination … with respect to the designation, or termination or extension' of a country for TPS." *NTPSA,* 2025 WL 2487771, at *10. Defendants also have no response to the (even more) extreme assertions of agency power their interpretation of the statute permits. Under their view, DHS could grant TPS for fifty years, or use it as a tool of trade negotiation with countries independent of humanitarian considerations. Nor can they reconcile their view with how the statute actually uses the words "determine[s]" and "determination" in the covered provisions at issue. *See* 8 U.S.C. 1254a(b)(3). Rather than attempt to answer the most serious flaws with their position, Defendants repeat arguments this Court rejected. Mot. 6−10.

On the merits, this Court already found "the TPS statute does not authorize the vacatur of a prior grant of TPS." *NTPSA,* 2025 WL 2487771, at *15. "Congress has provided mechanisms for designating, extending, and terminating TPS, and the agency is not

11

free to disregard them by relying on a vague invocation of 'inherent authority.'" *Id.* *13. Defendants invoke "inherent authority" again, but cite only caselaw this Court already determined supports Plaintiffs. *Compare* Mot. 10−12 (citing *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128 (9th Cir. 2024) *and Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81 (D.C. Cir. 2014)), *with NTPSA*, 2025 WL 2487771, at *12−16 (explaining *China Unicom* and *Ivy Sports Medicine* show that the Secretary lacks vacatur authority). Accordingly, they fail to show likely success.

### 2. Defendants Are Not Likely to Succeed on Plaintiffs' Other APA Claims.

The district court held that—even if the Secretary had vacatur authority—both the vacatur and termination violated the APA because the vacatur rested on factual and legal errors, was pretextual, and failed to consider obvious alternatives, and the termination failed to comply with statutory requirements for interagency consultation and country conditions review. MSJ Order 44−53. Defendants fail to establish likelihood of success on any of these claims, each of which provides an independent basis to affirm.

### a. The District Court Correctly Found Jurisdiction Over These Claims.

The district court explained why the TPS statute does not strip federal courts of jurisdiction over these claims. MSJ Order 24−30. Every court to consider Section 1254a(b)(5)(A) has concluded

12

it does not bar federal courts from ensuring the agency conforms to basic APA requirements.[3] Courts have consistently rejected Defendants' view because, as the district court explained, it contravenes the statute's plain text, which provides that "determination" refers to the Secretary's conclusion that a nation satisfies certain country conditions requirements relevant to TPS decisionmaking. Order 28–29.

The district court's focus on the word "determination" comports with Supreme Court and Ninth Circuit precedent reading jurisdiction-stripping statutes barring review of "determinations" to preserve review over claims alleging defects in agency decisionmaking processes. *See McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 492 (1991) ("collateral" challenge to agency practices

---

[3] *See Saget v. Trump*, 375 F. Supp. 3d 280, 330–33 (E.D.N.Y. 2019); *Centro Presente v. DHS*, 332 F. Supp. 3d 393, 405–409 (D. Mass. 2018); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 319–322 (D. Md. 2018); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1101–08 (N.D. Cal. 2018); *CASA, Inc. v. Noem*, 2025 WL 1907378, at *10 (D. Md. July 10, 2025); *HECA v. Trump*, No. 1:25-cv-01464 (E.D.N.Y. July 1, 2025), Dkt. 63; *NTPSA II.* The lone exception, which Defendants falsely describe as a holding of "this Court," is the now-vacated decision in *Ramos*. Mot. 8. Even there, all three judges agreed that federal courts retain jurisdiction to review collateral challenges to practices and procedures for TPS decisionmaking; they disagreed about whether Plaintiffs' challenges were collateral. *Ramos v. Wolf*, 975 F.3d 872, 892 (2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023).

cognizable despite statute barring review of "determination[s]"); *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 55−58 (1993) (applying *McNary* to find jurisdiction over challenges to practice governing legalization applications); *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1138 (9th Cir. 1999) (challenge to pre-adjudication practices cognizable).

Defendants rely on *Patel v. Garland*, 596 U.S. 328, 338 (2022) to suggest Section 1254a(b)(5)(A)'s "judicial-review bar is broad" because it uses "any" and "with respect to," Mot. 6−7, but the statute in *McNary* used "respecting," whereas the statute in *Patel* did *not* use "determination." Further, Plaintiffs' interpretation gives "any" meaning: there are many "determinations" so labeled in subsection (b) to which "any" refers. In any event, the Court in *Patel* barred review only of factual claims, not legal ones, and relied on other context clues not present here. *Patel*, 596 U.S. at 339 (citing amendment history of 8 U.S.C. § 1252(a)(2)(D)). And this Court has read *Patel* not to foreclose challenges to agency policies and procedures. *Nakka v. USCIS*, 111 F.4th 995, 1003, 1009 (9th Cir. 2024).

Defendants also ignore that when Congress wants to bar all judicial review, it uses far clearer language. *See id.* at 1005 (describing "the *McNary* blueprint"). The TPS statute does not bar review of "all causes arising under" it, or "all questions of law or

14

fact." *Id.; cf. Gebhardt v. Nielsen*, 879 F.3d 980, 984−85 (9th Cir. 2018) (statute specifying decisions were in Secretary's "sole and unreviewable discretion" barred review of all but constitutional claims). The mere use of "any" or "with respect to" does not suffice to strip review more broadly than did the statute in *McNary*.

Finally, the stripping provision does not apply to Plaintiffs' APA challenge to the vacatur decision for an additional reason: that challenge concerns the propriety of the reasons Secretary Noem gave for vacating the January 17 extension, which were based entirely on alleged problems with consolidating TPS registration processes. MSJ Order 45. Registration is addressed in subsection l254a(c) of the statute (specifically, 8 U.S.C. §l254a(c)(l)(A)(iv) and (B)), whereas the stripping provision bars only determinations under "this subsection," i.e., subsection l254a(b). Thus, even if the stripping provision covered virtually every aspect of TPS decision-making with respect to designations, extensions, and terminations, its plain terms do not cover disputes over registration, which is the subject of this distinct APA claim.

### b. The district court correctly held the vacatur was arbitrary and capricious

The district court held that, even if the Secretary had vacatur authority, *this* vacatur decision was arbitrary and capricious because it rested on factual and legal errors, was pretextual, and

failed to consider obvious alternatives. MSJ Order 44−49. Defendants cannot show likely success on this claim, because, as this Court has already noted, the district court was correct. *See NTPSA*, 2025 WL 2487771 at *16 n.12 ("[T]he district court correctly held that the basis for the vacatur was predicated on the Secretary's factual and legal misapprehension as to the operation of the TPS statute."). Evidence submitted on summary judgment confirmed it. MSJ Order 44−46. Secretary Noem justified the vacatur primarily based on alleged "confusion" caused by the extension's consolidated filing process. *Id.* But the evidence showed consolidation *reduced* confusion—and DHS knew it. *Id.* And even if consolidation were confusing, the obvious solution was to deconsolidate, not to vacate entirely. But the Secretary arbitrarily failed even to consider that option. *Id.* 46 ("When an agency rescinds a prior policy, its reasoned analysis must consider the alternatives that are within the ambit of the existing [policy].") (cleaned up) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020)). Contrary to Defendants' assertions, Mot. 15, the Secretary never asserted national security or national interest reasons as justification for the vacatur. MSJ Order 44 (citing 90 Fed. Reg. 8805, 8807 (Feb. 3, 2025)).

Defendants' only response to this is to point to the Secretary's statement that the vacatur serves her desire to arrogate for *herself*

16

"an opportunity for informed determinations regarding the TPS designations and clear guidance." Mot. 14 (citing 90 Fed. Reg. at 8807). But, to the extent this constitutes an independent reason at all, Defendants cannot defend the vacatur on this basis. The district court found, as this Court also previously recognized, that one of the reasons the Secretary issued the vacatur rested on her basic misunderstanding of how TPS extensions work: *NTPSA*, 2025 WL 2487771, at *16 n.12; *see* MSJ Order 54−58. Moreover, the district court found her desire for "an opportunity for informed determinations" amounted simply to "the desire to totally undo Secretary Mayorkas's decision." MSJ Order 59. That is not a valid basis for exercising implied vacatur authority even where such authority exists. *See Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145−46 (1958).

### c. The district court correctly held the termination decision failed to comply with the TPS statute

The district court also held the Secretary's termination decision violated the APA—a claim Plaintiffs never made when seeking preliminary relief, and which the Supreme Court has never considered. Defendants badly mischaracterize this aspect of the district court's ruling. It did not review the Secretary's national interest finding. *Compare* Mot. 12 (asserting the district court "second-guess[ed] whether a TPS termination is in the 'national

17

interest'"), *with* MSJ Order 36, 53 (describing Plaintiffs' statutory claim that the TPS statute does not permit termination on national interest grounds and declining to resolve it). Rather, the court held the Secretary's termination decision violated the APA because she "failed to comply with the statutory directive to consult with appropriate agencies in deciding whether to terminate" and to "conduct a meaningful country conditions review." MSJ Order 50–53. Defendants pretend the district court made up these requirements. Mot. 14. It did not. The TPS statute provides:

> The [Secretary], *after consultation with appropriate agencies* of the Government, *shall review the conditions in the foreign state* … and shall determine whether the conditions for such designation under this subsection continue to be met.

8 U.S.C. 1254a(b)(3)(A) (emphases added).

The district court found, as a factual matter, "that the Secretary violated the TPS statute because she effectively made the decision to terminate *before* consultation with any government agency" and because the post-decision consultation that occurred "failed to include *any* information on country conditions." MSJ Order 50–51. Defendants ignore these findings, which may be reversed only for clear error, and point to no record evidence to the contrary. They cannot establish a strong likelihood of success on this claim.

18

**B.    Defendants Fail to Show Irreparable Harm, and the Equities Favor Plaintiffs.**

Even if Defendants could show likelihood of success on merits, their motion fails because they cannot show they will be irreparably harmed by this district court's final judgment. Defendants argue the Supreme Court's prior stay decision is dispositive on this factor. Not so. While this Court has found the Supreme Court "necessarily held that the Government would face irreparable harm if the district court's postponement order were to remain in effect," *NTPSA*, 2025 WL 2487771, at *8, it does not necessarily follow that the district court's *final* judgment imposes irreparable harm. As described above, the Supreme Court may have found irreparable harm based on a "threshold error" regarding the propriety of interim relief under Section 705. *See CASA, Inc.*, 606 U.S. at 860 (finding irreparable harm where district court lacked authority to issue requested relief, regardless of underlying merits of claims). If so, its stay order says nothing about whether Defendants would be irreparably harmed by an order issued pursuant to APA Section 706.

Further, the Ninth Circuit has recently reaffirmed that "the mere existence of the Executive Branch's desire to enact a policy is not sufficient to satisfy the irreparable harm prong." *Immigr. Defs. Law Ctr. v. Noem*, 2025 WL 2017247, at *5 (9th Cir. July 18, 2025).

19

Defendants have submitted no other evidence that the ongoing presence—and lawful status and work authorization—of Venezuelan TPS holders harms anyone. *See, e.g.,* MSJ Order 17 (Defendants submitted "zero" evidence that Venezuelan TPS holders constitute security threat). Accordingly, they have failed to establish irreparable harm.

In contrast, both the district court and this Court have found that "[a] stay of the judgment would irreparably harm the individual plaintiffs and the thousands of members of NTPSA who would immediately face the prospect of a return to countries that are so dangerous that even the State Department advises against travel (not to mention loss of the ability to work, drive, and so forth)." Stay Order 6–7 (citing *NTPSA*, 2025 WL 2487771, at *16–17). Moreover, the public interest weighs against a stay because Venezuelan TPS holders "make significant and important economic and social contributions, both to the United States as a whole and to the local communities of which they are a part. At the same time, there is no substantiated evidence that their continued presence in this country pursuant to TPS poses any threat to this country." *Id*.

20

### C.   The district court granted appropriate relief.

#### 1.   The Order Does Not Violate 8 U.S.C. 1252(f)(1).

Defendants assert 8 U.S.C. § 1252(f)(1) bars APA relief, Mot. 15−17, but every court to consider the issue, including this Court, the Fifth Circuit and at least eight district courts, disagrees.[4] Relief under the APA is not injunctive for purposes of Section 1252(f)(1). *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 989−90 (9th Cir. 2025) ("*ImmDef*");*NTPSA*, 2025 WL 2487771, at *11[5] (Section 1252(f)(1) does not apply to APA relief); *Texas v. United States*, 40 F.4th 205, 219–20 (5th Cir. 2022) (same); *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 826 (N.D. Cal. 2025) (collecting cases); *Haitian Evangelical Clergy Ass'n. v. Trump*, 2025 WL 1808743, at *6−7 (E.D.N.Y. July 1, 2025) (same, in TPS case); *CASA, Inc. v. Noem*, 2025 WL 1907378, at *11 (D. Md. July 10, 2025) (same); *Nat'l TPS All. v.*

---

[4] Contrary to Defendants' assertions, Mot. 16 & n.5, the district court *did* consider the statutory text, MSJ Order 30, and Plaintiffs did *not* "concede" the court's order is injunctive under Section 1252(f)(1). Plaintiffs opposed Defendants' assertion that they need not comply with the order because it was automatically stayed by Federal Rule of Civil Procedure 62(a) on the ground that an order can be analogous to an injunction for purposes of 28 U.S.C. § 1292 and Rule 62, even though it does not "enjoin or restrain" under Section 1252(f)(1). *Compare ImmDef*, 145 F.4th at 983–85 *with id.* at 989–90.

[5] Defendants take issue with this Court's reliance in *National TPS Alliance* on pre-*Aleman-Gonzalez* decisions, Mot. 17, but this Court's holding does not depend on the analysis of these cases.

*Noem*, 2025 WL 2233985, at \*11–12 (N.D. Cal. July 31, 2025) (same). Although Defendants fail to acknowledge it, the Supreme Court has reserved the question. *Biden v. Texas*, 597 U.S. 785, 801 n.4 (2022). For that reason alone it cannot support "emergency" relief now.

The Supreme Court also recently recognized the distinction between injunctions and vacaturs, in affirming that its limits on nationwide injunctions did not apply to vacaturs under the Administrative Procedure Act, *CASA, Inc.*, 606 U.S. at 847 n.10, citing 5 U.S.C. § 706(2); *see also id.* at 869 (Kavanaugh, J., concurring) (stating "plaintiffs may [still] ask" for "set aside" relief "under the Administrative Procedure Act").

The district court rightly concluded that a vacatur under the APA is "a less drastic remedy" than an injunction, and not barred by Section 1252(f)(1). MSJ Order 33 n.10 (*citing Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). A vacatur "does not compel or restrain further agency decision making"; and unlike injunctions, allows for more limited available relief—"re-establish[ing] the status quo absent the unlawful agency action." MSJ Order 31. *See also ImmDef*, 145 F.4th at 990 (recognizing that an "'extraordinary remedy of injunction' … directs the conduct of a party, and does so with the backing of its full coercive powers") (citation omitted); *Nat'l TPS All.*, 773 F. Supp. 3d at 827–829

22

(recognizing injunctions operate on a person, may apply to non-parties, and restrain even lawful conduct, which vacaturs do not); *Haitian Evangelical Clergy Ass'n*, 2025 WL 1808743, at *7 (set aside orders "are different in nature from injunctions, which prohibit an agency from taking a certain action at all, ever").

Defendants take issue with the district court's reliance on this Court's decisions in *NTPSA* and *ImmDef*, which concerned relief pursuant to Section 705 rather than Section 706. Mot. 16−17. But the features of Section 705 that render it not injunctive—in particular that it operates directly upon an agency's rule and is not directed at persons—apply equally to Section 705 postponements and Section 706 set-asides. And, as the district court noted, "a ruling as to stays under § 705 applies equally, and indeed with even more force, to a final judgment of vacatur setting aside agency action." MSJ Order 33 ("[A] vacatur under §706 is, if anything, less akin than postponement under §705 to the equitable remedy of a preliminary injunction."); *ImmDef*, 145 F.4th at 989–90 (recognizing Congress made no mention of limiting APA claims in §1252(f)(1) and instead only explicitly limited injunctive relief).

Finally, Defendants do not contend that Section 1252(f)(1) forecloses declaratory relief. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010). That alone bars a complete stay of the decision below.

23

### 2.    The Requested Relief is Not Overbroad.

Defendants waived any argument that the remedy for a violation under Section 706 is something other than universal vacatur of the unlawful agency action, because they did not challenge it when opposing summary judgment, and instead assumed it was the "only" valid remedy. Dkt. 199 at 6–7 ("Courts may only set aside the underlying agency decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'").

Waiver aside, Defendants cite *no* case for the extreme proposition that "[u]niversal vacatur [] falls outside of what is authorized by the APA." Mot. 21. That is not the law now, and therefore cannot justify relief on the shadow docket. Indeed, when the Supreme Court recently created new limits on universal injunctions, it explicitly declined to limit the reach of universal relief under the APA. *CASA, Inc.*, 606 U.S. at 847 n.10 (citing 5 U.S.C. § 706(2) ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."); *see also id.* at 869 (Kavanaugh, J., concurring).

Given that, the district court properly recognized vacatur as the "default remedy" under Section 706. *See E. Bay Sanctuary Covenant*, 993 F.3d at 681 ("[W]hen a reviewing court determines

24

that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.") (citation omitted); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830−31 (2024) (Kavanaugh, J., concurring) ("When a federal court concludes that an agency adjudicative order [or any other agency action] is unlawful, the court must vacate that order."); *see also* Amicus Brief at 2, *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, No. 23-40605 (5th Cir. Sept. 9, 2025), ECF No. 303 ("[V]acatur for unlawful agency action continues to be the "default remedy" in this Circuit.").

## V. EVEN IF A STAY WERE WARRANTED, IT SHOULD NOT EXTEND TO HAITIANS OR TO VENEZUELAN TPS HOLDERS WHO ALREADY RECEIVED TPS-RELATED DOCUMENTS

Even if a stay pending appeal were warranted, it should not apply to: (1) the partial vacatur of Haiti's TPS designation or (2) TPS holders who received TPS-related documents under the January 17, 2025, extension of Venezuela's designation prior to DHS's publication of the termination notice for that designation. MSJ Order 42−43. Defendants "do not seek to stay" those aspects. ECF 8.1 at 4.

## CONCLUSION

This Court should hold argument and then deny Defendants' motion.

Dated:  September 15, 2025          Respectfully submitted,

By: */s/* *Ahilan T. Arulanantham*
    Ahilan T. Arulanantham
    Stephany Martinez Tiffer

    Emilou MacLean
    Michelle (Minju) Y. Cho
    Amanda Young

    Jessica Karp Bansal (SBN 277347)
    jessica@ndlon.org
    Lauren Michel Wilfong
    lwilfong@ndlon.org
    NATIONAL DAY LABORER
    ORGANIZING NETWORK
    1030 S. Arroyo Parkway, Suite 106
    Pasadena, CA 91105
    Telephone: (626) 214-5689

    Eva L. Bitran (SBN 302081)
    ebitran@aclusocal.org
    ACLU FOUNDATION
    OF SOUTHERN CALIFORNIA
    1313 West 8th Street
    Los Angeles, CA 90017
    Telephone: (213) 977-5236

    Erik Crew
    ecrew@haitianbridge.org
    HAITIAN BRIDGE ALLIANCE
    4560 Alvarado Canyon Road, 1H
    San Diego, CA 92120
    Telephone: (949) 603-7411

    *Attorneys for Plaintiffs-Appellees*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with Circuit Rules 27-1(1)(d) and 32-3 because it contains 5,598 words, including words manually counted in any visual images, and excluding the parts of the document exempted by Rules 27(a)(2)(B) and 32(f) of the Federal Rules of Appellate Procedure. The brief also complies with the typeface and typestyle requirements of Rules 32(a)(5)–(6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 15, 2025          Respectfully submitted,

                                           By: */s/ Ahilan T. Arulanantham*
                                           Ahilan T. Arulanantham

27