No. 25-5724
(assigned to Judges Wardlaw, Mendoza, and Johnstone)

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**NATIONAL TPS ALLIANCE, et al.**,

Appellees,

v.

**KRISTI NOEM, et al.**,

Appellants.

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-1766

**REPLY IN SUPPORT OF EMERGENCY MOTION
FOR STAY PENDING APPEAL**

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

WILLIAM H. WEILAND
*Acting Assistant Director*

LAUREN BRYANT
CATHERINE ROSS
ERIC SNYDERMAN
JEFFREY M. HARTMAN
*Trial Attorneys*
Office of Immigration Litigation
Civil Division, U.S. Dep't of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

## INTRODUCTION

The Supreme Court has already held that the Secretary's vacatur and termination of Venezuela's TPS designation should remain in effect pending this litigation, through and including certiorari and Supreme Court review. *Noem v. Nat'l TPS Alliance*, --- S. Ct. ---, 2025 WL 1427560 (May 19, 2025) (*NTPSA I*). As a technical matter, that stay applied to the district court's grant of *preliminary* relief, whereas the district court has now granted *final* relief. But that makes no difference whatsoever to the stay factors: The government remains likely to succeed on the merits, principally because the TPS statute expressly bars judicial review of plaintiffs' claims, especially their "new" APA claim challenging the Secretary's termination determination. 8 U.S.C. §1254a(b)(5)(A). And the equitable balancing continues to favor the government, because the new order (like the earlier one) severely constrains the government's ability to enforce the immigration laws, whereas the beneficiaries of inherently temporary TPS status have no entitlement to remain in this country. Since nothing material has changed, the Supreme Court's stay order "squarely control[s]" at this subsequent stage of the same case. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). This Court should not force the government to go back to the Supreme Court to seek the *same* relief in the *same* case on the *same* grounds.

Plaintiffs lead with a baseless procedural objection, claiming the government failed to seek a stay from the district court. Not so. The government filed a stay motion

1

below that requested a full stay pending appeal, and the district court denied that request on the merits. There is no exhaustion obstacle here.

On the substance of the stay factors, plaintiffs cannot evade the binding force of the Supreme Court's earlier order. They complain that the Supreme Court did not give reasons, but that is not an excuse for ignoring the Court's conclusion—that the government had established both a likelihood of success and that the equitable factors tipped in its favor. *See Nken v. Holder*, 556 U.S. 418, 534 (2009). There is no possible construction of that order that would permit a different result now. Nor does it matter that the district court relied on ostensibly new evidence or developed a new APA theory—the government's cross-cutting submission to the Supreme Court last time was that the judicial review bar foreclosed all of this. That is equally true here. Indeed, the new theory (namely, that the Secretary did not sufficiently consult before making her determination) is even more obviously barred than the original theory (namely, that the Secretary lacked statutory authority to vacate a previously issued TPS extension).

The government recognizes, of course, that this Court upheld the district court's preliminary relief in a panel opinion. But that decision did not eliminate the stay, which the Supreme Court ordered would remain in place until it could consider whether to grant review. The only thing that has changed is that the district court has converted its earlier order into a final judgment. From the perspective of the stay factors, that does not alter the fundamental dynamic—the Secretary's determinations must remain

in effect at least until the Supreme Court is given the opportunity to review the district court's rationale on the merits. This Court should therefore grant the stay.

## ARGUMENT

### I. Plaintiffs' Procedural Objection Is Meritless.

At the outset, plaintiffs argue that the government failed to comply with Fed. R. App. P. 8(a) by supposedly only requesting a limited stay from the district court. Opp. 4-5. That is simply wrong. The government filed a "Motion for a Stay Pending Appeal" below, after the district court entered final judgment, and specifically requested that the district court "enter a stay pending appeal." Dkt. 281 at 3. The district court recognized that motion for what it was, and denied it. Dkt. 296 at 7 ("the government's motion to stay pending appeal is denied"). This request has thus been fully exhausted.

### II. The Supreme Court's Stay Order Controls.

There is no need for this Court to reweigh the stay factors, because the Supreme Court has already done so—in this very case. The result of that weighing was a stay of the district court's original order pending appeal, with only one Justice noting dissent. That decision "inform[s] how a court should exercise its equitable discretion in like cases." *Boyle*, 145 S.Ct. at 2654; *see, e.g.*, Dkt. 19, *Nat'l TPS Alliance v. Noem*, No. 25-4901 (9th Cir. Aug. 20, 2025) (granting stay pending appeal). And again, this is not just a "like" case; it is the *same* case. Denying a stay here would defy the Court. *See NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2665 (2025) (Gorsuch, J., concurring in part) (further "interventions" following earlier stay order "should have been unnecessary"

3

because "[w]hatever their own views, judges are duty-bound to respect the hierarchy of the federal court system created by the Constitution and Congress" (cleaned up)).

None of plaintiffs' reasons for ignoring the Supreme Court order passes muster. *First*, they object that the Court's order "lack[ed] any reasoned explanation." Opp. 5. But the Justices have recently reminded lower courts that "even probabilistic holdings," such as the "top-line conclusion" that a stay is warranted, must be followed. *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part).

*Second*, plaintiffs speculate that perhaps the Supreme Court issued the prior stay on the ground that "Plaintiffs had failed to show the requisite irreparable harm" for interim relief under §705 of the APA. Opp. 7. But the government made that argument last time only in support of a fallback position that the district court erred by granting *universal* relief. *See* Stay App. No. 24A1059, *Nat'l TPS All. v. Noem* (May 1, 2025), at 32-33. And the Court did not stay only the universal aspect of the district court's order; it stayed the entire thing. The Court thus necessarily concluded that the government was likely to succeed on the merits across the board—and if that was the Court's judgment then, it remains equally true now.

*Third* and *fourth*, plaintiffs observe that, at final judgment, the district court rested on one new APA theory (that the Secretary failed to consult with other agencies when assessing country conditions) and some new facts (ostensibly supporting the APA claim that the Secretary's determination was pretextual). Opp. 7-8. But that misses the point. The government's stay application contended that the APA claims were foreclosed by

4

the judicial-review bar, which expressly precludes "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. §1254a(b)(5)(A); *see* Stay App. No. 24A1059, *Nat'l TPS All. v. Noem* (May 1, 2025), at 16-20. That review bar applies equally to the new APA theory, and renders irrelevant any additional facts supporting the APA claims.[1] Indeed, those APA claims challenging the termination of Venezuela's designation are even more plainly barred than the original challenge to the vacatur of the previous Secretary's extension. The former claims fall squarely within the category of claims that this Court held precluded in *Ramos v. Wolf*, 975 F.3d 872, 889 (9th Cir. 2020), *vacated on rehearing en banc*, 59 F.4th 1010, 1011 (9th Cir. 2023). And this panel held only that the latter claim (relating to vacatur) escaped the bar. *See Nat'l TPS Alliance v. Noem*, — F.4th —, 2025 WL 2487771, at *10 (9th Cir. Aug. 29, 2025). There is thus no principled basis to distinguish the district court's prior order from its new one from the perspective of the Supreme Court's weighing of the stay factors.

In short, the Supreme Court considered the relevant issues in this case, and concluded that the Secretary's determinations should be given effect while the litigation plays out. That conclusion continues to control, and this Court should therefore put

---

[1] Plaintiffs' assertion that the record has significantly evolved since the Supreme Court's stay (Opp. 16) is also vastly overstated; plaintiffs cite only a declaration from their attorney summarizing Secretary Noem's rational decision-making process and a 2024 country conditions report. *See* Dkt. 166.

5

the stay back in place pending appeal from the final judgment. *Cf. DHS v. D.V.D.*, 145 S. Ct. 2153 (June 23, 2025) (enforcing earlier stay order in same case).

### III. The Government Has Established Its Entitlement to a Stay.

The Court need not independently evaluate the stay factors because the Supreme Court has already resolved the question of whether the Secretary's actions with respect to Venezuela should remain in place pending this litigation. But the government has shown an entitlement to relief under those factors too.

**A.** Starting with likelihood of success, the government has already explained why plaintiffs' claims are barred by the statute, which expressly precludes review of "*any determination* of the [Secretary] *with respect to* the designation, or termination or extension of a designation" of TPS. 8 U.S.C. §1254a(b)(5)(A) (emphasis added). Even without §1254a(b)(5)(A), the Secretary's country conditions and national interest determinations are not subject to APA review because they are discretionary judgments that are committed to agency discretion by law.

Plaintiffs respond by citing this panel's decision last month, which reasoned that their challenge to the Secretary's vacatur of the TPS extension could proceed despite the bar, since it turned on an antecedent question of statutory authority. Opp. 11 (citing *Nat'l TPS Alliance,* 2025 WL 2487771, at *10). The complete response is that, under the Supreme Court's order, that panel decision was neither the last word nor sufficient to dissolve the stay. The government was entitled to seek further review, from the en banc court or the Supreme Court, and advance its position that (i) the judicial-review

6

bar applies to this statutory dispute; and (ii) in any event, the panel misread the statute in view of background principles of administrative law, such that the Secretary does have statutory authority to vacate prior extensions, especially (as here) before they take effect. Assuming this Court reinstates the panel's contrary conclusions, the stay must nonetheless remain in force pending Supreme Court review.

As to the other APA claims—those challenging the Secretary's termination of Venezuela's designation—this panel did not conclude that those claims escaped the bar, and even plaintiffs admit that this Court in *Ramos* adopted a broader approach that would bar those claims. Opp. 13 n.3. Plaintiffs' contrary interpretation is untenable. Under their approach, even the Secretary's consideration of country conditions evidence and the adequacy of her discussions with other Executive officials could be subjected to judicial review, and courts could substitute their policy preferences for the Secretary's merely by demonstrating that she used a different process than her predecessor. That would completely read §1254a(b)(5)(A) out of the statute.

Even assuming reviewability, plaintiffs' APA challenges to the termination of Venezuela's designation are meritless. Plaintiffs represent that the district court did not review or override the Secretary's national-interest finding. Opp. 17-18. If not, that is the end of the matter: Venezuela's TPS must be terminated if the Secretary determines that permitting Venezuelan nationals to remain would be contrary to the "national interest." 8 U.S.C. § 1254a(b)(1)(C), (3)(A). Thus, any alleged procedural or substantive errors by the Secretary in evaluating country conditions were rendered harmless; the

7

unreviewed (and unreviewable) national-interest finding was independently dispositive. 5 U.S.C. § 706 (requiring courts to take account of harmless error in reviewing agency action); *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

In any event, the Secretary's supposed errors are nothing of the kind. Although the court found that the agency began initial drafting of Venezuela's TPS termination notice before the Secretary made a final decision, it made no finding that the Secretary's decision was finalized before she consulted with other relevant agencies. Op. 50-51; *see* Dkt. 104-4 at 222-223 (Secretary Rubio's Jan. 31, 2025, letter). And there is nothing wrong or unusual about agency staff preparing for multiple possible eventualities and decisions. The district court also questioned (Op. 50-51) the Secretary's reliance on country conditions evidence prepared in August 2024, but failed to articulate why Secretary Noem was precluded from relying on it in her February 1 termination. Finally, while plaintiffs continue to object that the Secretary had strong policy preferences upon assuming office (Opp. 18), there is nothing improper about her implementation of the Executive's policy preferences. Mot. 13-14; *see Dept' of Commerce v. New York*, 588 U.S. 752, 781 (2019).

**B.** Turning to the balance of harms, the Supreme Court's prior conclusion —implicit in its stay order—that it favored the government is not only still binding, but also correct. *See* Mot. 17-19. Plaintiffs speculate that "the Supreme Court may have found irreparable harm based on a 'threshold error' regarding the propriety of interim

relief under Section 705" (Opp. 19), but that contention makes no sense. The irreparable harm to the government was the barrier that the district court's order erected to the implementation of the government's immigration enforcement priorities: It forced the government to allow hundreds of thousands of aliens to remain in this country. Exactly the same is true here.

Plaintiffs argue that this Court's decision in *Immigration Defenders Law Center v. Noem*, 2025 WL 2017247 (9th Cir. July 18, 2025), rejects the principle that an order's interference with immigration enforcement qualifies as irreparable harm. Opp. 19-20. Just the opposite is true. In that case, this Court "acknowledge[d] the harms involved in denying the duly elected branches the policies of their choice," and determined that the government had "made a showing of irreparable harm." 2025 WL 2017247, at *13. The harms here are far more pronounced, given the significantly higher numbers of aliens affected by the district court's judgment.

On the other side of the scale, plaintiffs do not even try to argue that anything has changed—legally or factually—since the Supreme Court's earlier stay order. Opp. 20. It remains the case that TPS beneficiaries have no enduring immigration status and thus no cognizable interest in remaining in this country after the Secretary determined that the national interest favors termination of Venezuela's designation.

**C.** The impropriety of the relief ordered by the district court underscores the case for a stay pending appeal.

9

*First*, the court erred by granting sweeping relief despite 8 U.S.C. §1252(f)(1)'s prohibition on orders that enjoin or restrain the operation of the relevant provisions of the INA. Plaintiffs insist that the court's vacatur order does not "enjoin or restrain" operation of the TPS statute, seeking to distinguish an APA stay from an injunction. *See* Opp. 22-23. But in addition to ignoring the separate word "restrain," plaintiffs now ignore how the district court's subsequent order—treating its judgment as effective immediately under Fed. R. Civ. P. 62(c) by analogy to an "injunction"—contradicts that distinction. *See* Dkt. 304 at 1-3. Indeed, the government was ultimately ordered to "modify the [USCIS] website so that it accurately reflects that the Mayorkas extension remains in effect" and to "re-open the registration window for Venezuelans for at least twenty-four (24) hours . . . . within the next two business days." Dkt. 304 at 4. It is difficult to conceptualize that as anything other than an injunction—and it certainly illustrates how the judgment operates to "order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out [the TPS] provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). It was therefore impermissible.

*Second*, the district court's order is at minimum overbroad insofar as it grants universal vacatur. Plaintiffs insist that universal vacatur is the "default remedy" under the APA, but they cite no binding authority so holding. *See* Opp. 24-25. The Supreme Court did not resolve the question in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), but the Court's rationale emphasizing the historical limits on the equitable powers of federal courts shed light on the proper interpretation of the APA's remedial provisions.

10

*See* Mot. 21. Plaintiffs, meanwhile, do not address any of the government's points based on plain meaning, statutory context, and legislative history. *See* Mot. 19-21.[2]

## CONCLUSION

This panel has already determined that it believes at least some of plaintiffs' APA claims are reviewable and likely meritorious. Nonetheless, the Supreme Court has also determined that the interim state of affairs—until either Supreme Court review or denial of certiorari—is that the Secretary's actions must be given effect. In the posture of this motion, the latter determination is controlling, and the Court should thus grant a stay.

---

[2] Plaintiffs' argument that the government waived this point through boilerplate language describing the standard of review (Opp. 24) is disingenuous. The government could not have challenged the scope of relief at summary judgment, because the district court had not yet determined that *any* relief was appropriate.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
   *Deputy Assistant Attorney General*

WILLIAM H. WEILAND
   *Acting Assistant Director*

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
LUZ MARIA RESTREPO
   *Trial Attorneys*
  Office of Immigration Litigation
  U.S. Department of Justice
  P.O. Box 878, Ben Franklin Station
  Washington, DC 20044
  Telephone: (202) 532-4404
  Email: Jeffrey.M.Hartman@usdoj.gov

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Garamond type, and the motion contains 2,800 words in compliance with Ninth Circuit Rule 27-1(d).

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

Dated: September 16, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, counsel for Appellants electronically filed this reply with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system before 12:00pm PST as required by ACMS No. 9, and that service will be accomplished via the ACMS system.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation
