**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 17 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NATIONAL TPS ALLIANCE; MARIELA
GONZALEZ; FREDDY ARAPE RIVAS;
M.H.; CECILIA GONZALEZ HERRERA;
ALBA PURICA HERNANDEZ; E. R.;
HENDRINA VIVAS CASTILLO; VILES
DORSAINVIL; A.C.A.; SHERIKA
BLANC,

             Plaintiffs - Appellees,

  v.

KRISTI NOEM; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES OF
AMERICA,

             Defendants - Appellants.

No. 25-5724

D.C. No.
3:25-cv-01766-EMC
Northern District of California,
San Francisco

ORDER

Before: Kim McLane Wardlaw, Salvador Mendoza, Jr., and Anthony D.
Johnstone, Circuit Judges.

      On September 5, 2025, the district court granted summary judgment to

Plaintiffs, National TPS Alliance ("NTPSA") and individual Temporary Protective

Status ("TPS") holders, holding that Department of Homeland Security ("DHS")

Secretary Kristi Noem's vacatur and termination of Venezuela's TPS status

"exceeded the Secretary's statutory authority and was arbitrary and capricious, and

thus must be set aside under the Administrative Procedure Act ("APA")." *Nat'l*

*TPS Alliance v. Noem*, --- F. Supp. 3d. ---, 2025 WL 2578045, at *1 (N.D. Cal. Sept. 5, 2025).  More than 600,000 Venezuelan citizens living in the United States rely on the protections provided by Venezuela's TPS status.  The real people affected by the Secretary's actions are spouses and parents of U.S. citizens, neighbors in our communities, and contributing members of society who have "lower rates of criminality and higher rates of college education and workforce participation than the general population."  *Id.* at *35.  Vacating and terminating Venezuela's TPS status threw the future of these Venezuelan citizens into disarray, and exposed them to a substantial risk of wrongful removal, separation from their families, and loss of employment.  Congress did not contemplate such a result, and we decline to take the extraordinary step of staying the district court's order as the Government Defendants ("Government") request.

On March 31, 2025, the district court entered an order postponing Secretary Noem's decision to vacate prior DHS Secretary Alejandro Mayorkas's designation and extension of Venezuela's TPS status.  *See* Dkt. 93 (Order Granting Plaintiffs' Mot. to Postpone), *Nat'l TPS Alliance v. Noem*, No. 25-cv-01766 (N.D. Cal. Mar. 31, 2025).  The Government filed a notice of appeal of the March 31 order and also sought an emergency stay before our Court, which we denied.  *Nat'l TPS Alliance v. Noem*, 2025 WL 1142444, at *1 (9th Cir. Apr. 18, 2025).  The Government then filed an application for a stay in the Supreme Court, which the Court granted.

*Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728, 2728-29 (2025). The Court's order

provided:

> The application for stay presented to Justice Kagan and by her
> referred to the Court is granted. The March 31, 2025 order entered by
> the United States District Court for the Northern District of California,
> case No. 3:25-cv1766, is stayed pending the disposition of the appeal
> in the United States Court of Appeals for the Ninth Circuit and
> disposition of a petition for a writ of certiorari, if such a writ is timely
> sought. Should certiorari be denied, this stay shall terminate
> automatically. In the event certiorari is granted, the stay shall
> terminate upon the sending down of the judgment of this Court. This
> order is without prejudice to any challenge to Secretary Noem's
> February 3, 2025 vacatur notice insofar as it purports to invalidate
> EADs, Forms I-797, Notices of Action, and Forms I-94 issued with
> October 2, 2026 expiration dates. *See* 8 U.S.C. § 1254a(d)(3). Justice
> Jackson would deny the application.

*Id.*

We held argument on the merits on July 16, 2025, and on August 29, 2025,

we issued our opinion holding that Secretary Noem's vacatur of Venezuela's TPS

violated the APA given that "the TPS statute does not authorize the vacatur of a

prior grant of TPS." *Nat'l TPS Alliance v. Noem*, --- F.4th ---, 2025 WL 2487771,

at *15 (9th Cir. Aug. 29, 2025) (*NTPSA I*). We affirmed the district court's

postponement, under APA § 705, of that unauthorized action. The Government

did not file a petition for writ of certiorari.

Thereafter, on September 5, 2025, the district court granted summary

judgment to Plaintiffs on two APA claims: (1) a challenge to Secretary Noem's

vacatur of Venezuela's TPS extension, which was granted by Secretary Mayorkas

on January 17, 2025, and (2) a challenge to Secretary Noem's decision to terminate Venezuela's TPS status.  Plaintiffs did not move for summary judgment on their Equal Protection claims, and the district court denied the Government's motion for summary judgment on those claims.[1]  The Government filed a new notice of appeal of this judgment and moved before the district court for a stay of enforcement of the district court's judgment pending appeal, which the district court denied on September 10, 2025.  The Government then filed an emergency motion in our court on September 12, 2025, seeking an immediate administrative stay and a stay pending appeal of the district court's order.  We have jurisdiction under 28 U.S.C. § 1291, and for the reasons discussed herein, we deny the Government's motion.[2]

## I.    THE SUPREME COURT'S MAY 19, 2025 STAY

As a threshold matter, we reject the Government's argument that the Supreme Court's May 19, 2025 order staying the district court's March 31, 2025 postponement order "squarely control[s]" the outcome of its stay motion.  That argument ignores the text of the Supreme Court's order and the reality that the Supreme Court did not have the benefit of reviewing the now more fully developed

---

[1] The district court also granted summary judgment on Plaintiffs' claims related to Secretary Noem's vacatur and termination of Haiti's TPS status.  The Government does not seek a stay of that portion of the judgment.

[2] The Government moved for an administrative stay and a stay pending appeal, but did not distinguish between the two requests in briefing.  Because we deny the stay pending appeal, the request for an administrative stay is denied as well.

record on which the district court's summary judgment order relied.

*First*, the Supreme Court's stay order was textually limited to "[t]he March 31, 2025 order entered by the" district court, *Noem v. Nat'l TPS Alliance, et al.*, 145 S. Ct. 2728, 2728-29 (2025), and the appeal of that order to our court. As the district court recognized, that order "did not bar [the district court] from adjudicating the case on the merits and entering a final judgment issuing relief under… the APA." *Nat'l TPS Alliance v. Noem*, --- F. Supp. 3d. ---, 2025 WL 2578045, at *41, n.23 (N.D. Cal. Sept. 5, 2025).

*Second*, the Supreme Court granted the stay of the March 31, 2025 postponement order without explanation. The Government argues that the stay "predict[s] that the government would prevail on the merits." We do not read the stay order that way. As the Court recently reiterated, its "interim orders are not conclusive as to the merits." *Trump v. Boyle*, 606 U.S. ---, 145 S. Ct. 2653, 2653-54 (2025). And while the Court's interim orders do "inform how a court should exercise its equitable discretion in like cases," *Boyle*, 145 S. Ct. at 2654, they do so through analysis that is lacking in the stay order here. *Boyle* concerned the President's power to remove commissioners of the Consumer Products Safety Commission ("CPSC") subject to for-cause removal protections. A mere two months before *Boyle* was decided, in *Trump v. Wilcox*, the Supreme Court stayed an injunction preventing the President from removing officers of the National

Labor Relations Board ("NLRB") and Merit Systems Protection Board ("MSPB"). 145 S. Ct. 1415 (2025). *Boyle* held that the stay was "squarely controlled" by the short opinion in *Wilcox* given that both cases had substantially similar facts and turned on the same equities: "that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Boyle*, 145 S. Ct. at 2654 (quoting *Wilcox*, 145 S. Ct. at 1415).

Unlike the way in which the reasoning in *Wilcox* informed the decision in *Boyle*, the unreasoned stay order in this case provides no analysis to inform our view of the equities in this posture and on this record. We can only guess as to the Court's rationale when it provides none. Perhaps the Court found that the record was not developed sufficiently as to the issue of irreparable harm to the Plaintiffs. Perhaps it was concerned about our jurisdiction. Therefore, without more, we cannot say that the Court's May 19, 2025 order "squarely control[s]" our decision on a later, distinct emergency stay motion, presented in a different procedural posture and on a different record.

*Third*, this is an appeal from a final order of judgment of a materially different case, based on a fully developed record. This judgment is a set-aside of agency action under APA § 706, not a mere postponement. Moreover, neither we, nor the Supreme Court, had the benefit of discovery when we reviewed the district

court's order postponing the Secretary's vacatur. The record before us today is different in several material respects from the one before the district court in March. *See* Dkt. 296 (Order Denying Defendants' Mot. to Stay) at 3, *Nat. TPS Alliance v. Noem*, No. 25-cv-01766 (N.D. Cal. Sept. 10, 2025) (summarizing evidence elicited in discovery and distinguishing the record the Supreme Court considered in May from the record upon which the district court based its summary judgment order). In short, discovery has revealed that DHS ran a barebones process, "acting with unprecedented haste and in an unprecedented manner… for the preordained purpose of expediting termination of Venezuela's TPS" status. 2025 WL 2578045, at *29. Neither we nor the Supreme Court had the benefit of reviewing this evidence when the Government first sought an emergency stay of the district court's March 31 postponement order.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Government raises largely the same challenges to our jurisdiction that we rejected in *NTPSA I*. First, the Government argues that 8 U.S.C. § 1254a(b)(5)(A) bars judicial review of "*any* determinations—that is, determinations of whatever kind—*with respect to* TPS terminations." As we have explained, "[t]he extent of statutory authority granted to the Secretary is a first order question that is not a 'determination … with respect to the designation, or termination or extension' of a country for TPS." *NTPSA I*, at *10. We reject the

Government's argument that *NTPSA I* "is likely to be vacated as moot… so it should not control the Court's assessment of the government's likelihood of success in this appeal."

The Government also reasserts its argument that 8 U.S.C. § 1252(f)(1) bars our review of the Secretary's actions. Our circuit has already squarely resolved this issue, *see Imm. Def's v. Noem*, 145 F.4th 972, 989 (9th Cir. 2025), and we decline to revisit it today. Although some Justices have expressed doubts as to whether the remedy issued in this case under the APA is barred by Section 1252(f)(1), *see United States v. Texas*, 599 U.S. 670, 690-92, 695-701 (2023) (Gorsuch, J. concurring), the Court has yet to resolve this question. There are very good reasons to read Section 1252(f)(1) to permit "challenges to actions that fall outside of a statutory grant of authority." *NTPSA I*, at *11.

We have jurisdiction to review the Secretary's actions and consider the following factors in deciding the Government's motion: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The burden of demonstrating that these factors weigh[] in favor of a stay [lies] with the

proponent" of the stay. *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (per curiam).

## III.   LIKELIHOOD OF SUCCESS

### A.   First APA Claim

As we previously held, the Government's argument that it has "inherent authority" to reconsider Venezuela's TPS extension is predicated on a clear misapprehension of our circuit's case law and is irreconcilable with the text and purpose of the TPS statute. *See NTPSA I*, at *12 (distinguishing the FCC's inherent authority to revoke telecommunications certificates from the Secretary's inability to revoke a TPS designation or extension because "the statutory framework for the issuance of telecommunications certificates… provides [for] no time limitation at all, [which] 'is a factor that weighs in favor of an implied power of revocation.'") (quoting *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1148 (9th Cir. 2024)) (emphasis removed). To hold that the Government could simply vacate any designation or extension of a prior TPS designation on the whims of shifting political winds would undermine Congress's careful choice to balance the "predictability and stability" of TPS status "with temporal limits." *Id.* at *14, n.9.

Separately, the district court found that Secretary Noem's vacatur, if she had such authority, was arbitrary and capricious. The Government does not

meaningfully engage with the district court's conclusion that a primary rationale for Secretary Noem's vacatur—that "vacatur [was] warranted to untangle the confusion" of consolidating the 2021 and 2023 TPS designations—was squarely contradicted by evidence that the consolidations were "not novel, did not engender confusion, and [were] not 'thin' in explanation." *Nat'l TPS Alliance v. Noem*, --- F. Supp. 3d ---, 2025 WL 2578045, at *27 (quoting 90 Fed. Reg. 8805, at 8807).

Discovery revealed that effectively none of DHS's normal procedures was followed with respect to the vacatur and termination of Venezuela's TPS status. For example, a 2020 Governmental Accountability Office ("GAO") Report details "the general process that DHS has long followed when a TPS designation is subject to periodic review." *Id.* at *4. Specifically, "DHS's practice is to collect four documents to inform each TPS decision," including "a country conditions report compiled by USCIS," "a memo with a recommendation from the USCIS Director to the DHS Secretary," "a country conditions report compiled by the State Department," and "a letter with a recommendation from the Secretary of State to the Secretary of DHS." *Id.* at *4-5. DHS typically receives input from "other agencies or other entities" and "may hold briefings or meetings on TPS reviews, both internally and externally." *Id.* at *5-6. Yet the government's "draft of the vacatur decision was begun before Secretary Noem was confirmed as DHS secretary," "[j]ust four days" into the second Trump administration. *Id.* at *7.

Secretary Noem finalized the vacatur decision and began pressuring staff to terminate Venezuela's TPS status *before* receiving any input from the Department of State, the Secretary of State, or USCIS. *Id.* at *7-8.

When DHS finally did "belatedly" seek input from the State Department, Secretary Rubio sent a "one-and-a-half page letter" recommending termination of TPS for Venezuela which "failed to include *any* information on country conditions in Venezuela." *Id.* at *30, 7-8. USCIS's recommendation memo did cite country conditions evidence, but inexplicably relied on the exact report that Secretary Mayorkas had cited as necessitating the extension of TPS status for Venezuela just two weeks earlier. *Id.* at *8. That memo "did *not* explain how USCIS could rely on the Biden Administration country conditions report – which led Secretary Mayorkas to *extend* TPS for Venezuela – to conclude that conditions had improved to such an extent that TPS should be terminated." *Id.* Significantly, this sudden reversal of "DHS's established practices for TPS decision-making" was made "without providing any explanation for that reversal." *Id.* at *31.

Indeed, the district court found that the reasons given for the Secretary's decision were entirely pretextual. The district court found that DHS made its vacatur and termination decisions first and searched for a valid basis for those decisions second. *See id.* at *7 (explaining that DHS attempted to create post-hoc rationalizations for the vacatur *after* a decision had already been made by

instructing staff to "'focus on any improvements in Venezuela,' implicitly to advance and support termination of Venezuela's TPS."). In fact, before a vacatur decision was even finalized, DHS was already "preparing to terminate Venezuela's TPS" even though no "country conditions analysis was conducted." *Id.* The Government ultimately failed to provide "any evidence substantiating" its position that "there are notable improvements in several areas such as the economy, public health, and crime that allow for these nationals to be safely returned to their home country." *Id.* at *10. And the evidence it did submit undermined its argument that the vacatur was necessary to avoid confusion caused by merging the 2021 and 2023 TPS designations. *Id.* at *27 ("[E]vidence that the *government* submitted in conjunction with the summary judgment proceedings demonstrates that the Biden Administration consolidated the process for the 2021 and 2023 TPS holders precisely to *avoid* confusion.").[3]

Nor does the Government point to any evidence that "Venezuelan TPS holders constitute a threat to national security." *Id.* at *10. And, the mere conclusory statement that "the Secretary's TPS terminations rested on reasoned decision making based on her review of relevant country conditions evidence" falls far short of the "strong showing" of a likelihood of success on the merits that we

---

[3] The Secretary apparently failed to recognize that 2021 TPS holders were necessarily 2023 TPS holders, such that consolidating the two designations would avoid confusing, overlapping processes.

require. *Nken*, 556 U.S. at 426. The record strongly supports the district court's conclusion that the Secretary's actions were "preordained." 2025 WL 2578045, at *29. The Government has not made a sufficient showing to obtain a stay of the district court's order.

B.     Second APA Claim

Plaintiffs also argue that the Secretary's termination decision violated the APA. The Government's motion does not meaningfully distinguish between Plaintiffs' APA claims. The Government argues that "the district court… erroneously concluded that it had jurisdiction to review and second-guess whether a TPS termination is in the 'national interest' of the United States" and the district may not "substitute its own policy judgment for that of the agency."

The Government's argument is contradicted by the record. The district court found that the Secretary failed to "consult[] with appropriate agencies of the Government" or to "review the conditions in the foreign state" as required by 8 U.S.C. § 1254a(b)(3)(A). Uncontradicted evidence established that the Secretary effectively decided to terminate Venezuela's TPS status before consulting with any government agency and before reviewing any country conditions evidence. 2025 WL 2578045, at *7-8.

The Government also points to no evidence that Secretary Noem's termination was based on any national security interest, and the Federal Register

13

publication does not reflect such a rationale for the termination. *Id.* at *22 (finding that "the Secretary has not asserted national interest whatsoever in justifying her vacatur decisions").

The Government is not likely to succeed on the merits of its second APA claim.

## IV.    REMAINING *NKEN* FACTORS

Mere weeks ago, we found that Plaintiffs would suffer irreparable harm absent postponement of the Secretary's actions, and that the balance of the equities favored Plaintiffs. *NTPSA I*, at *16-18. With the benefit of a more developed record, these conclusions are only strengthened.

As the district court found, the Government "provide[d] *zero evidence* – or argument – [of] irreparable injury." Dkt. 296 (Order Denying Defendants' Mot. to Stay) at 3, *Nat. TPS Alliance v. Noem*, No. 25-cv-01766 (N.D. Cal. Sept. 10, 2025). That failure is "difficult to disregard" and "should matter." *Id.* In its emergency motion, the Government points to no evidence of irreparable harm and merely recycles its argument that the Supreme Court's May 19 order already resolved this issue. The Government contends that "removal alone cannot constitute the requisite irreparable injury to justify a stay and the possibility of family separation is an unfortunate possible consequence of *any* removal proceeding." But as we explained, the irreparable harm in this case is not removal in a vacuum, it is

14

"[w]rongful removal," which brings with it "fears of family separation, detention, and deportation" to a country that "is rated by the U.S. State Department as a 'Level 4 Do Not Travel' country." *NTPSA I*, at *17, 20.

We similarly see no reason to disturb our holding that the balance of the equities heavily favors Plaintiffs.

## V.    SCOPE OF RELIEF

Lastly, we reject the Government's argument that the relief ordered by the district court is overbroad.  As we have already explained, it is impossible to structure relief on an individual basis or to impose any relief short of nationwide set asides under APA § 706 of Secretary Noem's vacatur and termination of Venezuela's TPS status.  *Id.* at *20.

## VI.    CONCLUSION

The Government's Motions for a Stay Pending Appeal and an Immediate Administrative Stay are **DENIED**.  The Court shall set an expedited briefing schedule by separate order on the merits of this appeal.