No. 25-5724
(assigned to Judges Wardlaw, Mendoza, and Johnstone)

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NATIONAL TPS ALLIANCE, et al.,

Appellees-Plaintiffs,

v.

KRISTI NOEM, et al.,

Appellants-Defendants.

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-1766

BRIEF FOR APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

WILLIAM H. WEILAND
*Acting Assistant Director*

LAUREN BRYANT
CATHERINE ROSS
ERIC SNYDERMAN
JEFFREY M. HARTMAN
*Trial Attorneys*
Office of Immigration Litigation
Civil Division
U.S. Dep't of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4404
Jeffrey.M.Hartman@usdoj.gov

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION...................................................4

ISSUES PRESENTED ........................................................................4

STATEMENT OF THE CASE ..........................................................5

    A.   The TPS Statute ...............................................................5

    B.   Secretary Mayorkas's Venezuela TPS Designations .................7

    C.   Secretary Noem's Venezuela TPS Determinations....................8

    D.   Secretary Mayorkas's Haiti TPS Determinations ...................11

    E.   Secretary Noem's Haiti TPS Determinations ...........................11

    F.   The Supreme Court Permitted Secretary Noem's Venezuela TPS Determinations to Take Effect....................................................12

SUMMARY OF ARGUMENT .................................................14

STANDARD OF REVIEW....................................................16

ARGUMENT ...............................................................................18

I.   THE TPS STATUTE BARS JUDICIAL REVIEW OF PLAINTIFFS' APA CLAIMS ...............................................................................18

    A.   The TPS Statute Bars All of Plaintiffs' Claims.........................19

    B.   At Absolute Minimum, the TPS Statute Bars Plaintiffs' Remaining APA Claims...........................................................24

i

II. SECTION 1252(F)(1) PRECLUDES RELIEF UNDER 5 U.S.C. §706(2) ............................................................................................ 33

III. THE SECRETARY PROPERLY EXERCISED HER INHERENT AUTHORITY TO RECONSIDER HER PREDECESSOR'S TPS ACTIONS. .................................................................................... 39

    A.    The Secretary has Inherent Authority to Revoke or Reconsider a TPS Designation. ................................................................. 39

    B.    The District Court's Analysis Relies on an Erroneously Narrow Reading of the Statute. ..................................................... 45

IV. PLAINTIFFS' OTHER APA CLAIMS ALSO FAIL ......................... 50

    A.    The District Court Abused its Discretion by Considering Extra-Record Evidence. ............................................................... 51

    B.    The Secretary's Venezuela Vacatur was not Arbitrary and Capricious. ................................................................................ 55

    C.    The Secretary's Decision to Terminate Venezuela's TPS Designation was Proper. .......................................................... 63

    D.    The Secretary's Partial Vacatur of Haiti's 2024 TPS Extension was not Arbitrary and Capricious. .......................................... 69

V. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING UNIVERSAL RELIEF .................................................. 70

CONCLUSION ........................................................................................ 75

BRIEF FORMAT CERTIFICATION

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

## CASES

*Al Otro Lado v. EOIR,*
    138 F.4th 1102 (9th Cir. 2025) ............................................................ 38

*Albertson v. FCC,*
    182 F.2d 397 (D.C. Cir. 1950) ............................................................ 41

*Garland v. Aleman Gonzalez,*
    596 U.S. 543 (2022) ….. ..................................................23, 33, 34, 37

*Amgen, Inc. v. Smith,*
    *357 F.3d 103 (D.C. Cir. 2004)* ............................................................ *25*

*Ali v. Ashcroft,*
    346 F.3d 873 (9th Cir. 2003) ............................................................. 38

*Ali v. Gonzales,*
    421 F.3d 795 (9th Cir. 2005) ............................................................. 39

*Arlington Heights v. Metro. Hous. Dev. Corp.,*
    *429 U.S. 252* (1977) ............................................................................. 51

*Bd. of Governors v. MCorp Fin., Inc.,*
    502 U.S. 32, 42 (1991) ........................................................................ 32

*Belville Mining Co. v. United States,*
    999 F.2d 989 (6th Cir.1993) ............................................................... 40

*Biden v. Texas,*
    597 U.S. 785 (2022) ..................................................................... 35, 36

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.,*
    464 U.S. 89 (1983) ......................................................................... 60-61

*Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*,
    426 F.3d 1082 (9th Cir. 2005) ................................................................ 60

*Balt. Gas & Elec. Co. v. NRDC*,
    462 U.S. 87 (1983) ................................................................................. 61

*Bouarfa v. Mayorkas*,
    604 U.S. 6 (2024) ................................................................. 24, 31, 32

*Johnson v. Arteaga-Martinez*,
    596 U.S. 573 (2022) ............................................................................. 28

*Block v. Community Nutrition Institute*,
    467 U.S. 340 (1984) .......................................................................23, 24

*California v. Grace Brethren Church*,
    457 U.S. 393 (1982) ............................................................................. 36

*Chao v. Russell P. Le Frois Builder, Inc.*,
    *291 F.3d 219* (2d Cir. 2002) ................................................................ 42

*China Unicom (Ams.) Ops. Ltd. v. FCC*,
    124 F.4th 1128 (9th Cir. 2024) ....................................... 40, 47, 48, 49

*Carnegie v. FERC*,
    968 F.2d 1291 (D.C. Cir. 1992) ........................................................... 63

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) ............................................................... 32

*Dallas Safari Club v. Bernhardt*,
    518 F. Supp. 3d 535 (D.D.C. 2021) ..................................................... 54

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) .........................................................................52, 59

*Gun South, Inc. v. Brady*,
    877 F.2d 858 (11th Cir. 1989) ............................................................. 42

iv

*Haig v. Agee,*
453 U.S. 280 (1981) ................................................................ 40, passim

*City of Arlington v. FCC,*
569 U.S. 290 (2013) ................................................................ 23

*DCH Reg'l Med. Ctr. v. Azar,*
925 F.3d 503, 505-507 (D.C. Cir. 2019) .............................. 26

*DHX Inc. v. Allianz AGF MAT, Ltd.,*
425 F.3d 1169 (9th Cir. 2005) .............................................. 26

*Doe v. San Diego Unified School District,*
19 F.4th 1173 (9th Cir. 2021) .............................................. 17

*FCC v. Prometheus Radio Project,*
592 U.S. 414 (2021) ................................................................ 55

*Galvez v. Jaddou,*
52 F.4th 821 (9th Cir. 2022) ................................................ 34

*Garcia v. USCIS,*
146 F.4th 743 (9th Cir. 2025) .............................................. 32

*Garland v. Ming Dai,*
593 U.S. 357 (2021) ........................................................ 54, 67

*Gill v. Whitford,*
585 U.S. 48 (2018) ................................................................ 71

*California v. Texas,*
593 U.S. 659 (2021) ................................................................ 71

*Immigrant Defenders v. Noem,*
145 F.4th 972 (9th Cir. 2025) .......................................... 37, 74

*Macktal v. Chao,*
  286 F.3d 822 (5th Cir. 2002) ................................................................ 41

*Mazaleski v. Treusdell,*
  562 F.2d 701 (D.C. Cir. 1977) ............................................................ 40

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ................................................................... 50, 66

*Ivy Sports Medicine, LLC v. Burwell,*
  767 F.3d 81 (D.C. Cir. 2014) ............................................................ 41

*In Re Svenhard's Swedish Bakery,*
  — F.4th —, 2025 WL 2627837, *4 (9th Cir. Sep. 12, 2025) .................. 30

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) ........................................................................ 38

*Mallinckrodt Chem. Works v. Missouri ex rel. Jones,*
  238 U.S. 41, 54 (1915) ..................................................................... 71

*Make the Road N.Y. v. Wolf,*
  962 F.3d 612 (D.C. Cir. 2020) ............................................................ 74

*Massachusetts v. Mellon,*
  549 U.S. 447, 488 (1923) .................................................................. 71

*McNary v. Haitian Refugee Center, Inc.,*
  498 U.S. 479 (1991) ................................................................... 31, 32

*Mt. St. Helens Mining and Recovery Ltd. P'ship v. United States,*
  384 F.3d 721 (9th Cir. 2004) ............................................................ 55

*Nicholas v. United States,*
  633 F.2d 829, 830 (9th Cir. 1980) ..................................................... 27

*Noem v. Nat'l TPS Alliance,*
  145 S. Ct. 2728 (2025) ...................................................................... 2

*Noem v. Nat'l TPS Alliance,*
— S. Ct. —, 2025 WL 2812732 (Oct. 3, 2025)....................................2, 14

*Noem v. Nat'l TPS Alliance,*
145 S. Ct. 2728 (2025) ........................................................................ 13

*Nat'l TPS Alliance v. Noem,*
150 F.4th 1000 (9th Cir. 2025) (NTPSA I) ............................ 13, passim

*NLRB v. Wyman-Gordon Co.,*
394 U.S. 759 (1969) ............................................................................ 63

*NTPSA v. Noem,*
773 F.Supp.3d 807 (N.D. Cal. 2025) ................................................. 12

*Organized Vill. of Kake v. U.S. Dep't of Agric.,*
795 F.3d 956, 968 (9th Cir. 2015) (en banc)...................................... 68

*Patel v. Garland,*
596 U.S. 328 (2022) ................................................................ 18, passim

*Poursina v. USCIS,*
936 F.3d 868 (9th Cir. 2019)............................................................... 49

*Pulsifer v. United States,*
601 U.S. 124 (2024) ............................................................................ 30

*Ramos v. Wolf,*
975 F.3d 872 (9th Cir. 2020), *vacated upon reh'g en banc,*
59 F.4th 1010 (9th Cir. 2023) ................................................ 26, passim

*Reeb v. Thomas,*
636 F.3d 1224, 1226-28 (9th Cir. 2011)..............................................27

*Rodriguez v. Hayes,*
591 F.3d 1105, 1120-21 (9th Cir. 2010)..............................................38

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004) ................................................................. 38

*Saget v. Trump,*
375 F. Supp. 3d 280 (E.D.N.Y. 2019) ................................... 61

*San Luis & Delta-Mendota Water Authority v. Locke,*
776 F.3d 971 (9th Cir. 2014) ................................... 17, passim

*SKF USA Inc. v. U.S.,*
254 F.3d 1022 (Fed. Cir. 2001) ............................................. 42

*Skagit County Pub. Hosp. v. Shalala,*
80 F.3d 379 (9th Cir. 1996) .............................................. 25, 27

*Smith v. Bayer Corp.,*
564 U.S. 29 (2011) ................................................................... 73

*The Last Best Beef, LLC v. Dudas,*
506 F.3d 333 (4th Cir. 2007) ........................................... 41, 42

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) ........................................... 36, 70, 71, 73

*Turtle Island v. U.S. Dep't Commerce,*
878 F.3d 725 (9th Cir. 2017) ................................................. 16

*United States v. Texas,*
599 U.S. 670 (2023) ................................................................. 36

*United States v. Tohono O'odham Nation,*
563 U.S. 307 (2011) ................................................................. 21

*Vietnam Veterans of Am. v. Sec'y of the Navy,*
843 F.2d 528 (D.C. Cir. 1988) ............................................... 67

*Washington v. U.S. Dep't of State,*
996 F.3d 552 (9th Cir. 2021) ................................................. 32

## <u>STATUTES</u>

### Immigration and Nationality Act of 1952, as amended:

5 U.S.C. § 701(a)(1) ..................................................................... 25

5 U.S.C. § 702(2) ......................................................................... 37

5 U.S.C. § 703 .............................................................................. 72

5 U.S.C. § 705 ............................................................... 2, 12, 37

5 U.S.C. § 706 ................................................................. 5, *passim*

5 U.S.C. § 706(2) .......................................................... 32, *passim*

5 U.S.C. § 805 ............................................................................... 32

6 U.S.C. § 557 ................................................................................. 5

7 U.S.C. § 608c(15)(B) .......................................................... 23, 24

8 U.S.C. § 1103(a) .......................................................................... 5

8 U.S.C. § 1160(e)(1) ................................................................... 31

8 U.S.C. § 1252(a)(2)(B)(i) ......................................................... 19

8 U.S.C. § 1252(f)(1) ...................................................... 3, *passim*

8 U.S.C. § 1254a(a) ...................................................................... 74

8 U.S.C. § 1254a(a)(1)(A) ............................................................. 6

8 U.S.C. § 1254a(a)(1)(B) ............................................................. 6

8 U.S.C. § 1254a(b) ...................................................................... 43

ix

8 U.S.C. § 1254a(b)(1)................................................................6, 28, 29

8 U.S.C. § 1254a(b)(1)(C)........................................................ 1, *passim*

8 U.S.C. § 1254a(b)(2)....................................................................6, 44

8 U.S.C. § 1254a(b)(2)(A)...........................................................28, 45

8 U.S.C. § 1254a(b)(2)(B)..................................................................56

8 U.S.C. § 1254a(b)(3)..............................................................44, 54

8 U.S.C. § 1254a(b)(3)(A).........................................................6, passim

8 U.S.C. § 1254a(b)(3)(B).........................................................6, *passim*

8 U.S.C. § 1254a(b)(3)(C).......................................................42, *passim*

8 U.S.C. § 1254a(b)(5)(A)..........................................................2, *passim*

8 U.S.C. § 1254a(c)(1)(A)(i)..............................................................7

8 U.S.C. § 1254a(c)(1)(A)(iv)..........................................................46

8 U.S.C. § 1254a(d)(3).....................................................................46

12 U.S.C. § 1818(i)(1).....................................................................32

22 U.S.C. § 2278(h)..........................................................................32

18 U.S.C. § 1855(f)(1).......................................................................37

26 U.S.C. § 7429(f).........................................................................27

28 U.S.C. §1291...............................................................................4

28 U.S.C. § 3625.............................................................................27

x

42 U.S.C. § 7607 ....................................................................... 37

50 U.S.C. § 4821 ...................................................................... 32

Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ........ 5, 50

**Tax Injunction Act:**

28 U.S.C. § 1341 ....................................................................... 36

**Homeland Security Act of 2002:**
, Pub. L. No. 107 296, 116 Stat. 2135, 2311

Section § 1517 ......................................................................... 5

**IIRIRA:**
div. C, Pub. L. No. 104-208, 110 Stat. 3009-546

Section § 306 ........................................................................... 34

Section § 308 ........................................................................... 34

**Federal Register:**

*Designation of Venezuela for [TPS] and Implementation of Employment*
   *Authorization for Venezuelans Covered by Deferred Enforced*
   *Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) ..................................... 7

*Designation of Haiti for [TPS],*
   *86 Fed. Reg. 41863 (Aug. 3, 2021)* ........................................ 11

Secretary Mayorkas extended Venezuela's 2021 designation in 2022 and
   2023.  *Extension of the Designation of Venezuela for [TPS],*
   87 Fed. Reg. 55,024 (Sept. 8, 2022) ....................................... 7

*Extension and Redesignation of Haiti for [TPS],*
   *88 Fed. Reg. 5022 (Jan. 26, 2023)* ........................................ 11

*Consideration and Recission of Termination of the Designation of El Salvador for [TPS]*, 88 Fed. Reg. 40,282 (June 21, 2023) ................... *43*

*2023 Extension and Redesignation of Venezuela for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023) ........................................................ *7, 46*

*Extension and Redesignation of Haiti for [TPS],*
  *89 Fed. Reg. 54484 (July 1, 2024)* ....................................... *11*

*Extension of the 2023 Designation of Venezuela for [TPS],*
  90 Fed. Reg. 5,961 (Jan. 17, 2025) ....................................... *8*

*Vacatur of 2025 TPS Decision for Venezuela,*
  90 Fed. Reg. 8,805 (Feb. 3, 2025) ......................................... *8*

*Termination of the October 3, 2023 Designation of Venezuela for [TPS],*
  90 Fed. Reg. 9,040 (Feb. 5, 2025) ......................................... *9*

*Partial Vacatur of 2024 [TPS] Decision for Haiti,*
  *90 Fed. Reg. 10511 (Feb. 24, 2025)* ..................................... *11*

*Termination of the Designation of Haiti for [TPS],*
  *90 Fed. Reg. 28760 (July 1, 2025)* ....................................... *12*

## Other Authorities:

*Act of Aug. 24, 1937, ch. 754, 50 Stat. 752-753* ....................................... 71

*S. Rep. No. 752, 79th Cong., 1st Sess. 27 (1945)* .................................... *72*

*92 Con. Rec. 2159 (1946)* ....................................................................... *72*

*APA, S. Doc. No. 248, 79th Con., 2d Sess. 36-37 (1946)* ......................... *72*

H.R. Rep. No. 1980, 79th Cong., 2d Sess. 44 (1946) ............................... 72

*Webster's New International Dictionary of the English Language 2291*
  *(2d ed. 1958)* ....................................................................... *71*

H.R. Rep. No. 101-245 (1989) .................................................................. 19

Exec. Order No. 14159, *Protecting the American People Against Invasion*, §16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025) ............................................. 58

# **INTRODUCTION**

The Secretary of Homeland Security (Secretary) has discretion to designate a foreign country for temporary protected status (TPS), giving eligible nationals from a designated country a reprieve from removal during the designation period. By statute, the Secretary must periodically review each designation and decide whether to extend or terminate it. TPS designations for Venezuela and Haiti are disputed here.

Venezuela was designated for TPS in 2021 and redesignated in 2023. Days before leaving office, former Secretary Mayorkas noticed an action to combine and extend Venezuela's dual TPS designations for as long as statutorily possible, even though Venezuela's 2021 TPS designation did not expire until September 10, 2025. Days after taking office, and long before former Secretary Mayorkas's actions would have taken effect, Secretary Noem vacated them, requiring her to review Venezuela's 2023 TPS designation by February 1, 2025. After evaluating national security and other considerations, the Secretary properly terminated Venezuela's 2023 TPS designation as contrary to the "national interest." 8 U.S.C. §1254a(b)(1)(C), (b)(3)(B). Venezuela's 2021

1

TPS designation was left in place and later terminated in an action not under review here. Separately, the Secretary also reconsidered Haiti's 18-month TPS extension and shortened it to 12 months to permit her to evaluate whether the extension was consistent with the statute.

Previously, the district court entered interim relief under 5 U.S.C. §705 in Plaintiffs' favor. The Supreme Court stayed that relief. *Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025). This Court nonetheless affirmed, and a week later, the district court entered judgment on Plaintiffs' Administrative Procedure Act (APA) challenges, restraining the Secretary's operation of the TPS statute with respect to Venezuela and Haiti. The Supreme Court again stayed that judgment. *Noem v. Nat'l TPS Alliance*, — S. Ct. —, 2025 WL 2812732, *1 (Oct. 3, 2025).

As the Supreme Court's extraordinary step of *twice* staying the district court's orders in this case reflects, the district court's decision was deeply flawed. Two review bars precluded its judgment. *First*, the TPS statute forbids "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. §1254a(b)(5)(A). *Second*, the INA bars inferior courts from entering orders that "enjoin or

2

restrain" the operation of certain immigration laws—including the TPS statute—other than on an individual basis. §1252(f)(1).

If the Court reaches the merits, it must reverse. The district court abused its discretion by considering extra-record evidence, and it manufactured extra-statutory procedural requirements that it then concluded the Secretary had not satisfied. That was error, and the Secretary's determinations were not arbitrary or capricious. She properly considered whether vacatur of the TPS extensions was appropriate, as well as the impact her decisions would have on any reliance interests. And her termination of Venezuela's 2023 TPS designation was properly based on consultation with the Secretary of State and consideration of country-conditions evidence. The district court also failed to recognize that the Secretary's unreviewable "national interest" determination was independently dispositive and rendered any alleged errors harmless.

Finally, the district court impermissibly entered universal relief by restraining the Secretary's operation of the TPS statute for parties and non-parties alike. The Court should reverse.

3

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §1331, except to the extent Congress deprived it of jurisdiction through provisions that limit review and remedies in specific immigration contexts, as discussed in the body of this brief.

The district court entered a Rule 54(b) partial final judgment on September 5, 2025. 1-ER-2-70. The government filed a timely notice of appeal on September 9, 2025. 6-ER-672. This Court has appellate jurisdiction under 28 U.S.C. §1291. 6-ER-672.

## ISSUES PRESENTED

I.    Did the district court exceed its jurisdiction, where 8 U.S.C. §1254a(b)(5)(A) specifies that "any" "determination" "with respect to" a designation, extension, or termination is unreviewable?

II.    Did the district court err in concluding that (i) the Secretary lacked authority to reconsider a TPS extension that had not yet taken effect; (ii) the Secretary lacked authority to reconsider another TPS extension that was contrary to the national interest; and (iii) the Secretary's TPS determinations were arbitrary and capricious?

4

III.   Did the district court err in issuing an order that restrained the Secretary's operation of the TPS statute, where 8 U.S.C. §1252(f)(1) expressly forbids such orders?

IV.   Did the district court err by issuing universal vacatur under 5 U.S.C. §706?

## STATEMENT OF THE CASE

### A.   The TPS Statute

The Immigration Act of 1990 established a program for providing temporary, discretionary protection in the United States for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to adequately handle the return of its nationals.   Pub. L. No. 101-649, 104 Stat. 4978.

As relevant here, the statute authorizes the Secretary,[1] "after consultation with appropriate agencies of the Government," to designate countries for TPS if there are:

---

[1]  Congress transferred the Attorney General's TPS authority to the Secretary.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §1517, 116 Stat. 2135, 2311 (codified at 6 U.S.C. §557); 8 U.S.C. §1103(a).

5

extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

§1254a(b)(1)(C).[2]

Aliens with TPS are eligible for work authorization and may not be removed. §1254a(a)(1)(A)-(B). Initial TPS designations are discretionary, §1254a(b)(1), and the Secretary must conduct periodic reviews to determine whether the conditions underlying a country's TPS designation continue to be met. §1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then the TPS designation is extended. §1254a(b)(3)(C). If the foreign state "no longer continues to meet the conditions for designation," however, the Secretary "shall terminate the designation[.]" §1254a(b)(3)(B). "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." §1254a(b)(5)(A).

---

[2] Unless noted, all statutory citations in this brief refer to Title 8.

6

**B.** **Secretary Mayorkas's Venezuela TPS Designations**

In 2021, Secretary Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented Venezuelan nationals from returning in safety. *Designation of Venezuela for [TPS] and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) ("2021 Designation"). Secretary Mayorkas extended Venezuela's 2021 designation in 2022 and 2023. *Extension of the Designation of Venezuela for [TPS]*, 87 Fed. Reg. 55,024 (Sept. 8, 2022); *2023 Extension and Redesignation of Venezuela for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).

In 2023, simultaneous with his extension of the 2021 Designation through September 2025, Secretary Mayorkas separately redesignated Venezuela for TPS, based on a new finding of extraordinary and temporary conditions ("2023 Designation").[3] The 2023 Designation was effective through April 2, 2025. *2023 Designation*, 88 Fed. Reg. at 68,130.

---

[3] Redesignation expands the pool of aliens eligible for TPS because only an alien "continuously physically present in the United States" since the effective date "of the most recent designation" is eligible. §1254a(c)(1)(A)(i).

7

On January 17, 2025, months before the 2023 Designation was set to expire and on the last full business day of the Biden administration, DHS published notice of Secretary Mayorkas' determination to extend the 2023 Designation for 18 months and establish a consolidated filing process, such that all current Venezuela TPS beneficiaries (whether under the 2021 or 2023 Designations) could obtain TPS through October 2, 2026 ("2025 Extension"). *Extension of the 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025). Secretary Mayorkas's extension was set to become effective on April 3, 2025. *Id.*

### C.   Secretary Noem's Venezuela TPS Determinations

On January 28, 2025, Secretary Noem vacated the 2025 Extension, restoring the previously separate 2021 and 2023 Designations—the "Venezuela Vacatur." *Vacatur of 2025 TPS Decision for Venezuela*, 90 Fed. Reg. 8,805 (Feb. 3, 2025). Secretary Noem explained that the 2025 Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute" and determined that vacatur was warranted to "untangle the confusion" caused by the separate designation tracks and "provide an opportunity for informed determinations regarding the TPS designations and clear guidance." *Id.*

8

at 8,807. To bring clarity without prejudice, Secretary Noem enabled "Venezuela 2023 registrants [to] retain their temporary protected status under the pre-existing designation at least until April 2, 2025," and Venezuela 2021 registrations had their status restored under the 2021 registration—i.e., until September 10, 2025. *Id.* The Vacatur was effective immediately. *Id.* at 8,806.

On February 1, after consulting with relevant agencies, Secretary Noem terminated Venezuela's 2023 Designation—the "2025 Termination"—because she determined it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States." *Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,040 (Feb. 5, 2025); §1254a(b)(1)(C), (3)(B).

In making this determination, Secretary Noem stated that "there are notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." *Id.* However, Secretary Noem concluded that even under the assumption that the conditions in Venezuela remain both "extraordinary" and "temporary," the

9

termination of the 2023 Designation was "required." *Id.* She explained that "national interest is an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." *Id.*

Secretary Noem further explained that the significant population of TPS holders resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands caused by increased numbers," and underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *2025 Termination*, 90 Fed. Reg. at 9,042-43. In considering national and immigration interests, she found that Venezuelan nationals in the United States include members of Tren de Aragua, a transnational criminal organization that "poses threats to the United States," and that TPS could create a potential "magnet effect" drawing Venezuelans to the border. *Id.* Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id.* at 9043. The 2025 Termination was to become effective on April 7. *Id.* at 9,041.

### D. Secretary Mayorkas's Haiti TPS Determinations

Haiti was most recently designated for TPS in 2021 because of "extraordinary and temporary conditions" following a presidential assassination and based on "deteriorating political crisis, violence, and a staggering increase in human rights abuses." *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41863, 41864 (Aug. 3, 2021). In 2023, Secretary Mayorkas extended and redesignated Haiti for TPS. *Extension and Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5022 (Jan. 26, 2023). In 2024, he again redesignated Haiti for TPS and extended the designation for eighteen months until February 3, 2026. *Extension and Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54484 (July 1, 2024).

### E. Secretary Noem's Haiti TPS Determinations

On February 24, Secretary Noem partially vacated the 2024 Extension, shortening the TPS designation from eighteen months to twelve months ending on August 3. *Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10511 (Feb. 24, 2025). In doing so, the Secretary cited several reasons, including that there was no discussion in the July 1, 2024 Federal Register notice of why the 18-month period was selected in lieu of a 6- or 12-month period or why permitting the ever-

11

increasing population of Haitian TPS recipients, particularly those who entered the country unlawfully, to remain temporarily in the United States was not contrary to the U.S. national interest. *See id.* at 10,513. On July 1, she terminated Haiti's TPS designation, effective September 2, explaining that "permitting Haitian nationals to remain temporarily … is contrary to the national interest of the United States." *Termination of the Designation of Haiti for [TPS]*, 90 Fed. Reg. 28760, 28762-64 (July 1, 2025). Plaintiffs challenge only the vacatur, not the termination.

### F.  The Supreme Court Permitted Secretary Noem's Venezuela TPS Determinations to Take Effect

On February 18, Plaintiffs brought APA challenges to the Secretary's determinations and moved to postpone her determinations with respect to Venezuela. The district court granted their motion and postponed the Secretary's Venezuela Vacatur and Termination under §705 of the APA. *NTPSA v. Noem*, 773 F.Supp.3d 807, 815 (N.D. Cal. 2025). On May 19, after this Court denied the government's stay motion in No. 25-2120, the Supreme Court granted the government's motion for a stay pending certiorari. *Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025).

On August 29, this Court affirmed the district court's postponement order. *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025) (*NTPSA I*), reasoning that no judicial review bars to the TPS statute applied, that Plaintiffs were likely to succeed on the merits of their APA claims, and that universal relief was warranted. *Id.* at 1017-30.

One week later—before this Court's mandate had issued and without affording the government an opportunity to petition for rehearing or certiorari—the district court granted partial summary judgment for Plaintiffs under 5 U.S.C. §706 with respect to their challenges to Haiti and Venezuela's TPS designations. 1-ER-2-70. The Secretary timely appealed on September 9, 2025.

On September 17, this Court denied the government's request to stay that partial final judgment pending appeal and established an expedited briefing schedule. *Nat'l TPS Alliance v. Noem*, — F.4th —, 2025 WL 2661556, *2 (9th Cir. Sept. 17, 2025) (*NTPSA II*). On October 3, the Supreme Court again stayed the district court's action pending certiorari. *Noem v. Nat'l TPS Alliance*, — S. Ct. —, 2025 WL 2812732, *1 (Oct. 3, 2025).

13

## SUMMARY OF ARGUMENT

The district court's decisions in this case are twice barred by Congress and have been twice stayed by the Supreme Court. This Court should reverse and remand with instructions to dismiss.

Start with the limitations on judicial review. First, Congress has significantly reduced courts' ability to review the Executive Branch's actions in the immigration context. It enacted a particularly broad bar on judicial review for TPS decisions, providing that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." §1254a(b)(5)(A). Both the decisions to vacate, in whole or in part, the extensions of TPS for Venezuela and Haiti, as well as the later decisions to terminate the TPS designations of Venezuela and Haiti, fall within that bar as determinations "with respect to the … termination or extension of a designation." Plaintiffs' challenges to the Secretary's vacaturs rest on mistaken analysis of the record and an impermissible attempt to substitute the district court's judgment for the Secretary's. But the bar does not distinguish between some kinds of claims and others. It does not permit procedural or collateral challenges

14

to TPS decisions, nor does it permit challenges to statutory authority. At the very least, it bars review of Plaintiffs' arbitrary-and-capricious challenges to the Secretary's actions. The text is plain: Courts may not review the Secretary's decisions.

Second, Congress barred courts from entering orders that "enjoin or restrain" the Executive Branch from enforcing or implementing immigration statutes, including the TPS statute, except on an individual basis. The district court's order undoubtedly did just that. The district court avoided this restriction only by concluding that vacating agency action under the APA does not "enjoin or restrain" the government. But it plainly had the same practical effect as an injunction—and the district court recognized as much by ruling that its judgment was an "injunction" for purposes of Federal Rule of Civil Procedure 62(c) and requiring the government to take immediate action to implement its judgment. It would make little sense for a vacatur of agency action under the APA to be treated as an "injunction" for purposes of a narrowly-written rule that favors plaintiffs while refusing to treat a vacatur as fitting within a broader category of orders that "enjoin *or restrain*" the Executive Branch's efforts to enforce particular statutory provisions.

15

Regardless, if the Court were to reach the merits, Plaintiff's claims would still fail. The Secretary has inherent authority to reconsider TPS extensions. Decisions of this Court and others have long recognized that agencies have inherent authority to correct their own errors, and nothing in the TPS statute rebuts that presumption. At minimum, the Secretary had authority to vacate an action that had not yet taken effect, as was true of Secretary Mayorkas's announced extension of the 2023 Designation. The Supreme Court has recognized as much by *twice* granting stays, necessarily finding that the government is likely to succeed on the merits of this argument.

Plaintiffs' remaining APA claims fare no better. The challenges to the Secretary's termination decisions suffer from the common flaw that the district court failed to account for the Secretary's independently dispositive determination that the TPS designations were not in the national interest.

## STANDARD OF REVIEW

This Court "review[s] challenges to final agency action decided on summary judgment de novo and pursuant to Section 706 of the [APA]." *Turtle Island v. U.S. Dep't Commerce*, 878 F.3d 725, 732 (9th Cir. 2017).

16

Review of agency action under the APA is generally limited to the administrative record. *Id*. at 732; *see* 5 U.S.C. §706. This Court "evaluate[s] a district court's decision to admit extra-record evidence for abuse of discretion." *San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014).

Although this Court previously applied the preliminary injunction factors and concluded that Plaintiffs were likely to succeed on the merits of their request for vacatur of the challenged actions, *see NTPSA I*, 150 F.4th 1000; *NTPSA II*, 2025 WL 2661556, its "legal analysis" is "not binding'" at this stage because both *NTPSA I* and *NTPSA II* involved predictive judgments about Plaintiffs' likelihood of success on the merits. *Doe v. San Diego Unified School District*, 19 F.4th 1173, 1177 n.4 (9th Cir. 2021).

# ARGUMENT

## I. THE TPS STATUTE BARS JUDICIAL REVIEW OF PLAINTIFFS' APA CLAIMS[4]

This Court should reverse the district court's order because the TPS statute clearly and convincingly bars Plaintiffs' APA claims.[5] §1254a(b)(5)(A).

---

[4] The government recognizes that the Court held in *NTPSA I* that §1254a(b)(5)(A) does not foreclose Plaintiffs' challenge to the Secretary's authority to vacate her predecessor's TPS extensions, and denied the government's request for a stay in *NTPSA II* in reliance on *NTPSA I*. Neither decision binds this panel as a matter of precedent. *Doe*, 19 F.4th at 1177 n.4. The government maintains that those decisions erred, both as to judicial review and as to the underlying merits. And the government expects to seek relief from *NTPSA I*, which became moot before the government was able to pursue rehearing en banc or certiorari. *See, e.g.*, *Donovan v. Vance*, 70 F.4th 1167, 1173 (9th Cir. 2023) (recognizing that "vacatur is generally automatic in the Ninth Circuit when a case becomes moot on appeal"). *NTPSA I* presently remains subject to the Ninth Circuit's administrative order pausing government deadlines during the lapse in appropriations.

[5] On appeal, the government is not challenging the district court's judgment to the extent that it preserved "EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates" through February 5, 2025—the effective date of Secretary Noem's Venezuela vacatur. 1-ER-43-44.

18

## A.    The TPS Statute Bars All of Plaintiffs' Claims.

1.  The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. §1254a(b)(5)(A). Jurisdictional bars can scarcely be clearer.    By foreclosing "judicial review," §1254a(b)(5)(A) bars all of Plaintiffs' APA challenges to Secretary Noem's vacatur and termination determinations. *See* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.").

The plain meaning of the statute's broad terms confirms its broad sweep. *See Patel v. Garland*, 596 U.S. 328, 338-39 (2022) (examining the ordinary meaning of broadening terms in §1252(a)(2)(B)(i)'s review bar). The term "determination" covers action by the Secretary regarding TPS designations. *See The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or pronouncement"); *Black's Law Dictionary* 450 (6th ed. 1990) (defining determination as "[t]o settle or decide by choice of alternatives or

19

possibilities."); *Webster's New Collegiate Dictionary* 346 (1990) ("the act of deciding definitively and firmly"); *Webster's Encyclopedic Unabridged Dictionary* 393 (1990) ("the act of coming to a decision or of fixing or settling a purpose").

The modifier "any," in the phrase "any determination," has a similarly expansive meaning. *Patel*, 596 U.S. at 338 ("As this Court has repeatedly explained, the word 'any' has an expansive meaning" encompassing "judgments of 'whatever kind'") (cleaned up; quoting *Babb v. Wilkie*, 589 U.S. 399, n.2 405 (2020) and *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). And the term "respecting" too "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to … whether directly or indirectly"); *see* Webster's New Collegiate Dictionary 1004 (defining "respect" as "a relation to or concern with something usually specified"). Indeed, the Supreme Court held that materially similar jurisdiction-stripping language in the Immigration and Nationality Act was so

expansive that it precluded judicial review of factual findings. *Patel*, 596 U.S. at 337-40 (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter); *see also United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011) (observing that when Congress has stripped a court of jurisdiction "in respect to" particular claims, it is to be construed as a "broad prohibition").

Applying §1254a(b)(5)(A) here is straightforward. The bar applies to the Secretary's Venezuela Termination because it is a "determination … with respect to … the termination" of the 2023 TPS designation for Venezuela. § 1254a(b)(5)(a); 5-ER-273-77. The statute equally precludes judicial review of the Secretary's Venezuela Vacatur because it is a determination regarding the "extension of a designation." §1254a(b)(5)(A); 3-ER-140-42. Likewise, the statute precludes review of the Secretary's partial vacatur with respect to Haiti because it was also a determination regarding the "extension of a designation." §1254a(b)(5)(A); 6-ER-523-27.

The district court's conclusion that §1254a(b)(5)(A) bars "judicial review of substantive TPS decisions only," 1-ER-26, is erroneous. The

statute makes no distinction between substantive and procedural challenges. §1254a(b)(5)(A). Instead, it forecloses judicial review of "any" TPS "determinations," regardless of the kind of challenge to the determination. *Id*. Because each of the Secretary's determinations falls within §1254a(b)(5)(A)'s scope, this Court should reverse and remand with instructions to dismiss Plaintiffs' APA claims.

2. This Court previously concluded that §1254a(b)(5)(A)'s review bar was inapplicable to deciding "[t]he extent of statutory authority granted to the Secretary" because it was "not a determination … with respect to the designation, or termination or extension of a country for TPS." *NTPSA I*, 150 F.4th at 1017. That logical syllogism fails because each of the Secretary's challenged actions were—indisputably— determinations with respect to TPS extensions or terminations. *Id*. (summarizing that Plaintiffs challenge the "Secretary's authority to vacate a prior *TPS extension*") (emphasis added). Carving out challenges to the Secretary's statutory authority from the judicial-review bar would make little sense in any event. The Supreme Court has already rejected the premise of the argument, "that there exist two distinct classes of agency interpretations," some of which—"the big, important ones,

presumably"—govern the agency's statutory authority, and others—"humdrum, run-of-the-mill stuff"—that are "simply applications of the jurisdiction the agency plainly has." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). "That premise is false" because the distinction "is a mirage." *Id.* Attempting to distinguish between matters of statutory authority and other agency decisions fails because "the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*." *Id.* The Court's interpretation of the review bar in *NTPSA I* would not create a modest exception, but instead would eviscerate the bar.

In all events, whenever a review bar is implicated, it applies equally to allegedly unlawful government conduct; otherwise, it would serve no purpose. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 552-53 (2022) (discussing §1252(f)(1)).

This Court's previous reliance on *Block v. Community Nutrition Institute* is unpersuasive because that case confirmed that Congress *can* bar judicial review for entire classes of individuals. 467 U.S. 340, 348 (1984) (analyzing 7 U.S.C. §608c(15)); *NTPSA I*, 150 F.4th at 1017.

*Block*'s principal interpretive insight—regarding how courts should ascertain which kinds of parties can seek judicial review of certain regulatory actions—has no force here because the TPS statute does not permit *anyone* to challenge the DHS Secretary's TPS designations or determinations. §1254a(b)(5)(A). Moreover, in stark contrast to the statute in *Block*, the TPS statute does not expressly authorize judicial suits. *Compare* 7 U.S.C. §608c(15)(B), *with* §1254a(b)(5)(A). Thus, *Block* offers no guidance and this Court's analysis should instead be guided by *Patel*, 596 U.S. at 338, and *Bouarfa*, 604 U.S. at 19, which concluded that the INA clearly and convincingly barred judicial review.

### B. At Absolute Minimum, the TPS Statute Bars Plaintiffs' Remaining APA Claims.

At minimum, Section 1254a(b)(5)(A) bars review of Plaintiffs' arbitrary-and-capricious claims. Even if the Court were correct in *NTPSA I* that that bar permits review of the Secretary's statutory authority to vacate a TPS extension, Plaintiffs' APA claims reach beyond anything that could be fairly characterized as a statutory-authority challenge, and they are plainly at the core of the decisionmaking shielded by the statutory bar. Underscoring this, the Supreme Court has twice granted the government's applications for stays, when the government

24

twice defended against the non-statutory-authority APA claims solely on the ground that they fall within the review bar. *Noem v. Nat'l TPS All.*, No. 25A326, Stay Appl. 19 ("The government based its prior stay application as to respondents' arbitrary-and-capricious challenges *only* on reviewability."), Resp. 4 ("Defendants do not dispute Plaintiffs' two other APA claims on the merits."); *see Noem v. Nat'l TPS All.*, No. 24A1059, Stay Appl. 15-20.

1. "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency *decision* is arbitrary, capricious, or procedurally defective." *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004); 5 U.S.C. §701(a)(1). Plaintiffs cannot evade that bar by characterizing an arbitrary-and capricious challenge as procedural. *See, e.g., Skagit County Pub. Hosp. v. Shalala*, 80 F.3d 379, 386 (9th Cir. 1996) (no-review provision applies when "procedure is challenged only in order to reverse the individual [unreviewable] decision"). To hold otherwise "would eviscerate the statutory bar, for almost any challenge to [a determination] could be recast as a challenge to its underlying

methodology." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505-507 (D.C. Cir. 2019).

Indeed, this Court previously held that "the TPS statute precludes review of non-constitutional claims that fundamentally attack the Secretary's specific TPS determinations, as well as the substance of her discretionary analysis in reaching those determinations." *Ramos v. Wolf*, 975 F.3d 872, 891 (9th Cir. 2020), *vacated upon reh'g en banc*, 59 F.4th 1010, 1011 (9th Cir. 2023).[6] Consequently, "the APA cannot be invoked as an independent basis for affording judicial review" and "an allegation that the Secretary reached certain TPS determinations in an 'arbitrary and capricious' manner [is not] reviewable under section 1254a." *Id.* at 892.

This Court has enforced comparable limitations on judicial review in other contexts, and it should treat this limitation no worse than other bars on judicial review. For example, the Court has refused to permit a procedural challenge to a decision that is merely an attempt to work

---

[6] Although the *Ramos* decision has no precedential effect, it "still carries informational and perhaps even persuasive precedential value." *DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005) (Beezer, J., concurring). The Secretary cites *Ramos* in the remainder of this brief for its persuasiveness.

around a limitation on judicial review. *Skagit Cnty.*, 80 F.3d at 386. For another, in *Reeb v. Thomas*, this Court held that 28 U.S.C. §3625's bar on APA review of "any determination, decision, or order" related to the Bureau of Prisons' operation of prison programs stripped a district court of jurisdiction to consider a prisoner's habeas petition challenging his removal from a rehabilitation program. 636 F.3d 1224, 1226-28 (9th Cir. 2011) (rejecting substantive and procedural challenges). Similarly, in *Nicholas v. United States*, this Court held that 26 U.S.C. §7429(f)—which provided that "[a]ny determination made by a district court under this section shall be final and conclusive and shall not be reviewed by any other Court"—barred both "constitutional and evidentiary" review of certain tax assessments. 633 F.2d 829, 830 (9th Cir. 1980). And regarding this statute in particular, this Court directly held (in a since-vacated decision) that the TPS statute "precludes direct review of the Secretary's country-specific TPS determinations," without distinguishing between procedural and substantive challenges. *Ramos*, 975 F.3d at 889.

2. The district court's contrary arguments are unavailing. First, the district court concluded that the term "determination" limited the review bar's preclusive effect to the Secretary's "substantive assessment

27

of country conditions." 1-ER-29-30. In effect, the district court read "any" to mean "only some." But that conclusion is irreconcilable with §1254a(b)(5)(A). The statute says what kinds of determinations it covers: *any* determinations—that is, determinations "of whatever kind," *Patel*, 596 U.S. at 338—*with respect to* TPS terminations or extensions. Moreover, the review bar plainly extends to TPS determinations, such as the effective date or duration of a TPS extension, §1254a(b)(1), (b)(2)(A), that have nothing to do with country conditions.

Moreover, the cited uses of "determination" all relate to discretionary decision-points for the Secretary—confirming that Congress's usage of "any determination" and "with respect to" in §1254a(b)(5)(A) was designed to shield all of the Secretary's TPS-related decisions from judicial review. And, critically, nothing in §1254a(b)(5)(A) limits the review bar to the Secretary's "substantive assessment of country conditions." 1-ER-29 (citing no authority); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 581 (2022) (rejecting judicially-imposed procedural requirements with no textual basis). As this Court previously held, "[t]he TPS statute … does not dictate any guidelines or restrictions on the manner by which the Secretary may reach her TPS

28

determinations," "[n]or does the statute set forth or define the 'conditions in the foreign state' that the Secretary must consider in her periodic review, or how she should weigh these conditions." *Ramos*, 975 F.3d at 891 (citing §1254a(b)(1)). The district court's approach, meanwhile, would require courts to parse the Secretary's "*basis* for the determination," §1254a(b)(3)(B) (emphasis added), and assess whether that basis is, in the court's view, appropriately grounded in concerns about country conditions so as to insulate it from additional scrutiny. That would subvert the judicial-review bar, encouraging the very review of the Secretary's reasoning that Section 1254a(b)(5)(A) prohibits.

In addition, the district court's logic fails on its own terms. When the Secretary vacated her predecessor's extension, she necessarily made a determination that involves whether "the conditions for designation continued to be met." 3-ER-141. Secretary Mayorkas had determined that the statutory conditions were met. *See Extension of the 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. at 5,963. Secretary Noem determined that it was appropriate to vacate that assessment, allowing her the "opportunity for informed determinations regarding the TPS designations." 3-ER-142. Just as Secretary Mayorkas's January 17,

2025 action would have been a "determination with respect to an … extension" under §1254a(b)(5), Secretary Noem's vacatur of that action was a "determination" protected by that judicial review bar, too. §1254a(b)(5)(A).

Second, the district court gave no meaning to the broadening terms "any" and "with respect to," violating the presumption that "Congress did not intend to make any portion of a statute superfluous" and that this Court must "give effect to every word of a statute whenever possible." *In Re Svenhard's Swedish Bakery*, — F.4th —, 2025 WL 2627837, *4 (9th Cir. Sept. 12, 2025) (cleaned up). Recognizing that its interpretation violated that rule, the district court reasoned that "with respect to" was "simply a connector" phrase. 1-ER-30. But that rationale is obviously wrong because the review bar already extends to "any determination of the [Secretary] with respect to" a TPS determination or designation "*under this subsection*," confirming that the district court erroneously rendered "with respect to" superfluous. §1254a(b)(5)(A) (emphasis added); *see Pulsifer v. United States*, 601 U.S. 124, 142 (2024) (adopting the interpretation that lacked any "superfluity").

The plain text distances this case from *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), on which the district court relied. 1-ER-26. *McNary*'s conclusion that litigants could raise "collateral challenges to unconstitutional practices and policies," *McNary*, 498 U.S. at 479, to the administration of the Special Agricultural Worker program was expressly predicated on the fact that Congress only barred judicial review of "*a determination* respecting *an application*." *Ramos*, 975 F.3d at 889 (quoting former 8 U.S.C. §1160(e)(1)) (emphasis added); *see Reno v. CSS*, 509 U.S. 43, 64 (1993) (interpreting "the phrase 'a determination respecting an application for adjustment of status'").

*McNary* emphasized that Congress *could* bar judicial review of collateral challenges if it used more expansive language. 498 U.S. at 494 (citing 8 U.S.C. §1329 as an example). And Congress used more expansive language here, barring "judicial review" of "*any determination* of the [Secretary] *with respect to* the determination, or termination or extension of a designation" of TPS. §1254a(b)(5)(A) (emphasis added); *see Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024) (holding that INA provisions provide "clear and convincing evidence of congressional intent to preclude

judicial review"). Thus, the district court's reliance on *McNary* and *Reno*'s reasoning, as well as this Court's cases applying it, was misplaced.

The district court's reliance on the presumption in favor of judicial review, 1-ER-26, is equally misplaced because Congress unequivocally barred judicial review here. 5 U.S.C. §706(2); *see Bouarfa*, 604 U.S. at 19 (explaining that INA provisions provide "clear and convincing evidence of congressional intent to preclude judicial review"); *Garcia v. USCIS*, 146 F.4th 743, 754 (9th Cir. 2025). Courts have routinely found that analogous statutes bar judicial review, rebutting the presumption and leaving it with no role to play. *See Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 42, 44 (1991) (12 U.S.C. §1818(i)(1)); *Washington v. U.S. Dep't of State*, 996 F.3d 552, 560-64 (9th Cir. 2021) (22 U.S.C. §2278(h) and 50 U.S.C. §4821(a)); *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019) (5 U.S.C. §805). The same result should obtain here.

Finally, contrary to the district court's assertion, permitting procedural challenges to TPS determinations by the Secretary does not "impose coherence and discipline to the process." 1-ER-31. The district court's "policy concerns cannot trump the best interpretation of the

32

statutory text." *Patel*, 596 U.S. at 346. And, as the litigation in this case illustrates, permitting TPS holders to bring challenges to the Secretary's TPS authority by labeling them "collateral" effectively enables "an attack on the substantive considerations underlying the Secretary's specific TPS determinations, over which the statute prohibits review." *Ramos*, 975 F.3d at 893. By barring "judicial review" of "any determination ... with respect to the designation, or termination, or extension of a designation," Congress clearly and convincing eliminated judicial review. §1254a(b)(5). For all the reasons above, the district court erred in concluding otherwise, and its judgment should be reversed.

## II. SECTION 1252(F)(1) PRECLUDES RELIEF UNDER 5 U.S.C. §706(2)

Regardless of the merits of Plaintiffs' APA claims, this Court must reverse the district court because its judgment impermissibly restrained the Secretary's operation of the TPS statute. *See* §1252(f)(1); *Aleman Gonzalez*, 596 U.S. at 550. Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter ... other than with respect to the

application of such provisions to an individual alien against whom proceedings ... have been initiated.

§1252(f)(1) (emphasis added). The statute thus "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Aleman Gonzalez*, 596 U.S. at 550.

As this Court recognized, *NTPSA I*, 150 F.4th at 1018 & n.8, the TPS statute is a covered provision because Congress placed it in Chapter 4 of Title II of the INA—the chapter §1252(f)(1) shields. IIRIRA, div. C, Pub. L. No. 104-208, §§306, 308, 110 Stat. 3009-546; *see Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022) ("[T]he text of the United States Code cannot prevail over the Statutes at Large when the two are inconsistent.") (cleaned up).

The dispute here is whether the district court's judgment violated §1252(f)(1). It did. The district court's order impermissibly "restrain[s]" the Secretary from exercising her authority under the TPS statute, compels the expenditure of finite governmental resources implementing TPS designations that are contrary to the national interest, and precludes Executive officials from enforcing immigration laws in the

34

way the Executive Branch deems appropriate. *See Aleman Gonzalez*, 596 U.S. at 549 ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action"); *accord Black's Law Dictionary* 1314 (defining "[r]estrain" as meaning to "limit" or "put compulsion upon") (emphasis omitted). The coercive nature of the district court's order is evident because it additionally ordered the Secretary to update DHS's website and reopen the registration period for Venezuela's 2023 designation within a timeframe selected by the district court. Dkt. 304, Compliance Order (Sept. 11, 2025); *see Biden v. Texas*, 597 U.S. 785, 788 (2022) (explaining that a district court injunction requiring the government to take action "violated" §1252(f)). The district court even ruled that its judgment was effective immediately because it was "an injunction" for purposes of Federal Rule of Civil Procedure 62(c)(1). Dkt. 304 at 1-2. By ignoring the coercive effects of its judgment on the operation of the TPS statute, the district court erred. 1-ER-32; *see* §1252(f)(1).

The district court's reasoning, 1-ER-32-33, that §706 judgment is different from an injunction missed the key point: §1252(f)(1) is not limited to injunctions, but instead also prohibits any orders that "enjoin

*or restrain*" a covered statute's operation, "[r]egardless of the nature of the action or claim[.]" §1252(f)(1) (emphasis added). That language is far-reaching. In interpreting analogous language, the Supreme Court held that the Tax Injunction Act, 28 U.S.C. §1341, which barred orders that "suspend or restrain" tax collection, stripped courts of jurisdiction to enter not just injunctive relief, but also declaratory relief. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). The same rationale extends here. *See United States v. Texas*, 599 U.S. 670, 690-701 (2023) (Gorsuch, J., concurring) (agreeing that a district court cannot use vacatur under 5 U.S.C. §706 to "sidestep" §1252(f)(1)).

To be sure, the Supreme Court has not decided whether §1252(f)(1) bars relief under §706. 1-ER-32-33; *see Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025). But the Supreme Court previously concluded that injunctions issued in parallel with APA relief were barred by §1252(f)(1) while reserving the question whether it applies to relief under 5 U.S.C. §706 alone. *Biden v. Texas*, 597 U.S. 785, 797-98 & n.4 (2022). Supreme Court decisions reversing district courts on other grounds provide no basis to tolerate coercive orders that violate §1252(f)(1).

36

The district court's reliance on *Immigrant Defenders v. Noem*, 145 F.4th 972 (9th Cir. 2025), *reh'g petition filed* (Aug. 7, 2025), is misplaced because that decision reasoned that §1252(f)(1) was inapplicable to 5 U.S.C. §705 because of the distinctions between stays and injunctive relief—a rationale that, by its own terms, does not apply to its judgment. 1-ER-33. Moreover, although *Immigrant Defenders* reasoned that §1252(f)(1) did not apply to §705 because it did not cross-reference the APA, the court failed to recognize that no cross-reference in §1252(f)(1) is necessary because the APA has no application where another statute "expressly or impliedly forbids the relief which is sought." 5 U.S.C. §702(2). Congress need not be redundant to be clear. *Immigrant Defenders'* reliance on the Magnuson-Stevens Act and Clean Air Act similarly provides no insight about the application of §1252(f)(1) because the TPS statute is exempted from rulemaking and other generally applicable APA requirements, as well as the corresponding judicial review provided for in those statutes. 145 F.4th at 990; *see* 18 U.S.C. §1855(f)(1); 42 U.S.C. §7607(d)(1) (last sentence).

The rationale underlying this Court's *NTPSA I* decision lends no support to the district court's judgment because this Court's opinion

directly conflicts with *Aleman Gonzalez*. Specifically, the Court's conclusion that allegedly unlawful conduct under a covered provision can be restrained conflicts both with §1252(f)(1)'s plain text and *Aleman Gonzalez*, which squarely rejected the argument that "'the operation' of the covered immigration provisions means the operation of those provisions 'as *properly* interpreted and that what §1252(f)(1) bars are class-wide injunctions that prohibit the Government from doing what the statute allows or commands." 596 U.S. at 552; *see Al Otro Lado v. EOIR*, 138 F.4th 1102, 1125 (9th Cir. 2025) ("[A]n injunction is barred even if a court determines that the Government's 'operation' of a covered provision is unlawful or incorrect."), *cert. petition filed* (July 1, 2025).

*NTPSA I* also relied on *Rodriguez v. Hayes*, 591 F.3d 1105, 1120-21 (9th Cir. 2010), but failed to recognize that the Supreme Court remanded that case for the Ninth Circuit to "decide whether it continues to have jurisdiction despite 8 U.S.C. §1252(f)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018). *Jennings* was no endorsement of *Rodriguez*.

Finally, the panel's reliance on *Ali v. Ashcroft*, 346 F.3d 873, 886 (9th Cir. 2003), was misplaced because that opinion was withdrawn and the case was remanded "with instructions to vacate the injunction and

reconsider the class certification in light of the Supreme Court's decision in [*Rumsfeld v. Padilla*, 542 U.S. 426 (2004)]." *Ali v. Gonzales*, 421 F.3d 795, 797 (9th Cir. 2005). Thus, the authorities underlying *NTPSA I* were either withdrawn or conflict with Supreme Court precedent and provide no support for the conclusion that a district court can circumvent §1252(f)(1) by repackaging an order restraining the operation of TPS in the APA.

Ultimately, the application of §1252(f)(1) turns on whether an order "enjoins or restrains the operation of" the TPS statute. Because the district court's judgment does just that, it must be vacated.

## III. THE SECRETARY PROPERLY EXERCISED HER INHERENT AUTHORITY TO RECONSIDER HER PREDECESSOR'S TPS ACTIONS.

### A. The Secretary has Inherent Authority to Revoke or Reconsider a TPS Designation.

If the Court reaches the issue, it should reverse the district court's merits analysis because the Secretary properly exercised her inherent authority to reconsider and vacate the TPS extensions for Venezuela and Haiti. 1-ER-25-31; 1-ER-40-41. The Supreme Court has twice apparently found a likelihood of success on this argument as to Venezuela, by twice granting the government's applications for stays,

39

even though the government did not argue before the Supreme Court that the judicial-review bar precludes review of this issue. *Noem v. Nat'l TPS All.*, No. 25A326, Appl. For Stay 18 n.11.

As this Court has recognized, statutory authorization to make a decision "must be understood as carrying with it an implied incidental authority" to revoke the decision. *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024) (*CUA*); *see also Haig v. Agee*, 453 U.S. 280, 290-91 (1981) (holding that the State Department's statutory authority to grant and issue passports included an implied authority to revoke passports); *Belville Mining Co. v. United States*, 999 F.2d 989, 998 (6th Cir. 1993) (noting that "[e]ven if an agency lacks express statutory authority to reconsider an earlier decision, an agency possesses inherent authority to reconsider administrative decisions, subject to certain limitations") (cleaned up).

Courts have long recognized that principle as a general matter: An administrative agency has inherent or statutorily implicit authority to "reconsider and change a decision if it does so within a reasonable period of time" if Congress has not foreclosed this authority by requiring other procedures. *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977);

*see, e.g.*, *Haig*, 453 U.S. at 290-304; *Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion."); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) ("[F]ederal agencies … have broad authority to correct their prior errors."). In considering implied authority to revoke or reconsider an agency action in the absence of express authorization, a court should consider whether Congress authorized broad rule-making authority and whether the statute involves issues in areas of inherent Executive authority, such as foreign policy and national security. *Haig*, 453 U.S. at 291.

Permitting reconsideration is especially warranted when an agency seeks to correct its own errors. In that context, reconsideration respects judicial economy and the separation of powers by permitting agencies to

41

correct their own errors, without judicial intrusion. *Cf. SKF USA Inc. v. U.S.*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (an agency may remand its own decision because "it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies."); *The Last Best Beef, LLC*, 506 F.3d at 340 (discussing the "inherent discretion [of the Patent Office] to correct its own errors and manage its own docket").

Congress has given the Secretary "broad authority" over TPS determinations, *Ramos*, 975 F.3d at 890, including discretion over both the length of the TPS designation and timing of periodic review. §1254a(b)(3)(A)-(C). That broad authority in making TPS determinations carries an authority to revisit and reconsider a prior determination. *Chao v. Russell P. Le Frois Builder, Inc.,* 291 F.3d 219, 229 n.9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (cleaned up); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to

42

reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration.").

Nothing in the TPS statute forecloses the Secretary's inherent authority to reconsider or revoke a TPS designation or extension period. Under the statute, the Secretary has discretion over both the length of a TPS designation and the timing of periodic review. §1254a(b)(3)(A)-(C). Secretary Mayorkas recognized as much when he reconsidered an earlier TPS determination during his tenure. *See Consideration and Recission of Termination of the Designation of El Salvador for [TPS]*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023). The TPS statute imposes no deadlines or timeframes for modifying or vacating a deficient extension, especially an extension that is not yet effective. *See* §1254a(b). Nor does the statute provide any timeframe relevant to consolidation of two different TPS designations that could prevent reconsideration. *Id.* The statute does not discuss such a consolidation at all, which was among the Secretary's animating concerns. 3-ER-140-43 (Venezuela Vacatur). Thus, §1254a "does not in so many words confer upon the Secretary a power to revoke" or reconsider but does not limit the Secretary's inherent

authority to do so regarding that which she has authority to grant, withdraw, and terminate. *Haig*, 453 U.S. at 290-95.

This Court should hold that the Secretary permissibly and timely exercised her reconsideration authority. That is plainly true of the Secretary's decision to vacate Secretary Mayorkas's hasty TPS extension for Venezuelans, months before the extension's effective date of April 3, 2025. *See* 3-ER-140 (Venezuela Vacatur); 3-ER-155 (Venezuela Extension). Not only was the Secretary's determination timely, it was also necessary to "provid[e] an opportunity for … clear guidance." *See* 3-ER-142 (Venezuela Vacatur). This was a classic exercise of an agency's inherent power to reconsider past decisions.

Likewise, the partial vacatur of Haiti's TPS extension fits within this inherent power. As the Secretary had the authority to extend Haiti's designation, so too does she have the authority to partially vacate the Secretary's 18-month extension in lieu of a 12-month extension, a period expressly contemplated by statute. §1254a(b)(2), (3). These exercises of the Secretary's inherent authority were consistent with the statute and the district erred in concluding otherwise.

## B. The District Court's Analysis Relies on an Erroneously Narrow Reading of the Statute.

The district court erroneously concluded that the Secretary's termination authority, §1254a(b)(3)(B), displaced any inherent vacatur power. 1-ER-0040-449 (citing *NTPSA I*, 150 F.4th at 1020-21). There is no tension between §1254a(b)(3)(B)'s termination process and Secretary Noem's exercise of her inherent authority to reconsider TPS *extensions*, particularly because the Venezuela Vacatur was made *before* any TPS extension would have gone into effect. 1-ER-40-43; 3-ER-140-42. Section 1254a(b)(3)(B) speaks only to "termination of [a] designation" that is in effect. §1254a(b)(3)(B). The statute says nothing about whether or how a Secretary can vacate an extension that has not yet taken effect.

In *NTPSA I,* this Court concluded that Secretary Mayorkas's Venezuela extension was immediately effective. That is erroneous. The Secretary picks the effective date of TPS designations, §1254a(b)(2)(A), and once a country is designated for TPS, there can only be one extension in effect at any given time, §1254a(b)(3)(A)-(C). *NTPSA I*, 150 F.4th at 1023. Here, Secretary Mayorkas announced an extension that would take effect "beginning on April 3, 2025" and would last for a period of "18 months," *i.e.*, to "October 2, 2026." 90 Fed. Reg. at 5961.

45

Secretary Mayorkas's actions could not have taken effect sooner under the statute. The original 2023 Designation "remain[ed] in effect" until "April 2, 2025," and was therefore the operative designation when Secretary Noem acted. *Extension and Redesignation of Venezuela for Temporary Protected Status*, 88 Fed. Reg. 68,130, 68,130 (Oct. 3, 2023) (explaining that the designation was to "remain in effect for 18 months, ending on April 2, 2025"). Secretary Mayorkas had no authority to supplant that designation; §1254a(b)(3)(C) authorizes extensions for an "additional"—rather than superseding—period of 18 months after a designation ends. §1254a(b)(3)(C). Indeed, by *NTSPA I*'s logic, the Secretary's extension would have violated the statute by extending Venezuela's designation from January 17, 2025, to October 2, 2026—well beyond the maximum term of 18 months. *See id*.

In concluding that Venezuela's extension was immediately effective, the Court also conflated the period of TPS registration under §1254a(c)(1)(A)(iv), with effective period of a TPS extension, *id*., and erroneously concluded that Secretary Noem's termination provided fewer than 60 days' notice. 5-ER-274; *see* §1254a(d)(3). Thus, the district court

46

erred in relying on *NTPSA I* to set aside Secretary Noem's prompt Venezuela vacatur.

The district court's reliance on *CUA* is similarly misplaced. 1-ER-42. In *CUA*, the Court held that the Federal Communications Commission (FCC) could revoke a certificate issued to a company, despite no explicit statutory authority to revoke, because the FCC had inherent authority to do so. *CUA*, 124 F.4th at 1136-40. One factor that the Court found relevant to confirming this inherent power to revoke is that the statutory framework in *CUA* provided no time limitation on the issuance of certificates. *Id.* at 1148. The district court latched on to this aspect of *CUA* and decided that case held that an implied revocation power is "affirmatively inconsistent" with a statute provides a right or benefit for a fixed term. 1-ER-42 (quoting *CUA*, 124 F.4th at 1147-48). But that factor is not dispositive; otherwise, *Haig*, which confirmed an agency's authority in the context of fixed-term passports, would have come out the other way. *Haig*, 453 U.S. at 297 n.38. The district court erred by treating it as dispositive and by ignoring other considerations that cut sharply in favor of the Secretary's reconsideration authority in the TPS context, including whether the statute involves issues in areas of

47

inherent Executive authority. *See Haig*, 453 U.S. at 291; *CUA*, 124 F.4th at 1148; *NTPSA II*, 2025 WL 2661556, at *4; 1-ER-40-44.

Indeed, what is most instructive from *CUA* is the Court's reasoning that the FCC's inherent revocation authority was supported by the requirement to consider "national defense" in consultation with the State and Defense Departments—a process and determination strikingly like the Secretary's "national interest" assessment here, reached after consultation with the Secretary of State. 124 F.4th at 1150. The district court's reasoning that the presence of a temporal limitation forecloses authority to reconsider any decisions, 1-ER-41-42, simply does not withstand scrutiny and leads to absurd and extreme results—no Secretary would be empowered to vacate a designation or extension of a designation no matter how grave the threat to national security, U.S. foreign policy, or border security interests, or how considerable the error or legal defect in the prior determination. Nothing in the statute implicitly limits the Secretary's inherent power in this regard, and such a limitation would improperly curtail Executive authority concerning "[m]atters intimately related to foreign policy and national security[, which] are rarely proper subjects for judicial intervention."

48

*Haig*, 453 U.S. at 292. Nor could it where the statute requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." §1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (*citing Trump v. Hawaii*, 585 U.S. 667, 684-86 (2018)). Indeed, on Plaintiffs' radical view, the Secretary could not reconsider a country's TPS designation even if the country declared war on the United States during the term of its TPS designation. Vacating a designation or extension of a designation, especially where the Secretary finds a serious error, legal defect, or potential national security threat in a prior determination, is a valid exercise of her authority under the TPS statute and her responsibility in ensuring a continued designation of a county complies with the law. As *Haig* and *CUA* recognize, agencies generally possess reconsideration authority. *Haig*, 453 U.S. at 290-95; *CUA*, 124 F.4th at 1143. So too here. And *Haig* even recognized inherent revocation authority for

49

passports, even though passports are typically issued for a fixed period. *Haig*, 453 U.S. at 297 n.38.

The district court also erred in its conclusion that Congress intended to foreclose the Secretary's inherent authority to reconsider TPS extensions, deeming it a "much more significant act." 1-ER-41-43. Congress enacted the TPS program to provide *temporary* shelter in the United States "on a discretionary basis" for foreign nationals. Pub. L. No. 101-649, 104 Stat. 4978. While §1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, any subsequent action turns on the Secretary's informed judgment about whether the conditions for such designation continue to exist. §1254a(b)(3)(A)-(C).

In short, this Court should reverse the district court's judgment because the Secretary properly exercised her inherent authority to reconsider the TPS extensions for Venezuela and Haiti.

## IV. PLAINTIFFS' OTHER APA CLAIMS ALSO FAIL

Even putting aside §1254a(b)(5)(A), this Court should reverse the district court's grant of summary judgment for Plaintiffs' APA claims. Under *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." 463 U.S. 29, 43 (1983). Review under the "arbitrary and capricious" standard is "searching and careful," but "narrow." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377-78 (1989). The ultimate question under this narrow standard of review is whether the agency's action was reasonable. *FCC v. Fox Television Stations*, 556 U.S. 502, 514-15 (2009).

## A. The District Court Abused its Discretion by Considering Extra-Record Evidence.

As a preliminary matter, the district court abused its discretion by considering extra-record evidence. 1-ER-39-40; *see Locke*, 776 F.3d at 991. This Court follows a "general rule that courts reviewing an agency decision are limited to the administrative record," and while the Court has identified "limited" exceptions, it has stressed that such exceptions "are narrowly construed and applied." *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005); 5 U.S.C. §706 (directing review of "the

whole record"). This rule recognizes that "the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). Thus, the "party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *Locke*, 776 F.3d at 992.

The district court abused its discretion in admitting extra-record evidence to second-guess the wisdom of the Secretary's TPS determinations here. 1-ER-39-40; *see Locke*, 776 F.3d at 991. The district court reasoned that doing so was appropriate in part because the government "did not file a formal opposition to Plaintiffs' motion" to consider extra-record evidence filed in conjunction with their summary judgment motion" and because Plaintiffs' evidence "falls within [the] scope" of the *Lands Council* exceptions.[7] 1-ER-40. But the government

---

[7] The district court additionally reasoned that extra-record evidence was admissible to assess Plaintiffs' equal protection claims but then declined to reach them. 1-ER-39-40. The government preserves its objections to that aspect of district court's ruling for when the district court rules on that aspect of Plaintiffs' summary judgment motion.

objected from the outset that consideration of extra-record evidence was improper. Dkt. 123 (joint letter brief). The district court overruled the government's objection, permitting expedited extra-record discovery. Dkts. 129, 135 (discovery orders). That ruling rendered Plaintiffs' later motion duplicative, as Plaintiffs themselves agreed. Dkt. 172 at 3 (arguing that the "Court's prior finding is enough, standing alone, to consider Plaintiffs' extra-record evidence at the summary judgment stage"). The government did not forfeit the issue by not reiterating the arguments the district court had already rejected when it ordered extra-record discovery.

None of *Lands Council*'s exceptions justify the district court's reliance on extra-record evidence, either. The district court relied on the "bad faith" and "relevant factors" exceptions, which permit use of extra-record evidence if there is a showing that the agency acted in bad faith or if the evidence is necessary to determine whether the agency considered all factors, to consider an extra-record GAO report. 1-ER-38-39. But the district court never identified what showing supposedly constituted bad faith by the Secretary; it alluded to the Plaintiffs' Equal Protection claims, but it did not decide those claims. And the GAO report

was published in 2020, so it had nothing to do with Venezuela's then non-existent TPS designations and could hardly be necessary to determine whether the Secretary considered all relevant factors here. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) ("[A] court may not substitute its own policy judgment for that of the agency."); *Locke*, 776 F.3d at 991; 1-ER-53. "The TPS statute … does not dictate any substantive guidelines or restrictions on the manner by which the Secretary may reach her TPS determinations" and does not "define the 'conditions in the foreign state' that the Secretary must consider in her periodic review, or how she should weigh these conditions." *Ramos*, 975 F.3d at 891; §1254a(b)(3). Further, a GAO report is not law, and it does not bind agencies to use policy processes forever. *See Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (judges are not "free to impose additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel"). The district court erred in concluding that the "bad faith" or "relevant factors" exceptions justified the admission and consideration of the GAO report, where Congress never required the Secretary to follow the policy process the GAO summarized. *See* §1254a(b)(3)(A); *Ramos*, 975 F.3d at 891; *cf.*

54

*Dallas Safari Club v. Bernhardt*, 518 F.Supp.3d 535 (D.D.C. 2021) (bad faith exception not applicable where record provided "at least some support" for the agency's stated rationales and debate over whether those reasons found adequate support in the record "sound[ed] in merits contentions and thus [were] more appropriately vented and considered on cross-motions for summary judgment").

This is particularly so given that, as explained in detail below, the Secretary's TPS terminations rested on reasoned decision making based on her review of relevant country conditions evidence and policy considerations. *See, e.g.*, 5-ER-273-275, 5-ER-279, 6-ER-52. This Court should hold that the district court's reliance on extra-record evidence was improper and confine its review to the administrative record. *See Locke*, 776 F.3d at 993; 5 U.S.C. §706.

## B. The Secretary's Venezuela Vacatur was not Arbitrary and Capricious.

This Court should also reverse the district court's ruling that the Venezuela Vacatur was arbitrary and capricious because none of the district court's bases for this conclusion withstand scrutiny. 1-ER-45-50. At the threshold, the government reiterates that these claims are barred by the statutory review bar Congress enacted to limited review of the

55

Secretary's determinations with respect to TPS terminations.  *See supra*
Argument §I.

If the Court reaches the merits, it should still reverse because the
district court misapplied the "narrow" arbitrary and capricious standard
and instead "substitut[ed] [its] judgment for that of the agency." *Mt. St.*
*Helens Mining and Recovery Ltd. P'ship v. United States*, 384 F.3d 721,
728 (9th Cir. 2004); *see* 1-ER-45-50.

First, the district court rejected the Secretary's characterization of
former Secretary Mayorkas's extension as "novel."  1-ER-44-45.  But the
court ignored the Secretary's concern that by combining the two
designations, Secretary Mayorkas effectively "extend[ed] the 2021
designation by up to 13 months," without explaining how this approach
was "consistent with the TPS statute."  3-ER-142 (citing §1254a(b)(2)(B)
(governing "the effective date of the termination of a designation")).  The
Secretary then concluded that because "the explanation for the
operational impacts" was "thin and inadequately developed," vacatur was
"warranted to untangle the confusion."  *Id*.  Consequently, the Secretary
determined that vacatur was appropriate so that the new administration
could have its own "opportunity for informed determinations regarding

56

the TPS designations." *Id.* The concerns articulated in the Venezuela Vacatur are objective and reasonable, and there is a "rational connection between the facts and the choice made," *Montana St. Helens Mining*, 384 F.3d at 728, which is all that the APA requires.

Second, and similarly, the district court asserted that the Secretary failed to appreciate that a TPS beneficiary under Venezuela's 2021 designation was necessarily also a TPS beneficiary under the 2023 designation. 1-ER-46. That too fails to account for independently sufficient and unquestioned reasons for the Vacatur. The district court failed to recognize that the unreasoned consolidation of these beneficiary pools allowed former Secretary Mayorkas to extend TPS for aliens under the 2021 designation for an additional 13 months, an action that the statute does not permit. 3-ER-142; *see* §1254a(b)(3)(C) (permitting extensions for periods of 6, 12, or 18 months). Moreover, Secretary Mayorkas left both the 2021 and 2023 Venezuela TPS designations intact, meaning that Venezuela's TPS designations continued on separate tracks after the consolidation—undermining any alleged clarity-related benefits. *See* 5-ER-273-77. Thus, the district court erred in ruling that Secretary Noem's vacatur lacked factual and legal support.

57

Third, the district court's conclusion that the Venezuela Vacatur was impermissible due to the failure to account for alternatives short of vacatur was erroneous. 1-ER-47-48. In issuing the Vacatur, the Secretary indicated that the decision to vacate provided "an opportunity for informed determinations regarding the TPS designations and clear guidance." 3-ER-142 (citing Exec. Order No. 14159, *Protecting the American People Against Invasion*, §16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025)). Deconsolidating the re-registration periods, as the district court suggested, 1-ER-47-48, would not meet the Vacatur's stated objective of thoroughly reviewing each TPS designation. The Secretary's Venezuela Vacatur complied with the statute, was issued in accordance with her inherent reconsideration authority, and was consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws. *See* §1254a(b)(3)(A)-(C).

Fourth, the district court erroneously concluded that the Venezuela Vacatur was impermissibly driven by pretextual reasons, 1-ER-48-49, because the district court contravened the Supreme Court's admonition that "it is hardly improper for an agency head to come into office with

58

policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Com.*, 588 U.S. at 778; *see Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 98, n.8 (1983) ("[A]n agency acting within its authority can make policy choices consistent with the congressional mandate so long as its actions conform to applicable procedural requirements…."). As the Supreme Court has explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by an Administration's priorities…. Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others)." *Id.* at 782; *see Ramos*, 975 F.3d at 897-98 ("It is expected— perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies.").

The statutory criteria supported the Venezuela Vacatur. Ample evidence within the record demonstrates that Secretary Noem reviewed her predecessor's extension alongside prior TPS determinations, 3-ER-

59

155-166; 3-ER-213-32; 4-ER-234-271, considered U.S. national interests and foreign policy, 3-ER-149-150, 3-ER-152-154; and evaluated country conditions in Venezuela, 3-ER-167-209; all of which are relevant factors in making TPS determinations. This evidence supported the Secretary's finding that Secretary Mayorkas' decision to extend TPS for Venezuela warranted further review. Even materials produced during the Biden administration confirmed this. *See* 3-ER-210-212. For instance, one memorandum discussing pros and cons of various options for the Venezuela 2023 extension and redesignation noted that a concurrent extension and redesignation of Venezuela for TPS did not follow "standard practice," and some beneficiaries would have their benefits extended for fewer months than the extension received by others. 3-ER-210-212. Furthermore, the Secretary considered reliance interests in issuing her determination but found that any putative reliance interests were negligible "given the exceedingly brief period in which the January 17, 2025, extension [was] in effect." 3-ER-142. Because Secretary Noem "articulated a reasoned connection between the facts found" and the Venezuela Vacatur, the Secretary's decision should be upheld. *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d

1082, 1091 (9th Cir. 2005); *see Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 105 (1983) (agency's decision must be upheld if it is "within the bounds of reasoned decisionmaking").

Fifth, the district court was concerned by evidence that agency employees communicated about the challenged actions before Secretary Noem's confirmation. 1-ER-49. But this evidence merely depicts communications between agency personnel gathering information regarding country conditions in Venezuela and finalizing drafts for the Secretary to review. 3-ER-145-148. It is not unreasonable for an agency to prepare such documents in anticipation of an administration's potential policy changes and in accordance with its stated mission. *See, e.g.*, 3-ER-210-212 (memorandum discussing options for Venezuela's TPS produced for Secretary Mayorkas). And this is consistent with agency preparation in prior determinations. *See Saget v. Trump*, 375 F.Supp.3d 280, 305 (E.D.N.Y. 2019) (noting that USCIS employees were directed to "refashion" draft memorandum to former DHS Secretary after "prognosticat[ing] that the Secretary may wish to terminate [a TPS designation]."). There is no rule against preparing for a new principal's confirmation.

Sixth, finally, the record contradicts the district court's ruling that the Secretary failed to comply with a statutory obligation to consult other agencies and assess country conditions before issuing the Vacatur. She was under no obligation to comply with these requirements, which apply to extensions and terminations, in this context. 3-ER-48-49; §1254a(b)(3)(B)-(C). The vacatur was neither; instead, it was a reconsideration of a not-yet-effective TPS extension, and its effect was only to move forward the Secretary's consideration of whether the conditions for the TPS designation continued to be met. *See* §1254a(b)(3)(B). This determination complied with past practice of revisiting prior determinations independently. *See* §1254a(b)(3)(A); 6-ER-591 (2023 El Salvador Reconsideration) ("After conducting an independent assessment of the country conditions in El Salvador as they existed in 2018 and exist today…")).

As demonstrated, the Secretary's Venezuela Vacatur was consistent with the TPS statute, and she logically concluded that restoring the status quo before Secretary Mayorkas's consolidation would provide an opportunity for "informed determinations regarding TPS designations." 3-ER-142. This Court should hold that the Secretary's

Venezuela Vacatur was proper and reverse the district court.  *See Balt.*

*Gas & Elec. Co.*, 462 U.S. at 105.

## C.  The Secretary's Decision to Terminate Venezuela's 2023 TPS Designation was Proper.

The district court erred in ruling that the Secretary's Venezuela

Termination was arbitrary and capricious.  1-ER-50-54.  The district

court found errors in the Secretary's consultation with other agencies and

review of country conditions.  Even if those were errors, the district court

erred because it ignored the independent "national interest" basis for the

termination.  Regardless, the district court erred in its assessment of the

Secretary's consultation and review of country conditions.

1.  First, the district court failed to take "due account … of the

rule of prejudicial error" by ignoring the Secretary's independent

"national interest" basis for the termination.  5 U.S.C. §706; *see NLRB v.*

*Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (discussing futile

remands); *Carnegie v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992) ("We

will … sustain an agency decision resting on several independent

grounds if any of those grounds validly supports the result, unless there

is reason to believe the combined force of these otherwise independent

grounds influenced the outcome.").  The TPS statute expressly requires

the Secretary to review designations based on extraordinary and temporary conditions to ensure that they remain consistent with the "national interest." §1254a(b)(1)(C). The Secretary made that independently-dispositive determination here, *requiring* her to terminate Venezuela's 2023 TPS extension. §1254a(b)(1)(C), (b)(3)(B); 5-ER-275.

The Secretary made that termination basis abundantly clear, noting that "even assuming the relevant conditions in Venezuela remain both 'extraordinary' and 'temporary,' termination of the 2023 Venezuela TPS designation is required because it is contrary to the national interest." 5-ER-28. Because the TPS statute clearly provides that a national interest assessment is independently dispositive for TPS designations, extensions, and terminations based on extraordinary and temporary conditions under §1254a(b)(1)(C), any supposed errors in the Secretary's consultation with other agencies or her analysis of country conditions are harmless. 5 U.S.C. §706; *see Carnegie*, 968 F.2d at 1294. The district court erroneously failed to consider that independent basis to uphold the Secretary's termination, 1-ER-54, even though Plaintiffs have not challenged it and the district court found no error in it, 1-ER-

37.  The Court can and should reverse the district court's termination analysis without proceeding further.

2.      If the Court reaches the issue, the district court also erred in ruling that the Venezuela Termination was unlawful because the Secretary did not observe the statutory procedures for terminating a TPS designation, such as "consultation" and review of "country conditions." 1-ER-50-54.  This conclusion is wrong.  The record reflects that Secretary Noem consulted with the appropriate Government agencies and reviewed country conditions in determining that Venezuela no longer met the conditions for 2023 designation.  *See* 5-ER-275 (indicating that the Secretary consulted with the Department of State); 5-ER-279-280 (Letter of Recommendation from Secretary of State Rubio recommending termination of Venezuela's TPS); 5-ER-281-286 (showing that USCIS recommended termination).  For instance, Secretary Noem identified that there were "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," and that these findings were based on information provided by U.S. Citizenship and Immigration Services and the U.S. Department of State.  5-ER-275.  She then noted, however, that

"even assuming the relevant conditions remained both 'extraordinary and temporary,'" termination of the 2023 TPS designation for Venezuela was required because it was contrary to the national interest to permit Venezuelan nationals to remain temporarily in the United States, in accordance with her statutory authority under §1254a(b)(3)(B). 5-ER-275.

Secretary Noem thus appropriately considered the country conditions for Venezuela, consulted with the relevant government agencies, and provided her reasons for terminating the 2023 Designation, including valid concerns for the safety of U.S. communities, impact that the TPS designation has had on local community resources, and adverse impacts on border security and foreign relations. 5-ER-275-276. Consistent with the statute, Secretary Noem reasonably determined that termination of Venezuela's TPS 2023 designation was required because it "no longer continues to meet the conditions for designation." 5-ER-274; *see Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Accordingly, the 2025 Termination complied with the procedures and timeframe laid out in the TPS statute.

Resisting that conclusion, the district court heavily relied on the extra-record GAO report for its ruling that the Secretary failed to provide an explanation "for her reversal of established practices on TPS decision-making." 1-ER-53-54. As explained previously, the procedures outlined in the GAO report did not bind the Secretary's analysis. *See Ming Dai*, 593 U.S. at 365; *see also Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 539 (D.C. Cir. 1988) (where internal procedures or rules were never intended to bind an agency or limit its discretion, an agency has no obligation to explain a "departure" from its rules). Moreover, the Secretary did not change the policy on how to make TPS determinations. The Secretary was *required* to conduct a review under §1254a(b)(3)(A); she did so within the timeframe required by the statute; she considered relevant country conditions evidence; she consulted with Secretary Rubio before rendering a final determination; and she explained her decision in the Federal Register. 5-ER-275-76. The TPS statute requires nothing more. §1254a(b)(3)(A); *see Ramos*, 975 F.3d at 891.

The district court faulted the Secretary for relying on Biden-era documents to reach opposite conclusions, but the court did not explain why the change in administration made country conditions reports

67

issued within the previous six months stale. 1-ER-52; *see* 3-ER-167-197. Nor is it apparent why Secretary Noem could not examine these reports and weigh the information therein differently from Secretary Mayorkas. 1-ER-52; *see Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (en banc) ("[Agency] was entitled in 2003 to give more weight to socioeconomic concerns than it had in 2001, even on precisely the same record.... There was a change in presidential administrations just days after the [ ] Rule was promulgated in 2001. Elections have policy consequences.").

As this Court has recognized, Congress authorized the Secretary "to account for changes in country conditions or political priorities" by terminating "TPS within the confines of the statute." *NTPSA I*, 150 F.4th at 1021; *see Ramos*, 975 F.3d at 891. She did so here. The district court's Termination analysis must be reversed because the Secretary relied on an independently dispositive national interest finding and, in all events, her evaluation of country conditions evidence was not arbitrary and capricious.

**D.    The Secretary's Partial Vacatur of Haiti's 2024 TPS Extension was not Arbitrary and Capricious.**

The arguments articulated above apply with equal force to Secretary Noem's partial vacatur of Secretary Mayorkas' 18-month extension of Haiti's designation. *Supra* Argument §III.B. For the same reasons, the district court erred in ruling that the Secretary lacked the implicit authority to carry out the partial vacatur and impermissibly failed to consult with other agencies or review country conditions. 1-ER-54-59. In the case of Haiti, it is even clearer that vacatur was not intended to bypass the statutory termination procedure because Haiti remained designated for TPS for nearly six more months after the vacatur, at which point Secretary Noem still had to decide whether to terminate or further extend its designation. 6-ER-526, 6-ER-525.

The district court also erred in discounting Secretary Noem's reasons for the Haiti Partial Vacatur and ruling that the decision was arbitrary and capricious. 1-ER-55-59. As with the Venezuela Vacatur, Secretary Noem explained that the Haiti vacatur was intended to align Haiti's TPS designation with TPS' temporary purpose and permit meaningful appraisal of the national interest. 6-ER-525-526. Secretary Noem accounted for reliance interests, weighed viable alternatives, and

69

considered relevant country conditions (though the law did not require her to do so, given that the vacatur was neither a termination nor an extension). 6-ER-525-526.

Nor was it dispositive of the Secretary's concerns, as the district court thought, if the problems the Secretary identified in the 2024 Haiti extension were present in other designations or extensions, too. An agency need not be bound by its past errors or omissions; indeed, that is the point of the reconsideration authority discussed already. Under these circumstances, the district court's conclusion that the partial vacatur was preordained and unreasonable is untenable, and this Court should reverse as to Plaintiffs' APA claims challenging the Haiti vacatur and termination. 1-ER-56-59; *see Balt. Gas & Elec. Co.*, 462 U.S. at 105.

## V. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING UNIVERSAL RELIEF

Finally, even if the Court affirms the district court, it should narrow the judgment because its remedy, universal vacatur extending to non-parties, was an abuse of discretion. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("A universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power.").

70

Under settled constitutional and equitable principles, a court may not issue relief that is broader than necessary to remedy actual harm shown by specific plaintiffs. *Gill v. Whitford*, 585 U.S. 48, 73 (2018). A valid remedy "operate[s] with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (cleaned up). The Supreme Court has already held that "universal injunctions" are unlawful because that relief was unavailable at the founding and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act [of 1789]." *CASA*, 145 S. Ct. at 2554. Universal vacatur similarly falls outside of what the APA authorizes.

5 U.S.C. §706(2) provides that a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions" found to be unlawful. But the term "set aside" in §706(2) does not pertain to remedies at all. Instead, it has historically encompassed "put[ting] to one side" or "reject[ing] from consideration." *See, e.g.*, Webster's New International Dictionary of the English Language 2291 (2d ed. 1958); *accord* Act of Aug. 24, 1937, ch. 754, 50 Stat. 752-753*; Massachusetts v. Mellon*, 549 U.S. 447, 488 (1923); *Mallinckrodt Chem. Works v. Missouri ex rel. Jones*, 238 U.S. 41, 54 (1915).

71

Statutory context confirms that reading, as 5 U.S.C. §703 points outside the APA for the available remedies, specifying that "[t]he form of proceeding" is a traditional "form of legal action," such as "actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." There is no reason to think that, after "nodd[ing] to traditional standing rules and remedial principles" in Section 703, "Congress proceeded just a few paragraphs later to plow right through those rules and empower a single judge to award a novel form of relief affecting parties and nonparties alike." *Texas*, 599 U.S. at 698 (Gorsuch, J., concurring). And the legislative history likewise confirms that §706 was not intended to create a novel remedy like universal vacatur. *See, e.g.*, APA, S. Doc. No. 248, 79th Con., 2d Sess. 36-37 (1946 (referring to governing remedies); 92 Con. Rec. 2159 (1946) (same); S. Rep. No. 752, 79th Cong., 1st Sess. 27 (1945) (Senate Report) (omitting any commentary as to "set aside"); H.R. Rep. No 1980, 79th Cong., 2d Sess. 44 (1946) (same). Indeed, in determining that universal vacatur was the "default remedy" under 5 U.S.C. §706(2)(A), the district court rested on the faulty premise that such a conclusion follows, in the absence of binding authority to the contrary, ignoring the aforementioned plain

72

language, statutory context, and legislative history supporting limiting relief to the parties. 1-ER-64-69; *Cf. CASA*, 606 U.S. at 846-47, 851 (reasoning that "[c]omplete relief is not synonymous with universal relief" and "courts generally may administer complete relief between the parties") (emphasis in original) (citation and internal quotation marks omitted).

In disregarding usual equitable limitations on its authority, the district court ignored the nature of this case, which contains no request for class certification. *See CASA*, 606 U.S. at 842-47. Instead, the district court circumvented Rule 23's limits on class actions, and "create[d] de facto class actions at will" through its imposition of universal vacatur. *Id.* at 849-50 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011)); 1-ER-64-69.

The challenged order exemplifies the significant problem created when an organization—like Plaintiff NTPSA—litigates based on speculative harms or generalized grievances rather than *actual injury*. The court's conclusion that "the agency actions here have had a uniform and nationwide impact on all Venezuelan TPS holders located across the United States"—1-ER-65—ignored the heavy burden on a party seeking

universal relief. The mere fact that Plaintiffs challenge a nationwide immigration policy is not enough to warrant universal relief. *Immigrant Defenders*, 145 F.4th at 995. Moreover, Plaintiffs only provided a short list of individuals affected by the termination of the 2023 TPS designation, cutting against the conclusion that it was "impossible" to limit relief to the parties. *NTPSA II*, 2025 WL 2661556, at *6; Dkt. 74 at 53-60; 1-ER-64-69. Even if every NTPSA member could show concrete injury, the district court's concerns over privacy and practical considerations are misplaced, as Plaintiffs are required to affirmatively register for TPS protection, and the government routinely handles this information in evaluating TPS eligibility. §1254a(a); 1-ER-69. Finally, the district court's suggestion that the Secretary failed to explain how relief could be afforded to some members and not others, 1-ER-64-69, gave it no warrant to disregard ordinary equitable principles.

The universal scope of the order is especially problematic here given §1252(f)(1)'s unambiguous foreclosure of any injunctive relief outside a proceeding against an individual alien. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 647 n.16 (D.C. Cir. 2020) (Rao, J., dissenting). Thus, if this Court declines to vacate the district court's judgment outright, it should

at least limit it to Plaintiffs and their members at the time their complaint was filed. *CASA*, 606 U.S. at 842-47.

## **CONCLUSION**

This Court should reverse the district court's judgment and remand with instructions to dismiss Plaintiffs' APA claims.

Respectfully submitted,

BRETT A. SHUMATE
    *Assistant Attorney General*

YAAKOV M. ROTH
    *Principal Deputy Assistant*
    *Attorney General*

DREW C. ENSIGN
    *Deputy Assistant*
    *Attorney General*

WILLIAM H. WEILAND
    *Acting Assistant Director*

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
    *Trial Attorney*
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

ERIC SNYDERMAN
LAUREN BRYANT
AMANDA SAYLOR
CATHERINE ROSS
    *Trial Attorneys*

76

## **<u>BRIEF FORMAT CERTIFICATION</u>**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and

Ninth Circuit Rule 32-1(a), I certify that Appellants-Defendants' Brief:

(1) was prepared using 14-point Century Schoolbook type;

(2) is proportionally spaced; and,

(3) contains 13,997 words, exclusive of tables of contents and

authorities, and certificates of counsel.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6(b), I certify that the following cases raise the same or related challenges to the Secretary's administration of the TPS statute:

- *National TPS Alliance v. Noem*, 25-cv-5687-TLT (N.D. Cal.), *appeal pending*, No. 25-4901 (9th Cir.) (reviewing entry of 5 U.S.C. §705 relief with respect to natural disaster related TPS designations for Nicaragua, Honduras, and Nepal) (opening brief due October 20, 2025).

- *Haitian Evangelical Clergy Association et al. v. Donald J. Trump, et al.*, — F. Supp. 3d —, 2025 WL 1808743 (E.D.N.Y. July 1, 2025) (final judgment addressing Haiti's partial TPS vacatur), *appeal filed* (2d Cir. Sept. 25, 2025).

- *Miot v. Trump*, 25-cv-2471 (D.D.C.) (addressing Haiti's partial vacatur).

- *CASA Inc., et al., v. Kristi Noem, et al.*, — F. Supp. 3d —, 2025 WL 1907378 (D. Md. July 10, 2025), *denial of stay affirmed by* 2025 WL 2028397 (4th Cir. July 21, 2025)

- *Haitian Americans United, Inc., et al. v. Donald J. Trump, et al.*, 1:25-cv-10498 (D. Mass.) (addressing Haiti and Venezuela TPS determinations).

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

ii

## <u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 16, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system. All parties were served electronically through the ACMS system.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation