**No. 25-5724**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**NATIONAL TPS ALLIANCE, et al.**,
Appellees,

v.

**MARKWAYNE MULLIN, et al.**,
Appellants.

On Appeal from the United States District Court
for the Northern District of California
District Court Case No. 3:25-cv-1766

# APPELLANTS' MOTION FOR A STAY PENDING APPEAL

(Relief requested by October 26, 2026)

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

RUTH ANN MUELLER
*Senior Litigation Counsel*

DANIEL CAPPELLETTI
JEFFREY M. HARTMAN
*Trial Attorneys*
Office of Immigration Litigation
Civil Division, U.S. Dep't of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 6

I. The Government Is Likely to Succeed on Appeal ..... 8

A. The Court Is Likely to Reverse the Grant of Summary Judgment on Plaintiffs' Non-Constitutional Claims ..... 8

B. The Court Cannot Affirm on Alternative, Constitutional Grounds ..... 12

II. The Equitable Factors Favor a Stay Pending Appeal ..... 13

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

## CASES

*African Communities Together v. Mullin*,
183 F.4th 76 (1st Cir. 2026) .................................................................................. 9

*African Communities Together v. Mullin*,
No. 26-cv-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026)...................... 15

*Aung Doe v. Mullin*,
No. 26-1294, 2026 WL 2093686, at (7th Cir. July 16, 2026) ....................................... 9

*Braham v. Nat'l Collegiate Athletic Ass'n*,
— F.4th —, 2026 WL 2653095 (9th Cir. Sept. 9, 2026) ............................................ 11

*CASA, Inc. v. Noem*,1
No. 25-1792, 2025 WL 2028397 (4th Cir. July 21, 2025)........................................... 15

*Dep't of State v. Munoz*,
602 U.S. 899 (2024)...............................................................................................14, 15

*Fiallo v. Bell*,
430 U.S. 787 (1977)..................................................................................................... 14

*Geo Group, Inc. v. Menocal*,
607 U.S. 438 (2026)..................................................................................................... 12

*INS v. Legalization Assistance Project*,
510 U.S. 1301 (1993)................................................................................................... 14

Maryland v. King,
567 U.S. 1301 (2012)................................................................................................... 15

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ...................................................................1, 2, 7, 8, 9, 10, 13, 15

*Mullin v. Nat'l TPS Alliance*,
No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026).........................................1, 6, 9, 14

*Nat'l TPS All. v. Noem*,
150 F.4th 1000 (9th Cir. 2025) ....................................................................................... 5

*Nat'l TPS Alliance v. Noem*,
773 F. Supp. 3d 807 (N.D. Cal. 2025) ........ 4

*Nat'l TPS Alliance v. Noem*,
798 F. Supp. 3d 1108 (N.D. Cal. 2025) ........ 1, 5, 7, 8, 9, 12

*Nat'l TPS Alliance v. Noem*,
166 F.4th 5 (9th Cir. 2025) ........ 1, 5, 6, 17

*Nat'l TPS Alliance v. Noem*,
169 F.4th 6 (9th Cir. 2026) (order denying rehearing en banc) ........ 1, 6, 15

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 6, 7, 13, 15

*Noem v. Nat'l TPS Alliance*,
145 S. Ct. 2728 (2025) ........ 1, 5, 7, 14

*Noem v. Nat'l TPS Alliance*,
146 S. Ct. 23 (2025) ........ 1, 5, 7, 14

*Patel v. Garland*,
596 U.S. 328 (2022) ........ 10

*People Not Politicians v. Order*,
609 U.S. —, 2026 WL 2883222 (U.S. Sept. 25, 2026) ........ 14

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ........ 11

*Sagana v. Tenorio*,
384 F.3d 731 (9th Cir. 2004) ........ 15

*Spencer v. Kemna*,
523 U.S. 1 (1998) ........ 11

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) ........ 14

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 15

*Trump v. Hawaii*,
585 U.S. 667 (2018) ........ 14

*Williamson v. UNUM Life Ins. Co.*,
160 F.3d 1247 (9th Cir. 1998) .......... 12

## STATUTES

5 U.S.C. §705 .......... 15

8 U.S.C. §1254a(b)(1)(C) .......... 3

28 U.S.C. §1291 .......... 12

8 U.S.C §1254a(b)(2), (b)(3)(A) .......... 3

8 U.S.C. §1254a(b)(3)(A) .......... 3, 11

8 U.S.C. §1254a(b)(3)(B) .......... 3, 11

8 U.S.C. §1254a(b)(3)(B), (d)(3) .......... 3

8 U.S.C. §1254a(b)(5)(A) .......... 3, 5, 6, 8, 9, 10

## REGULATIONS

*Designation of Venez. for [TPS]*,
86 Fed. Reg. 13,574 (Mar. 9, 2021) .......... 3

*Extension and Redesignation of Venez. for,*
*[TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023) .......... 4

*Extension of the 2023 Designation of Venez. for,*
*[TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025) .......... 4, 11

*Termination of the Designation of Haiti for,*
*[TPS]*, 90 Fed. Reg. 54,733 (Nov. 28, 2026) .......... 7

*Vacatur of 2025 TPS Decision for Venez.*,
90 Fed. Reg. 8,805 (Feb. 3, 2025) .......... 4

## INTRODUCTION

In this lawsuit, plaintiffs obtained a final judgment setting aside, on non-constitutional grounds, the Secretary of Homeland Security's temporary protected status (TPS) actions regarding Haiti and Venezuela. *Nat'l TPS Alliance v. Noem*, 798 F. Supp. 3d 1108, 1143-65 (N.D. Cal. 2025). In January, this Court affirmed the district court's judgment. *Nat'l TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. 2026), *pet. for reh'g en banc denied*, 169 F.4th 796 (9th Cir. 2026). But in June, the Supreme Court held that the TPS statute's "judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026). In light of that holding, the parties agreed that the Supreme Court should grant certiorari, vacate this Court's January decision, and remand for further consideration. The Supreme Court has now done so. *Mullin v. Nat'l TPS Alliance*, No. 26-48, — S. Ct. —, 2026 WL 2976626 (U.S. Oct. 5, 2026).

That order was the Supreme Court's third intervention in this case. Previously, the Supreme Court intervened twice to permit the Secretary's Venezuela TPS actions to take effect, after the district court and this Court declined to enter stays pending appeal. *Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025) (staying §705 order); *Noem v. Nat'l TPS Alliance*, 146 S. Ct. 23 (2025) (staying partial final judgment). In light of the Supreme Court's decision to grant certiorari, vacate, and remand, the Supreme Court's second stay will dissolve when that court sends down its judgment in 32 days, on November 6. The government thus renews its request that this Court enter a stay pending appeal as to Plaintiffs' Venezuela claims, effective upon receipt of the Supreme

Court's judgment, in order to maintain the status quo that the Supreme Court has twice intervened to establish, including in this appeal. The government requests a ruling on this motion by October 26, 2026. If the Court denies a stay, the government additionally requests that the Court stay the district court's judgment for at least 21 days in order to permit the government an orderly opportunity to seek additional relief.

A stay pending appeal is warranted because the government is likely to succeed in this appeal in light of the Supreme Court's decision in *Doe*. The district court's judgment rested exclusively on non-constitutional claims, which are not reviewable. *Doe*, 146 S. Ct. at 2137. Nor can plaintiffs obtain or maintain any relief based on the supposed unlawfulness of the vacatur of the extension of Venezuela's TPS designation. In addition to falling within the review bar, any challenges to that action are now moot, because the extension that the vacatur sought to shorten has now expired on its own terms. Because the Supreme Court has already held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," *id.*, and the non-merits considerations continue to favor the government, this Court should grant a stay pending appeal.

Appellees oppose a stay and intend to file a response.

## BACKGROUND

**The TPS Mechanism.** The Secretary, "after consultation with appropriate agencies," may designate a country for TPS if, among other grounds, there are "extraordinary and temporary conditions in the foreign state that prevent aliens who

are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. §1254a(b)(1)(C).

TPS designations are discretionary, and the Secretary must conduct periodic reviews to determine whether the conditions underlying a TPS designation continue to be met. §1254a(b)(2), (b)(3)(A). If the Secretary decides that the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." §1254a(b)(3)(B). The statute requires that review take place "[a]t least 60 days before the end of" the designation or extension, but it does not limit how early review may occur. §1254a(b)(3)(A). Similarly, the statute requires that terminations be announced at least 60 days before they take effect, but it does not limit how far in advance they can be announced, and it contemplates that terminations may take effect on a substantial delay. §1254a(b)(3)(B), (d)(3).

The TPS statute substantially curtails judicial review. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." §1254a(b)(5)(A).

**Venezuela TPS Determinations.** Venezuela was initially designated for TPS in 2021 based on extraordinary and temporary conditions that prevented its citizens from safely returning. *Designation of Venez. for [TPS]*, 86 Fed. Reg. 13,574 (Mar. 9, 2021).

In 2023, Secretary Mayorkas extended the 2021 Designation through September 10, 2025, and at the same time newly designated Venezuela for TPS until

April 2, 2025. *Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).

On January 17, 2025, a few days before leaving office, Secretary Mayorkas extended the not-yet-expired 2023 Designation for 18 months—until October 2, 2026—and established a consolidated filing process that allowed all Venezuela TPS beneficiaries to obtain TPS through the expiration of that extension. *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025).

On January 28, 2025, Secretary Noem vacated that late-breaking 2025 extension, before it was even scheduled to take effect, reasoning that both the consolidation of the two tracks and the premature extension failed to "acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." *Vacatur of 2025 TPS Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025).

On February 5, 2025, Secretary Noem announced the termination of Venezuela's 2023 designation because it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the [U.S.]." *Termination of the October 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9,040, 9,041 (Feb. 5, 2025).

**This Litigation.** The National TPS Alliance and seven individual plaintiffs challenged the Secretary's Venezuela TPS determinations under the Administrative Procedure Act (APA) and moved to postpone those determinations. D. Ct. Dkt. 1. The district court granted their motion, and this Court denied the government's stay request. *Nat'l TPS Alliance v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. 2025), *stay pending*

*appeal denied* No. 25-2120, 2025 WL 1142444 (9th Cir. Apr. 18, 2025). In May 2025, the Supreme Court granted the government's application for a stay pending appeal until the resolution of any certiorari petition. *Nat'l TPS Alliance*, 145 S. Ct. at 2728. This Court subsequently affirmed the grant of preliminary relief. *Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2025).

In September 2025, the district court entered a partial final judgment setting aside the vacatur of Venezuela's TPS extension and termination of the 2023 Venezuela designation, as well as the partial vacatur of Haiti's TPS extension. *Nat'l TPS Alliance*, 798 F. Supp. 3d at 1108. The district court ruled solely on Plaintiffs' non-constitutional claims. *Id.* at 1164.

This Court declined to grant a stay pending appeal of that partial final judgment as to Venezuela. *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025). The Supreme Court again stayed the district court's judgment as to Venezuela through the "disposition of a petition for a writ of certiorari, if such writ is timely sought" following this Court's resolution of this appeal. *Nat'l TPS Alliance*, 146 S. Ct. at 24. "In the event certiorari is granted, the stay shall terminate upon the sending down of the [Supreme Court's] judgment." *Id.*

This Court subsequently affirmed, concluding that 8 U.S.C. § 1254a(b)(5)(A) did not "bar judicial review of a claim that the Secretary exceeded her statutory authority" and concluded that Secretary Noem lacked authority to vacate an announced TPS extension. *Nat'l TPS Alliance*, 166 F.4th at 758, 761-65. As for the termination of TPS

for Venezuela, this Court concluded that "Secretary Noem exceeded her authority under the TPS statute by attempting to terminate Venezuela's TPS," reasoning that Secretary Mayorkas's extension remained "in effect until October 2, 2026[.]" *Id.* at 766. The Court made clear that it "consider[ed] Plaintiffs' statutory claims, not their constitutional claims." *Id.* at 759.

The Court denied the government's petition for rehearing en banc. Nine judges dissented and would have applied §1254a(b)(5)(A)'s bar on judicial review and vacated the judgment. *Nat'l TPS Alliance*, 169 F.4th at 797 (order), 800-08 (Bumatay, J., principal dissent).

The government petitioned for a writ of certiorari, requesting that the Supreme Court grant certiorari, vacate this Court's judgment, and remand in light of the Supreme Court's decision in *Doe*. See Pet. 10-12, *Mullin v. Nat'l TPS Alliance*, No. 26-48 (July 9, 2026). Plaintiffs did not oppose the government's petition and agreed that course was appropriate. See Resp. to Pet. 1, *Mullin v. Nat'l TPS Alliance* (filed Aug. 20, 2026). On October 5, the Supreme Court granted the government's petition, vacated this Court's judgment, and remanded for further proceedings consistent with *Doe*. *See Nat'l TPS Alliance*, 2026 WL 2976626 at *1 (order). The Supreme Court's stay pending appeal will thus expire on November 6. *See* S. Ct. R. 45.3.

## ARGUMENT

This Court should stay the district court's judgment as to the Venezuela actions. The Supreme Court has twice considered the stay factors in this case, *see Nken v. Holder*,

556 U.S. 418. 434-35 (2009) (stay factors), concluding that the government is entitled to a stay while the litigation continues, *Nat'l TPS Alliance*, 145 S. Ct. at 2728-78; *Nat'l TPS Alliance*, 146 S. Ct. 24. In particular, the Supreme Court stayed the very same district court judgment that is now back before this Court on remand. *Nat'l TPS Alliance*, 146 S. Ct. 24. And *Doe*'s unmistakable holding that courts cannot entertain non-constitutional challenges to TPS determinations only confirms the government's entitlement to a stay. This Court should issue a stay pending appeal to preserve the status quo and substantive law the Supreme Court has articulated while the Court addresses the Supreme Court's remand. The government is likely to succeed on the merits, and the non-merits factors likewise tip in the government's favor, as the Supreme Court has necessarily twice concluded, even before *Doe*.[1]

[1] The government does not need, or seek, a stay pending appeal as to the Haiti portion of the judgment. The district court vacated the partial vacatur of the Mayorkas extension, without resolving any challenges to the ensuing termination of Haiti's TPS designation. *Nat'l TPS Alliance*, 798 F. Supp. 3d at 1164. The partial vacatur merely advanced the expiration of the extension, and the extension has since expired on its own terms, so the district court's judgment as to Haiti has no present effects on the status quo. Dkt. 65, Gov't 28(j) Letter at 1 (Jan. 7, 2026) (advising that the "portion of the appeal challenging the setting aside of the partial vacatur of TPS for Haiti is now moot"). And the Secretary has since made a new decision to terminate TPS for Haiti. *See Termination of the Designation of Haiti for [TPS]*, 90 Fed. Reg. 54,733 (Nov. 28, 2026); *cf. Doe*, 146 S. Ct. at 336-50 (rejecting challenges to the November 2025 termination of TPS for Haiti).

## I. The Government Is Likely to Succeed on Appeal.

First, *Doe* requires reversal of the district court's judgment. The judgment rested solely on non-constitutional grounds, which Congress has excluded from judicial review. And even if the Court concluded that a vacatur or partial vacatur of a TPS designation or extension is somehow not a "determination … with respect to" a TPS "designation, or termination or extension of a designation," any challenges to the Venezuela vacatur are moot now that the time the vacatur sought to shorten has expired on its own terms.

### A. The Court Is Likely to Reverse the Grant of Summary Judgment on Plaintiffs' Non-Constitutional Claims.

Congress barred courts from second-guessing the Secretary's TPS determinations by providing that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. §1254a(b)(5)(A). The Supreme Court eliminated any doubt about how that review bar applies to non-constitutional challenges to TPS determinations. The Court squarely held that the TPS statute bars judicial review of "non-constitutional claims" that challenge "a discrete decision made by the Secretary," regardless of whether the claim targets the "final decision to terminate" a country's "TPS designation[]" or one of the "steps [that] were part of the process" leading up to that decision. *Doe*, 146 S. Ct. at 2134.

After *Doe*, the government is—at minimum—likely to prevail on its appeal of the district court's judgment, since the judgment resolved only non-constitutional claims. *Nat'l TPS Alliance*, 798 F. Supp. 3d at 1164. Indeed, several courts—including this Court—have recognized that *Doe* required summary reversal of district court decisions granting relief on non-constitutional grounds. *Nat'l TPS Alliance v. Mullin*, No. 26-199 (9th Cir. July 14, 2026) (summarily reversing a final judgment); *African Communities Together v. Mullin*, 183 F.4th 76, 77 (1st Cir. 2026) (summarily reversing a postponement order); *Aung Doe v. Mullin*, No. 26-1294, 2026 WL 2093686, at *1 (7th Cir. July 16, 2026) (same).

*Doe* similarly requires summary reversal of the district court's judgment here. As relevant here, the district court held that challenges to the Secretary's statutory authority were not barred by §1254a(b)(5)(A), that Secretary Noem's vacatur of Secretary Mayorkas's extension was in excess of the Secretary's statutory authority, and that Secretary Noem's termination of Venezuela's TPS designation was unlawful because it was premised on the purportedly unlawful vacatur. *See Nat'l TPS Alliance*, 798 F. Supp. 3d at 1133, 1145, 1150. This Court affirmed for the same reasons. *See Nat'l TPS Alliance*, 166 F.4th at 757, 766. But the Supreme Court squarely "h[e]ld that the TPS statute's judicial-review bar applies to *all non-constitutional claims*." *Doe*, 146 S. Ct. at 2137 (emphasis added). That includes challenges to the Secretary's statutory authority to vacate an extension.

That result follows from the plain import of §1254a(b)(5)(A)'s text, which the Supreme Court interpreted as "clear" and having a "very broad" "plain meaning." *Doe*, 146 S. Ct. at 2133. In particular, *Doe* emphasized that the statute uses "'determination'" in the "broad sense," as covering not just a singular decision, but also "the chain of events leading up to a decision." *Id.* Moreover, *Doe* reasoned that the phrase "with respect to" in §1254a(b)(5)(A) "'ensure[s] that the scope of [the] provision covers not only its subject but also *matters relating to that subject*.'" *Id.* (emphasis added) (quoting *Patel v. Garland*, 596 U.S. 328, 339 (2022)). The TPS statute's judicial review bar thus covers not only the final determination to designate, extend, or terminate, but also "all the preceding decisions" that "relate[]" to that ultimate decision. *Id.* at 2133-34. A vacatur that shortens an extension or designation undoubtedly relates to that designation or extension decision. And a vacatur that leads up to a termination likewise relates to that ultimate decision. The vacatur is therefore covered by the judicial-review bar. *See Doe*, 146 S. Ct. at 2138, 2134 (explaining that antecedent decisions, like the "decision to consult the State Department in a particular manner and her decision that country conditions . . . justified termination," were not reviewable).

Even if this Court concluded that Secretary Noem's vacatur of Secretary Mayorkas' extension were somehow reviewable, notwithstanding the above, challenges to Secretary Noem's later *termination* of Venezuela's TPS designation are indisputably barred by the statute's plain text, which explicitly precludes review of the

"termination . . . of a designation" of TPS. 8 U.S.C. §1254a(b)(5)(A). In other words, even if Plaintiffs' challenges to the vacatur were reviewable and meritorious, they still would not present a path to evading the bar on review of a TPS termination decision and setting that separate action aside.

Finally, there is an independent jurisdictional barrier to reviewing the vacatur: Challenges to the vacatur are moot. The only effect of the vacatur was to cut short the expiration date of Secretary Mayorkas's attempted extension. But, putting aside the vacatur, "the expiration of the most recent previous extension," 8 U.S.C. §1254a(b)(3)(B), occurred on October 2, 2026. *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. at 5,961-62. At a minimum, Secretary Noem's February 2025 termination decision would be effective as of that date. The text of the statute states only that the Secretary must make a determination "[a]t least 60 days before [the] end" of the designation period, but it does not limit how early that determination may be made. 8 U.S.C. §1254a(b)(3)(A). And under the terms of the statute, a termination "shall not be effective earlier than 60 days after the date the notice is published or, *if later, the expiration of the most recent previous extension*." 8 U.S.C. §1254a(b)(3)(B) (emphasis added). Wholly independent from the vacatur, then, Secretary Noem's termination at minimum took effect on October 3, 2026, when the Secretary Mayorkas extension expired. The vacatur thus has no continuing effect and can no longer provide a basis for invalidating the termination. *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 3, 18 (1998) (explaining that courts "are not in the business of pronouncing that past actions which

have no demonstrable continuing effect were right or wrong"); *accord Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also, e.g.*, *Braham v. Nat'l Collegiate Athletic Ass'n*, — F.4th — , 2026 WL 2653095, at *2 (9th Cir. Sept. 9, 2026) (dismissing challenge as moot).

**B. The Court Cannot Affirm on Alternative, Constitutional Grounds.**

To the extent Plaintiffs attempt to argue that they could instead prevail on their *constitutional* claims, that maneuver would fail.

*First*, the Court lacks appellate jurisdiction to address Plaintiffs' constitutional claims. The district court entered summary judgment only on Plaintiffs' APA claims, leaving their constitutional claims unresolved. *Nat'l TPS Alliance v. Noem*, 798 F. Supp. 3d at 1164. The Court has appellate jurisdiction because the district court entered a partial final judgment under Rule 54(b) "on the APA claims related to (1) the Venezuela vacatur, (2) the Venezuela termination, and (3) the Haiti vacatur." *Id.* Rule 54(b) permits courts of appeals to treat *certified* claims as final. *See* Fed. R. Civ. P. 54(b) ("the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties"); *Geo Group, Inc. v. Menocal*, 607 U.S. 438, 443-44 (2026) (explaining that, among other things, the final judgment rule "preserves the proper balance between trial and appellate courts"); *Williamson v. UNUM Life Ins. Co.*, 160 F.3d 1247 (9th Cir. 1998) (appellate review is generally limited to final judgments issued by district courts). Because the district court did not decide Plaintiffs' constitutional claims, let alone enter a partial final judgment as to them, *see Nat'l TPS Alliance*, 798 F. Supp. 3d at 1164 ("temporarily stay[ing] continued litigation" as to Plaintiffs' equal-protection claims),

the Court lacks appellate jurisdiction over those claims. *See* 28 U.S.C. § 1291. The claims thus provide no basis on which the Court could seek to affirm on alternative grounds.

*Second*, the claims would fail in any event. As Justice Thomas explained, the judicial review bar applies just as squarely to constitutional claims as to non-constitutional claims. *Doe*, 146 S. Ct. at 2141 ("[T]here is no indication in the text that reviewability may turn on the source of law for the underlying claim."). And even if reviewable, Plaintiffs' equal-protection claims would fail on the merits. As *Doe* explained in holding that another group of plaintiffs were unlikely to succeed on their equal-protection challenge to the termination of Haiti's TPS designation, "[n]one of the cited statements by either the President or the Secretary was overtly racial," "in substance all expressed policy views that could rest on race-neutral justifications," and "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" are "a strong, race-neutral explanation" for the statements. *Id.* at 2138-39. Moreover, even if Plaintiffs hypothetically proffered more evidence of the same sort, *Doe* makes clear that is insufficient. *Id.* at 2140 n.7 (explaining that additional evidence, obtained from discovery in this case, was "cumulative of other evidence in the record" and did not affect the analysis).

## II. The Equitable Factors Favor a Stay Pending Appeal.

The remaining factors favor a stay, too. *See Nken*, 556 U.S. at 435. Most fundamentally, as the Supreme Court necessarily concluded in twice staying the district

court's orders with respect to Venezuela *in this case*—including the very same final judgment at issue here on remand—that the equities favor a stay. Particularly with the benefit of *Doe* and the order vacating this Court's judgment, the Supreme Court's previous stay analysis of the district court's judgment necessarily controls the equities here. *Nat'l TPS Alliance*, 2026 WL 2976626 at *1; *see Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("interim orders are not conclusive as to the merits" but "they inform how a court should exercise its equitable discretion in like cases"); *People Not Politicians v. Onder*, 609 U.S. —, 2026 WL 2883222, at *1 (U.S. Sept. 25, 2026) (Supreme Court's third stay decision regarding Missouri's electoral maps "should come as no surprise" given "two prior" Supreme Court orders in that litigation).

Moreover, absent a stay, the district court's judgment represents "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). That is especially so because the harm here arises in an area that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control," *Dep't of State v. Munoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018), and *Fiallo v. Bell*, 430 U.S. 787, 792 (1977))—namely, the Secretary's considered judgments on matters of foreign affairs and national security. The Government and the public share an interest in ensuring adherence to the process established by Congress, under which the Secretary has unreviewable authority over TPS designations. *Nat'l TPS Alliance*, 145

S. Ct. at 2728-29; *Nat'l TPS Alliance*, 146 S. Ct. at 24; *see Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *CASA, Inc. v. Noem*, No. 25-1792, 2025 WL 2028397 (4th Cir. July 21, 2025) (denying relief under 5 U.S.C. §705).

Plaintiffs have previously maintained that termination of TPS could lead to the loss of employment or health benefits, possible removal, and family separation. But the end of TPS's inherently *temporary* protection is not equivalent to a removal order, and the loss of associated benefits is inherent in the temporary status Congress crafted. *See Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004) (rejecting due-process challenge to temporary worker program); *see also African Communities Together v. Mullin*, No. 26-cv-11201-ADB, 2026 WL 2364398, at *8 (D. Mass. Aug. 14, 2026), *appeal filed* No. 26-1930 (1st Cir.) (rejecting argument that TPS termination deprives aliens of a protected liberty interest). And the Supreme Court underscored that "the political process is the proper forum for remedying" concerns about the Secretary's administration of TPS. *Doe*, 146 S. Ct. at 2137 (quoting *Nat'l TPS Alliance*, 169 F.4th at 807 (Bumatay, J., dissenting from denial of en banc rehearing)). Moreover, "removal alone cannot constitute the requisite irreparable injury" to justify a stay and possible family separation is a possible consequence of *any* future removal proceeding, as aliens have no constitutional right to live in the United States. *Nken*, 556 U.S. at 435; *see Munoz*, 602 U.S. at 915-16 ("[I]t is a

fallacy to leap … to the conclusion that United States citizens have a fundamental right that can limit how Congress exercises the Nation's sovereign power to admit or exclude foreigners.") (cleaned up). Thus, the equities favor the government.

## CONCLUSION

The Court should grant a stay pending appeal effective immediately upon receipt of the Supreme Court's judgment vacating this Court's decision in *National TPS Alliance*, 166 F.4th at 739-68. The government respectfully requests that the Court rule on this motion by October 26, 2026.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

RUTH ANN MUELLER
*Senior Litigation Counsel*

*/s/ Jeffrey M. Hartman*
JEFFREY M. HARTMAN
DANIEL CAPPELLETTI
*Trial Attorneys*
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27, I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Garamond type, and the motion contains 4,037 words in compliance with Ninth Circuit Rule 27-1(d).

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation
Attorney for Appellants

Dated: October 5, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, counsel for Appellants electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system and that service will be accomplished via the ACMS system.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation
Attorney for Appellants