**No. 25-5724**

IN THE
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,
*Plaintiffs-Appellees*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,
*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, NO. 3:25-CV-01766-EMC
HONORABLE EDWARD M. CHEN

# RESPONSE IN OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR A STAY PENDING APPEAL

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW
AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

*Attorneys for Plaintiffs-Appellees*

Additional Counsel for Plaintiffs-Appellees

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Mohammad Tajsar (SBN 280152)
mtajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

STANDARD OF REVIEW ............................................................... 4

ARGUMENT ............................................................................... 4

I. Defendants Have Not Shown a High Likelihood of Success on Appeal........................................................ 4

A. This Court Retains Subject Matter Jurisdiction Over Plaintiffs' Challenges to the Venezuela Vacatur and Termination............ 4

B. The Vacatur and Termination Are Not Moot .... 15

II. The Balance of Equities Counsels Against a Stay...... 18

CONCLUSION.......................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) .................................................... 4

*Am. Hosp. Ass'n v. Azar*,
964 F.3d 1230 (D.C. Cir. 2020)................................................ 12

*Amgen Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004)...........................................11, 12

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
631 F.3d 1072 (9th Cir. 2011) ................................................ 14

*COMSAT Corp. v. FCC*,
114 F.3d 223 (D.C. Cir. 1997).................................................. 12

*Doe v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ................................................ 19

*E.I. du Pont de Nemours & Co. v. Train*,
430 U.S. 112 (1977) ................................................................ 11

*McNary v. Haitian Refugee Center*,
498 U.S. 479 (1991) .............................................................. 6, 7

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) .................................................... 4

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc) ................................. 4, 9

*Mullin v. Dahlia Doe*,
609 U.S. 324 (2026) ........................................................*passim*

*Mullin v. Nat'l TPS All.*,
No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026) .............6, 7, 13

*Nat'l TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026) .......... 6

*Nat'l TPS All. v. Noem*,
169 F.4th 796 (9th Cir. 2026) .......... 7

*Nat'l TPS All. v. Noem*,
No. 25-CV-01766-EMC, 2025 WL 2617231 (N.D. Cal. Sept. 10, 2025) .......... 22

*Nat'l TPS All. v. Noem (NTPSA I)*,
150 F.4th 1000 (9th Cir. 2025) .......... *passim*

*Nat'l TPS All. v. Noem (NTPSA II)*,
163 F.4th 1152 (9th Cir. 2025) .......... 18, 19

*Noem v. Nat'l TPS All.*,
146 S. Ct. 23 (2025) .......... 18

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 8

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) .......... 14

*Torres v. Madrid*,
592 U.S. 306 (2021) .......... 8

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 18

*Wild Wilderness v. Allen*,
871 F.3d 719 (9th Cir. 2017) .......... 18

**Statutes**

8 U.S.C. § 1182(a)(9)(B)(i)(II) .......... 17

8 U.S.C. § 1182(a)(9)(B)(ii) .......... 17

8 U.S.C. § 1254a(a)(1) .......... 16

8 U.S.C. § 1254a(b)(3)(C) .......................................................... 15

8 U.S.C. § 1254a(b)(5)(A) ...................................................... 9, 11

8 U.S.C. § 1254a(d)(4) ............................................................... 16

8 U.S.C. § 1254a(f)(4) ................................................................. 17

**Other Authorities**

88 Fed. Reg. 40,282, 40,290 (June 21, 2023) ................................. 16

88 Fed. Reg. 40,294, 40,301 (June 21, 2023) ................................. 16

90 Fed. Reg. 8,805, 8,807 (Feb. 3, 2025) .................................... 5, 10

90 Fed. Reg. 28,760 (July 1, 2025) ................................................ 14

90 Fed. Reg. 54,733 (Nov. 28, 2025) .............................................. 14

91 Fed. Reg. 32,069, 32,070 (May 29, 2026) .................................. 15

Adjudicator's Field Manual § 40.9.2(b)(1)(F)(iii), *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf ........................................ 17

*Venezuela*, U.S. DEP'T OF STATE (https://travel.state.gov/en/international-travel/travel-advisories/venezuela.html?utm_source=syndication&pubDate=20260420) (last visited Oct. 15, 2026) .................... 20

## INTRODUCTION

Defendants seek to stay relief for 600,000 Venezuelan refugees despite binding Circuit precedent from this case holding that the Secretary's decisions to vacate and terminate Venezuela's Temporary Protected Status (TPS) designation were unlawful. *See Nat'l TPS All. v. Noem (NTPSA I)*, 150 F.4th 1000, 1019-25 (9th Cir. 2025) ("the Secretary lacks vacatur authority under the statute"). Defendants never even argue, let alone show, that this Court's prior precedent is "clearly irreconcilable" with the Supreme Court's decision in *Mullin v. Dahlia Doe*, 609 U.S. 324 (2026) ("*Dahlia Doe*"). While *Dahlia Doe* undermined some of the reasoning of *NTPSA I*, it is not "clearly irreconcilable" with this Court's holdings that the Secretary lacks authority to vacate a TPS decision and that courts have jurisdiction to say so. Because Defendants are not likely to succeed in arguing that a panel of this Court can disregard prior circuit precedent absent a showing of "clearly irreconcilable" conflict, this Court should deny Defendants' request for a stay.

Defendants contend otherwise, reading *Dahlia Doe* to hold that no court can review the question whether the Secretary has legal authority to vacate a TPS decision. Mot. at 8-10. However, *Dahlia Doe* explicitly declined to reach that issue, and the government itself told the Supreme Court that the vacatur issue

presents a different question from the one *Dahlia Doe* addressed. Moreover, while *Dahlia Doe* interprets the TPS statute's judicial review bar broadly, it is not limitless. Nothing in *Dahlia Doe* undermines this Court's prior holding that a challenge to the agency's authority—here, to the Secretary's legal conclusion that the agency has authority to vacate prior TPS decisions—falls outside the jurisdictional bar's scope. The review bar is necessarily co-extensive with the agency's decision-making authority.

Defendants also suggest that even if the vacatur is unlawful, the termination decision can stand on its own. Mot. at 10-11. But that claim also contravenes this Court's binding precedent. As this Court already held, because the termination is predicated on the vacatur, if the latter is unlawful the former must be set aside as well. *NTPSA I*, 150 F.4th at 1024 ("If the vacatur is postponed, and the prior extension is restored, the termination cannot go into effect."). That conclusion follows from longstanding principles of administrative law, under which this Court may not rewrite the Secretary's termination decision to extricate it from the vacatur. The Secretary must do that for himself, assuming he wishes to do so.

Defendants make a distinct mootness claim, but it is meritless. Mot. at 11-12. The vacatur and termination decisions have significant ongoing effects. Most important, absent any lawful

termination decision, Venezuela's TPS designation is automatically extended by operation of statute. That is how the government has treated successful challenges to TPS decisions for the last decade. Moreover, even if Venezuela's designation had expired on October 2, 2026, many Venezuelan TPS holders have an ongoing stake in whether their presence in this country during the "vacated" TPS extension period is treated as lawful or unlawful, as the availability of other immigration benefits often turns on whether there has been a prior period of unlawful presence. Accordingly, this Court should deny Defendants' request for a stay pending appeal.

Finally, Defendants meet none of the other criteria for a stay, as the balance of equities heavily favors Plaintiffs. The government's asserted irreparable harm is limited to the purported improper intrusion by a federal court on the executive branch. But that harm occurs in *every* case challenging executive action, and neither the Supreme Court nor this Court has held that rulings that stop the executive branch from pursuing its objectives constitute *per se* irreparable harm. On the other hand, Plaintiffs offer overwhelming *evidence* of irreparable harm. Venezuelan TPS holders were, until recently, granted immigration status in recognition of their country's humanitarian crisis. Now, they are facing family separation, deportation to Venezuela and even third countries to which they had no prior ties, prolonged and indefinite

detention, and the loss of employment authorization, health benefits, and access to other forms of immigration relief.

## STANDARD OF REVIEW

A stay requires proving "irreparable injury is the more ... likely outcome" "during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citation omitted). Defendants also must make "a strong showing [they are] likely to succeed," *id.* at 1006 (citation omitted), overcoming a "highly deferential" abuse-of-discretion standard, *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012).

## ARGUMENT

### I. DEFENDANTS HAVE NOT SHOWN A HIGH LIKELIHOOD OF SUCCESS ON APPEAL.

#### A. This Court Retains Subject Matter Jurisdiction Over Plaintiffs' Challenges to the Venezuela Vacatur and Termination.

This Court retains jurisdiction over Plaintiffs' challenges to the Venezuela vacatur and termination. This Court already held "the Secretary lacks vacatur authority under the statute." *NTPSA I*, 150 F.4th at 1019-25. *NTPSA I* is a published opinion of this Court. Because it contains extensive reasoning not described as preliminary or tentative, its holding and rationale bind future panels of this Court except where "clearly irreconcilable" with subsequent Supreme Court or en banc authority. *See Miller v.*

*Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

*NTPSA I* is not clearly irreconcilable with *Dahlia Doe*. Nothing in *Dahlia Doe* undermines *NTPSA I*'s conclusion about the Secretary's authority to vacate a TPS extension or courts' authority to review that decision; the government itself told the Supreme Court that it presented a different question, and *Dahlia Doe* accordingly did not address it. While *Dahlia Doe* interpreted the TPS statute's review bar broadly to encompass 1) the ultimate decision to terminate TPS, 2) any "steps [that] were part of the process that led to" that decision, and 3) any decisions "relating to" that decision, 609 U.S. at 339-40, the vacatur at issue here is none of these things. Rather, it is a stand-alone final agency decision, distinct from the termination, that was not made "under" the TPS statute because that statute does not authorize vacatur. Defendants' own description of the vacatur makes clear it is an independent decision, wholly separate from the termination, as its stated purpose was to "provide an opportunity for informed determinations regarding the TPS designations and clear guidance." Vacatur of 2025 Temporary Protected Status Decision for Venezuela, 90 Fed. Reg. 8,805, 8,807 (Feb. 3, 2025).

While Plaintiffs acknowledge their other statutory challenges to the termination are no longer cognizable after *Dahlia Doe*, their vacatur claim remains cognizable. And because this Court may not

rewrite the termination decision to extract it from the vacatur, it remains the case that "the illegality of the Vacatur must be fatal to the Termination." *Nat'l TPS All. v. Noem (NTPSA III)*, 166 F.4th 739, 766 (9th Cir. 2026), *cert. granted, judgment vacated sub nom. Mullin v. Nat'l TPS All.*, No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026); *see also NTPSA I*, 150 F.4th at 1024 ("If the vacatur is postponed, and the prior extension is restored, the termination cannot go into effect.").

#### 1. *Dahlia Doe* Did Not Decide Whether the TPS Statute Strips Jurisdiction Over Vacatur Authority Claims.

*Dahlia Doe* addressed consolidated challenges to Defendants' decisions to terminate TPS for Haiti and Syria. The Court held "the TPS statute plainly bars consideration of respondents' non-constitutional claims," i.e., that the challenged terminations violated the Administrative Procedure Act because they were preordained and made without statutorily required consultation or review. *Dahlia Doe*, 609 U.S. at 340.

Plaintiffs recognize *Dahlia Doe* contravenes the reasoning of this Court's prior opinion in several respects. First, it undermines this Court's reliance on *McNary v. Haitian Refugee Center*, 498 U.S. 479 (1991). While this Court looked to *McNary* to inform its interpretation of the TPS statute's jurisdiction-limiting provision,

*NTPSA III*, 166 F.4th at 756, *judgment vacated Mullin v. Nat'l TPS All.*, 2026 WL 2976626, the Supreme Court has now rejected that approach. *Dahlia Doe*, 609 U.S. at 341 (holding that lower courts "read far too much into" *McNary*). Second, *Dahlia Doe* declined to give controlling weight to the potentially "absurd results" produced by the government's interpretation of the TPS statute. *NTPSA III*, 166 F.4th at 757, *judgment vacated Mullin v. Nat'l TPS All.*, 2026 WL 2976626. Instead, the Supreme Court neither endorsed nor rejected the government's responses to those hypotheticals, noting only that "[s]ometimes Congress decides that the political process is the proper forum for remedying improper conduct." *Dahlia Doe*, 609 U.S. at 345 (quoting *Nat'l TPS All. v. Noem*, 169 F.4th 796, 807 (9th Cir. 2026) (Bumatay, J., dissenting from denial of reh'g en banc)).

However, *Dahlia Doe* does *not* resolve the question whether this Court has jurisdiction to review a vacatur authority claim. No such claim was presented in *Dahlia Doe*. And Defendants' briefing *explicitly distinguished* the decision to vacate an extension—which they described as "likely unreviewable"—from the decision to terminate a designation—which they described as "plainly unreviewable." Reply Brief for Petitioners, *Mullin v. Dahlia Doe*, Nos. 25-1083 and 25-1084, at 10 (Apr. 20, 2026). Citing Defendants' brief, the Supreme Court expressly declined to reach "whether or

not" Defendants' "assessment" regarding jurisdiction to review a vacatur and other hypothetical scenarios "is correct." *Dahlia Doe*, 609 U.S. at 344.

Defendants argue otherwise, asserting that jurisdiction over Plaintiffs' vacatur authority claim is foreclosed by one line in *Dahlia Doe* stating: "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Dahlia Doe*, 609 U.S. at 345. But the rest of *Dahlia Doe* makes clear that this line refers to all the non-constitutional claims raised by the plaintiffs in that case—i.e., all the claims that were before the Court. *Id.* at 328 (holding the TPS statute "bars consideration of *respondents'* non-constitutional claims") (emphasis added); *id.* at 337 (addressing jurisdiction to review "*respondents'* non-constitutional claims") (emphasis added).

Moreover, even if the single phrase on which Defendants rely could be read to refer generally to every conceivable "non-constitutional claim," including claims explicitly not presented in *Dahlia Doe*, it would be dicta. And that dicta would be particularly unpersuasive because the Supreme Court has instructed that "drive-by jurisdictional rulings—asserting or denying jurisdiction without elaboration, or analysis of whether anything turned on the ruling—should be accorded no precedential effect." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 (2025) (cleaned up); *see also Torres v. Madrid*, 592 U.S. 306, 328-29 (2021) (Gorsuch, J.,

dissenting) ("[D]igressions speculating on how similar hypothetical cases might be resolved . . . are dicta. . . . [W]hatever utility it may have, dicta cannot bind future courts."). At a minimum, because Defendants' reading of that single phrase in *Dahlia Doe* is not the only plausible one, *Dahlia Doe* is not "clearly irreconcilable" with this Court's prior decision in *NTPSA I. Miller*, 335 F.3d at 893.

**2. This Court Retains Jurisdiction to Review the Venezuela Vacatur under *NTPSA I.***

Because *Dahlia Doe* leaves open the question whether courts retain jurisdiction to review a vacatur—including the threshold legal question whether the agency has the authority to issue a vacatur at all—this Court must decide whether Defendants have shown a high likelihood that their jurisdictional position will prevail on appeal. They have not, under both *Dahlia Doe* and this Court's controlling decision in *NTPSA I.*

The TPS statute bars review of "any determination with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection [i.e., subsection (b)]." 8 U.S.C. § 1254a(b)(5)(A). *Dahlia Doe* interprets "determination" broadly. It includes the ultimate "decision" to designate, terminate or extend; any "steps that were part of the process that led to" that decision; and any decisions "relating to" that decision. 609 U.S. at 339-40. But its scope is not infinite. The

question whether the agency has authority to issue a vacatur at all falls outside the TPS statute's jurisdictional bar, even broadly understood.

First, the vacatur was not *itself* a designation, termination or extension decision. It did not designate Venezuela for TPS, nor did it terminate or extend Venezuela's designation. *See* 90 Fed. Reg. at 8,807 ("USCIS will provide additional guidance regarding the two Venezuela TPS designations on a future date . . . .").

Second, unlike the decisions challenged in *Dahlia Doe*, the vacatur at issue here is not a "subsidiary determination" that "merge[d] into" the termination. *Dahlia Doe,* 609 U.S. at 344. The *Dahlia Doe* plaintiffs challenged the "decision to consult the State Department in a particular manner" and the "decision that country conditions . . . justified termination." *Id.* at 339. The Supreme Court held these "merge[d] into the final agency action," which in that case was a termination. *Id.* at 344. Therefore, the Court held, those decisions could be reviewed only if the termination decision itself was reviewable. *Id.* Here, in contrast, the vacatur is a stand-alone decision, announced on its own in the Federal Register. And by its own terms it did not decide whether TPS for Venezuela should be extended or instead terminated. Indeed, there has never been any dispute that the vacatur itself constituted an independent final agency action. For that reason, *Dahlia Doe*'s reasoning does not

apply to this distinct agency action.

Finally, neither the vacatur itself nor the predicate legal conclusion that the agency has vacatur authority are "decisions" "relating to" the ultimate decision to designate, terminate, or extend "under . . . subsection" (b) of the TPS statute. *Dahlia Doe*, 609 U.S. at 339; 8 U.S.C. § 1254a(b)(5)(A). That is because a vacatur is not a decision "under" the TPS statute at all. As this Court already held in *NTPSA I*, "the TPS statute does not authorize the vacatur of a prior grant of TPS." *NTPSA I*, 150 F.4th at 1024; *see also* Order, *Nat'l TPS All. v. Noem*, No. 26-199, Dkt. 11.1 (Feb. 9, 2026) (distinguishing between "the vacatur of a TPS designation" and the "termination of TPS" for jurisdictional purposes because a termination is "expressly authorized by statute" whereas a vacatur is not).

In reaching that conclusion in *NTPSA I*, this Court relied on the D.C. Circuit's decision in *Amgen Inc. v. Smith*, which explained that where a statute bars judicial review of agency decisions made pursuant to statute, "[t]he preclusion on review" of the agency's decisions can "extend[] no further than the [agency's] statutory authority to make them." 357 F.3d 103, 112 (D.C. Cir. 2004); *see also, e.g., E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 126 (1977) ("the issue of jurisdiction to review the regulations is intertwined with the issue of the EPA's power to issue the

regulations”); *Am. Hosp. Ass’n v. Azar*, 964 F.3d 1230, 1239 (D.C. Cir. 2020) (“the question whether the Hospitals are correct and the question whether the preclusion provision bars review of their claim are one and the same”); *COMSAT Corp. v. FCC*, 114 F.3d 223, 224 (D.C. Cir. 1997) (interpreting bar on judicial review of “increases or decreases in fees . . . pursuant to this chapter” not to bar review of unauthorized fee increase). In other words, since the TPS statute does not authorize a vacatur, it cannot preclude review of a vacatur.

*Dahlia Doe* does not purport to alter the longstanding principle declared in *Amgen*. On the contrary, it cited *Amgen* approvingly in its discussion of jurisdiction. 609 U.S. at 344. This Court’s prior reliance on *Amgen* for the proposition that jurisdiction-stripping statutes do not typically “bar review of the question of the scope of statutory authority” therefore remains sound, and controls the result here. *NTPSA I*, 150 F.4th at 1018. As a result, Defendants are unlikely to prevail on their claim that the TPS statute bars review of a decision it does not authorize.

#### 3. This Court Retains Jurisdiction to Set Aside the Venezuela Termination Because It Is Predicated on the Vacatur.

As this Court previously recognized, “the Venezuela Termination was predicated on and inextricably intertwined with

the Venezuela Vacatur; therefore, the illegality of the Vacatur must be fatal to the Termination." *NTPSA III*, 166 F.4th at 766, *judgment vacated Mullin v. Nat'l TPS All.*, 2026 WL 2976626; *see also NTPSA I*, 150 F.4th at 1024 ("If the vacatur is postponed, and the prior extension is restored, the termination cannot go into effect."). This Court specifically "decline[d] to reach the remainder of Plaintiffs' APA challenge" to the termination, *NTPSA III*, 166 F.4th at 766, *judgment vacated Mullin v. Nat'l TPS All.*, 2026 WL 2976626, which raised consultation and country conditions review defects similar to those at issue in *Dahlia Doe*. *See* ER 50-54 (district court order finding termination was not based on statutorily required consultation or review). Instead, this Court unanimously affirmed the district court's order setting aside the termination based solely on the illegality of the vacatur, which, as described above, this Court retains jurisdiction to review. *Cf. NTPSA III*, 166 F.4th at 769-83, *judgment vacated Mullin v. Nat'l TPS All.*, 2026 WL 2976626 (Wardlaw, J. and Mendoza, J.) (also affirming on broader grounds).

Defendants would have this Court rewrite the termination decision to be effective as of October 3, 2026, instead of April 3, 2025, and then find Defendants likely to succeed on the ground that the Court-revised termination is no longer "inextricably intertwined" with the vacatur. Mot. at 11. But just as this Court

may not substitute its own *reasoning* for the agency's, it may not substitute its own *decision* for the agency's. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *see also Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090-91 (9th Cir. 2011) (holding that an agency error may be deemed harmless only if it "clearly had no bearing on the procedure used or the substance of [the] decision reached").

While it is certainly possible that the agency will respond by issuing a new termination of TPS for Venezuela, that result is hardly certain. It is noteworthy that, after the Haiti partial vacatur was set aside, Defendants did *not* simply implement the termination decision that had been predicated on the partial vacatur, but instead issued a new "superseding" termination decision months later. *See* 90 Fed. Reg. 28,760 (July 1, 2025) (terminating TPS for Haiti, effective September 2, 2025); 90 Fed. Reg. 54,733 (Nov. 28, 2025) ("superseding" termination decision, effective February 3, 2026).

Whether Defendants would have made the same decision to terminate TPS for Venezuela absent the unlawful vacatur—or, more importantly, whether they would do so *now* after the January

2026 U.S. invasion of Venezuela and devastating June 2026 earthquakes in that country—is not for this Court to decide. It suffices that this Court should not rewrite the termination to take effect eighteen months later than it purported to. Accordingly, the fate of the Venezuela termination must still rise or fall with the Venezuela vacatur.

**B. The Vacatur and Termination Are Not Moot.**

Defendants raise a distinct jurisdictional challenge in their stay motion, arguing that Plaintiffs' vacatur challenge is moot because the vacatur "has no continuing effect." Mot. at 11. Not so. In fact, the vacatur (and termination) do have continuing effects for hundreds of thousands of Venezuelan TPS holders, for several reasons.

First, absent a lawful TPS termination, Venezuela's TPS designation is automatically extended in six-month increments until a new decision is made. *See* 8 U.S.C. § 1254a(b)(3)(C); *see also, e.g.,* Extension of Lebanon Designation for Temporary Protected Status, 91 Fed. Reg. 32,069, 32,070 (May 29, 2026) (announcing that Lebanon's "designation is automatically extended for six additional months" because the Secretary did not "ma[k]e a determination on Lebanon's TPS designation by the … statutory deadline").

In keeping with that rule, for nearly a decade the federal

government has treated TPS decisions that were enjoined or set aside in litigation as though they were never made, which in turn gives rise to a six-month auto-extension. *See, e.g.*, Reconsideration and Rescission of Termination of the Designation of Nicaragua for Temporary Protected Status, 88 Fed. Reg. 40,294, 40,301 (June 21, 2023) ("[T]he TPS designation of Nicaragua has continued to automatically extend under the statute since May 16, 2016, without a standing secretarial determination as to whether TPS should be extended or terminated."); Reconsideration and Rescission of Termination of the Designation of El Salvador for Temporary Protected Status, 88 Fed. Reg. 40,282, 40,290 (June 21, 2023) (same, for El Salvador). As such, absent a stay of the district court's order setting aside the vacatur and termination, TPS for Venezuela remains in effect through an auto-extension, because no lawful decision has been made. Venezuelan TPS holders are therefore entitled to the vital protection from detention and deportation and employment authorization benefits that the statute provides. *See* 8 U.S.C. § 1254a(a)(1), (d)(4).

Second, even assuming, *arguendo*, Venezuela's TPS designation was not automatically extended but instead expired on October 2, 2026, the question whether the vacatur and termination were lawful would still have crucial ongoing relevance today. For thousands of former Venezuelan TPS holders, important

immigration consequences turn on whether their presence between April 3, 2025 and October 2, 2026—the TPS extension period "vacated" by former Secretary Noem—is deemed lawful, as it would be if the vacatur is set aside, or unlawful, as it could be if the vacatur and termination stand.[1] *See* 8 U.S.C. § 1182(a)(9)(B)(ii) ("an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized"); 8 U.S.C. § 1254a(f)(4) ("for purposes of adjustment of status . . . . [TPS holders] shall be considered as being in, and maintaining, lawful status as a nonimmigrant"); *see also* Adjudicator's Field Manual § 40.9.2(b)(1)(F)(iii), *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf (instructing that TPS holders do not accrue unlawful presence for purposes of 3- and 10-year bars).

For example, non-citizens who accrue more than one year of unlawful presence and then leave the United States are barred from returning for ten years. 8 U.S.C. § 1182(a)(9)(B)(i)(II); *see, e.g.*, J.Z. Dec. ¶¶ 14-15. Whether Venezuelan TPS holders can be subject to this bar based on unlawful presence purportedly accrued

[1] Plaintiffs assume Defendants would agree TPS holders cannot be considered to have accrued unlawful presence while the district court order setting aside the vacatur was in effect, from April 3, 2025 – May 19, 2025 and September 5, 2025 – October 3, 2025.

between April 3, 2025 and October 2, 2026 presents a live issue of obvious importance that is more than sufficient to defeat Defendants' mootness assertion. *See, e.g.*, *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017) ("[A] case is not moot where any effective relief may be granted.").

## II. THE BALANCE OF EQUITIES COUNSELS AGAINST A STAY.

This Court previously held that "the balance of the equities heavily favors Plaintiffs." *Nat'l TPS All. v. Noem (NTPSA II)*, 163 F.4th 1152, 1162 (9th Cir. 2025). Defendants assert this Court must now conclude the opposite based on the Supreme Court's unexplained stay of the district court's order. Mot. at 14. But, as this Court has previously held, "while the Court's interim orders do 'inform how a court should exercise its equitable discretion in like cases,' they do so through analysis that is lacking in the stay order here." *NTPSA II*, 163 F.4th at 1157 (quoting *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)). That remains just as true today, because the Supreme Court order staying the district court's final judgment contained no more reasoning than its earlier stay. *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025) ("Although the posture of the case has changed, the parties' legal arguments and relative harms generally have not. The same result that we reached in May is appropriate here."). Further, the fact that the Supreme Court

subsequently *declined* to stay district court orders postponing the termination of TPS for Haiti and Syria undermines Defendants' assertion that the Supreme Court has "necessarily concluded" that "the equities favor a stay." Mot. at 13-14; *see* Order, *Mullin v. Dahlia Doe*, No. 25-1083 (Mar. 16, 2026) (deferring consideration of stay applications).

Below, the government "provided zero evidence–or argument–of irreparable injury. That failure is difficult to disregard and should matter." *NTPSA II*, 163 F.4th at 1161 (cleaned up). Here they assert little more—only a generic intrusion by a court into the workings of the executive branch. Mot. at 14. But this Court has already rejected that rationale, explaining that "if we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction. That cannot be so." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020).

In contrast, this Court's finding that "Plaintiffs would suffer irreparable harm" as a result of the vacatur and termination has been overwhelmingly confirmed. *NTPSA II*, 163 F.4th at 1161. There are approximately 600,000 TPS holders who were, or could have been, protected by the 2023 designation of TPS for Venezuela. All of them lost TPS protection at different points over the course

of the last 18 months, even though the State Department still advises people to reconsider travel to Venezuela "due to risk of crime, kidnapping, terrorism, and poor health infrastructure and natural disaster."[2] Yet in the period since the Supreme Court's October 3, 2025 stay, Venezuelan TPS holders have been deported to Venezuela, with all of the attendant horrors. Gomez Dec. ¶¶ 6-15; L.F.M. Dec. ¶¶ 8-18. Many of them have also faced separation from their American children and other family members. Some have even been removed to third countries to which they had no prior connection. Sanchez Villa Dec. ¶¶ 8-21; Di Peri Castellano Dec. ¶¶ 9-13.

For example, Jesús Carpio, a Venezuelan TPS holder, was murdered in February, mere days after being deported to Venezuela. Garcia Dec. ¶¶ 6-7 & Ex. 1. Carlos Sanchez was detained for seven months and then deported to Liberia, despite having no ties with the country and having been granted withholding of removal because of threats to his life and freedom if removed to Venezuela. Sanchez Villa Dec. ¶¶ 10-11, 14-17. Other TPS holders have been subjected to prolonged and indefinite

---

[2] *Travel Advisory-Bolivarian Republic of Venezuela*, U.S. DEP'T OF STATE (https://travel.state.gov/en/international-travel/travel-advisories/venezuela.html?utm_source=syndication&pubDate=20260420) (last visited Oct. 15, 2026).

detention in ICE custody, even though their TPS status should have prohibited such treatment. *Id.* ¶¶ 9-21; Gomez Dec. ¶ 10; L.F.M. Dec. ¶¶ 12-15. Among them, Jesús Manuel Arenas, a 45-year-old Venezuelan TPS holder, died in ICE custody in July, a few days after his arrest, after he was detained without medications for a chronic heart condition. Garcia Dec. ¶¶ 8-9 & Ex. 2.

Venezuelan TPS holders have also lost their employment authorization, and with that their jobs, health insurance, and stability in the United States. Garcia Dec. ¶¶ 36-40. J.Z. and her husband, both TPS holders, lost their employment authorization and their jobs on October 2, and now struggle to provide essential medical care for their daughter, who suffers from a chronic condition.[3] J.Z. Dec. ¶¶ 10-16. Other Venezuelan TPS holders find themselves in legal limbo—unable to return to their home country and without protection in the United States. Garcia Dec. ¶¶ 36-40.

While those harms suffice to establish that the equities overwhelmingly favor Plaintiffs, it warrants mention that the

[3] Like other Venezuelan TPS holders who received notices extending their employment authorization before the Secretary announced the premature termination of Venezuela's TPS designation, J.Z. and her husband remained authorized to work through October 2, 2026 pursuant to the portion of the district court's judgment preserving the validity of their extensions, which Defendants did not appeal. *See* Defs.' Op. Br., Dkt. 31.1, at 18 n.5 (Oct. 16, 2025).

public interest also weighs against a stay because Venezuelan TPS holders "make significant and important economic and social contributions," and "there is no substantiated evidence that their continued presence in this country pursuant to TPS poses any threat to this country." *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 2617231, at *4 (N.D. Cal. Sept. 10, 2025).

## CONCLUSION

Defendants' Motion should be denied.

Dated: October 15, 2026 Respectfully submitted,

By: */s/ Jessica Karp Bansal*
Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

By: */s/ Ahilan T. Arulanantham*
Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

By: */s/ Emilou MacLean*
Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

By: */s/ Mohammad Tajsar*
Mohammad Tajsar (SBN 280152)
mtajsar@aclusocal.org
ACLU FOUNDATION

OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

By: */s/ Erik Crew*
Erik Crew
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

*Attorneys for Plaintiffs-Appellees*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-5724

I am the attorney or self-represented party.

**This brief contains** 4,709 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ____________.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Jessica Karp Bansal **Date** October 15, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*