**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

**VIA ACMS** November 6, 2026

Honorable Molly C. Dwyer, Clerk
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

Re: *Nat'l TPS Alliance v. Mullin* (Nos. 25-5724, 26-187)
(before Judges Wardlaw, Mendoza, and Johnstone)
Supplemental Letter Brief

Dear Ms. Dwyer:

The Court should reverse the judgments below. The only remaining relevant issue before this Court is whether the district court erred by setting aside the Secretary's termination of Venezuela's 2023 Temporary Protected Status ("TPS") designation based on non-statutory claims, and that issue is wholly controlled by *Mullin v. Doe*, 609 U.S. 324, 345 (2026) ("[T]he TPS statute's judicial-review bar applies to all non-constitutional claims."). *Doe*'s holding that TPS terminations are immune from challenge on non-constitutional grounds is both irreconcilable with this Court's prior TPS precedents and fatal to the district court's judgment. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *compare Doe*, 609 U.S. at 339-45*, with, e.g., Nat'l TPS Alliance*, 166 F.4th at 755-57, 761-67. Regardless of whether the Secretary's vacatur was effective or reviewable, the termination at minimum took effect on October 3, 2026, after the 2025 Extension expired. No alien can claim TPS protection under the

2023 Designation in light of the termination, irrespective of the vacatur. Because the termination is effective and unreviewable after *Doe*, this Court must reverse.

The Haiti Partial Vacatur has similarly been moot since at least February 3, 2026, when a superseding TPS termination took effect. *Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 54,733, 54,738-39 (Nov. 28, 2025); *see Doe*, 609 U.S. at 336-37, 345 (addressing the subsequent termination of TPS for Haiti).

In all events, even if this Court were to consider the Secretary's vacatur in light of the above (it need not do so), *Doe* makes clear that the TPS statute precludes judicial review of APA challenges to that action as well. A vacatur of an extension of Venezuela's TPS designation is indisputably a "determination … with respect to the designation[] … or extension of a designation[] of a foreign state." 8 U.S.C. §1254a(b)(5)(A). Especially so given the "broad" meaning *Doe* ascribed to the term "determination," and the "broadening effect" that case attributed to the phrase "with respect to." 609 U.S. at 339 (citation omitted).

The district court's declaratory judgment, *see Nat'l TPS Alliance v. Noem*, 25-cv-01766-EMC, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025), with respect to the Venezuela fails for all the same reasons, plus one more: it blatantly violated the appellate divestiture rule articulated in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), by purporting to enter a declaratory judgment on the same APA claims *already* on appeal in No. 25-5784 and *already* stayed by the Supreme Court. *See Noem v. Nat'l TPS Alliance*, 146 S. Ct. 23, 23-24 (2025).

The effect of *Doe* is clear. The district court's judgments must be reversed.

To facilitate orderly review, the Government requests that this Court issue a merits decision by November 13 or, alternatively, issue an order by November 13 providing that the administrative stay will extend seven days after any decision in these appeals.

## ARGUMENT

## I. THE VENEZUELA TERMINATION IS UNREVIEWABLE

The district court's judgment granting partial summary judgment to Plaintiffs on their non-constitutional challenges to the Secretary's determination to *terminate* Venezuela's TPS designation—the only relevant determination remaining in this case—must be reversed in light of *Doe*'s holding that "the TPS statute's judicial-review bar applies to all non-constitutional claims." 609 U.S. at 345. The district court granted summary judgment to respondents on their non-constitutional claims challenging the Secretary's determination to terminate Venezuela's TPS designation. *Nat'l TPS Alliance v. Noem*, 798 F. Supp. 3d 1108, 1164 (N.D. Cal. 2025). Concluding that the TPS statute posed no bar to its review, the court held that the Secretary "fail[ed] to engage in a meaningful consultation with government agencies," "fail[ed] to conduct a meaningful country conditions review," and that her decision was otherwise "arbitrary and

capricious." *Id.* at 1132-36, 1151; *see Nat'l TPS Alliance*, 2025 WL 3539156 at *1-3 (incorporating this reasoning).

That was error, and the Court must reverse. Under 8 U.S.C. § 1254a(b)(5)(A), "[t]here is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." Giving these "clear" words their "plain meaning," *Doe* squarely held that this provision bars "all non-constitutional claims" that challenge the Secretary's "final decision to terminate" a country's "TPS designation[]." 609 U.S. at 339, 345. *Doe* emphasized that the statute uses "'determination'" in the "broad sense," as covering not just a singular decision, but also "the chain of events leading up to a decision." *Id.* at 339. Moreover, *Doe* reasoned that the phrase "with respect to" in §1254a(b)(5)(A) "'ensure[s] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id.* (emphasis added) (quoting *Patel v. Garland*, 596 U.S. 328, 339 (2022)). The judicial review bar thus covers not only the final determination to designate, extend, or terminate, but also "all the preceding decisions" that "relate[]" to that ultimate decision. *Id.* at 339-40.

None of Plaintiffs' non-constitutional challenges withstand *Doe*'s categorical holding that the TPS statute precludes all non-constitutional challenges. *Id.* Indeed, several courts—including this one—have recognized that *Doe* required summary reversal of district court decisions setting aside TPS terminations on non-constitutional grounds. *Nat'l TPS Alliance v. Mullin*, No. 26-199, ACMS No. 44 (9th Cir. July 14, 2026)

(summarily reversing a final judgment); *African Communities Together v. Mullin*, 183 F.4th 76, 77 (1st Cir. 2026) (summarily reversing a postponement order); *Aung Doe v. Mullin*, No. 26-1294, 2026 WL 2093686, at *1 (7th Cir. July 16, 2026) (same).

*Doe*'s holding squarely controls the outcome here too. The district court's judgment with respect to the Venezuela Termination rested solely on non-constitutional claims, holding that the Secretary "fail[ed] to engage in a meaningful consultation with government agencies" in reaching her determination, "fail[ed] to conduct a meaningful country conditions review," and that such decision was otherwise "arbitrary and capricious." *Nat'l TPS Alliance*, 798 F. Supp. 3d at 1151. But that judgment is clearly irreconcilable with *Doe*, which confirmed that Congress explicitly excluded all non-constitutional challenges of TPS determinations from judicial review. 8 U.S.C. § 1254a(b)(5)(A); *Doe*, 609 U.S. at 345 ("[T]he TPS statute's judicial-review bar applies to all non-constitutional claims"); *see Gammie*, 335 F.3d at 893.

Indeed, the claims considered in *Doe* are nearly identical to the claims that Plaintiffs pressed here, including that the Secretary "had not properly consulted other Government agencies" and "ignor[ed]" "country conditions" evidence in terminating TPS designations. *Doe*, 609 U.S. at 338; *see id.* at 335-336 (discussing claim that Secretary "acted contrary to law by failing to engage in adequate consultation with other agencies); *compare with Nat'l TPS Alliance*, 798 F. Supp. 3d at 1150-53. Because each of those "non-constitutional claims" concerned "discrete decision[s] made by the

Secretary" in the leadup to her ultimate termination decision, the TPS statute "bar[red]" judicial review of them. *Id.* at 339-340. So too here.

Plaintiffs' effort to circumvent *Doe* by returning to *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1016-24 (9th Cir. 2025) (*NTPSA I*), is unavailing. *NTPSA I*'s determination that Plaintiffs' non-constitutional challenge to the Secretary's statutory authority to vacate a prior TPS extension fell outside the TPS statute's judicial-review bar, *id.* at 1017, simply cannot be reconciled with *Doe*'s emphasis that "determination" is used in the "broad sense" to cover "the chain of events leading up to a decision" as well as the decision itself, and that the phrase "with respect to" "'ensure[s] that the scope of [the] provision covers not only its subject but also matters relating to that subject.'" 609 U.S. at 339, 345 (quoting *Patel*, 596 U.S. at 339).

Any attempt to tie the Venezuela Termination and Vacatur together in an effort to manufacture collateral review of the termination fails. Plaintiffs contend that, if the vacatur is invalid, then the effective date for the termination (April 3, 2025) was incorrect. ACMS No. 90 at 18-19. But that does nothing to escape *Doe*'s holding. A claim that the termination's effective date is incorrect is the exact sort of non-constitutional challenge to a "subsidiary decision[]" that is unreviewable under *Doe*. *See* 609 U.S. at 344-45. Regardless, any error on this score at most would mean the termination went into effect, by operation of the statute, upon "the expiration of the most recent previous extension"—which occurred on October 2, 2026. 8 U.S.C. § 1254a(b)(3)(B), (d)(3). Likewise, the fact that the Secretary theoretically *could* take

intervening conditions in Venezuela into account as part of a *different* TPS determination provides no basis to circumvent *Doe*, with respect to a TPS termination that *already* took effect. *Cf.* 8 U.S.C. §1254a(b)(3)(A) (providing that the Secretary must make a determination "[a]t least 60 days before" the designation expires, but providing no limit on how early a determination can be).

In short, this Court must reverse the district court's judgment as to the Venezuela termination because *Doe* held, contrary to the district court's and this Court's views, that no court may review non-constitutional challenges to the termination of Venezuela's 2023 Designation. 8 U.S.C. § 1254a(b)(5)(A); *Doe*, 609 U.S. at 345 ("the TPS statute's judicial-review bar applies to all non-constitutional claims"). Indeed, even Plaintiffs have now "acknowledge[d]" that their "statutory challenges to the termination are no longer cognizable after" *Doe*, insisting only that their "vacatur claim remains cognizable." ACMS No. 90-1, at 5 (Oct. 15, 2026). Because the termination decision is both effective and unreviewable, that concession should end this case.

## II. ANY CHALLENGE TO VACATUR FAILS

This Court need not reach either of the Secretary's vacatur decisions—as to Venezuela or Haiti—because the Venezuela Termination is the only presently operative agency action. The Venezuela Vacatur has been superseded by the Venezuela Termination, and the Haiti Partial Vacatur has been superseded by a subsequent

termination. Regardless, even if Plaintiffs' challenges to the Secretary's vacaturs were relevant, this Court must reverse for three reasons.

**1.** First, like "all non-constitutional claims," *Doe*, 609 U.S. at 345, Plaintiffs' non-statutory challenges to the Venezuela vacatur and the Haiti partial vacatur were beyond the district court's power to review. The Supreme Court plainly held that the TPS statute bars non-constitutional challenges to "any determination . . . with respect to the designation, or termination or extension of a designation" for TPS. 8 U.S.C. § 1254a(b)(5)(A). That language includes "discrete decision[s]" that "relat[e]" to those enumerated actions. 609 U.S. at 339. The vacatur of Venezuela's 2025 Extension and the partial vacatur of Haiti's 2024 Extension are two such "discrete decision[s]" that "relat[ed]" to the "designation . . . or extension of a designation" for TPS, as an action that eliminates or shortens a TPS extension undeniably relates to that extension. *Id.* at 338-39 (citation omitted).

Plaintiffs' APA challenges to the Secretary's vacatur decisions thus fail. Indeed, that is so even if this Court were to accept Plaintiffs' framing that the Venezuela Vacatur and termination are linked. If the vacatur decision were "inextricably intertwined" with the Venezuela termination such that the termination decision was "predicated" on the vacatur, *NTPSA III*, 166 F.4th at 766, that would only mean that, under *Doe*, vacatur is an unreviewable "step[]" that is "part of the process [leading] to [the] final decision to terminate," 609 U.S. at 339; *cf. Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and

substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)."). Plaintiffs' attempt to resuscitate their claims against the termination decision via vacatur is self-defeating.

After all, "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." *Doe*, 609 U.S. at 344. Statutory authority is one such subsidiary question. To even evaluate the extent of the Secretary's authority under the TPS statute, a court must impermissibly wade through statutory questions about ultimately unreviewable agency action.

Plaintiffs' likely reliance on the government's reply brief in *Doe* is misplaced. *See* ACMS No. 90-1 at 7. There, the government argued that vacatur of an extension was a "likely unreviewable" decision with respect to a TPS extension. Gov't Reply Br. at 10, *Mullin v. Dahlia Doe*, No. 25-1083 (Apr. 20, 2026) (citing *Nat'l TPS Alliance*, 169 F.4th at 804 (Bumatay, J., dissenting)). That brief argued—consistent with the government's position here—that a vacatur would be unreviewable, and cited a persuasive opinion dissenting from the denial of en banc rehearing that explained why the judicial review bar *foreclosed review* of a vacatur *in this case*. The judicial review bar contains no loopholes: "challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Doe*, 609 U.S. at 344.

Ultimately, courts must "resolve cases and controversies consistent with the authority Congress has given them" and "do not exercise general oversight of the Executive Branch." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). Here, Congress

made a judgment that "the political process is the proper forum for remedying improper conduct." *Nat'l TPS Alliance*, 169 F.4th at 807 (Bumatay, J.). This Court must reverse the district court's contrary judgment.

**2.** Article III poses an independent jurisdictional barrier to reviewing the vacaturs: Any challenges to the vacaturs are moot. The function of each vacatur was to cut short the expiration date of Secretary Mayorkas's attempted extension. But, regardless of former Secretary Noem's vacaturs, Secretary Mayorkas's extensions, by their own terms, have already ended.

Start with Venezuela. Because of Secretary Noem's termination of the 2023 designation, Secretary Mayorkas's 2025 extension ended by its own terms on October 2, 2026, by operation of 8 U.S.C. § 1254a(b)(3)(B). *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. at 5,961-62. At minimum, then, Secretary Noem's February 2025 termination of the Venezuela designation would be effective as of that date. The text of the statute states only that the Secretary must make a determination "[a]t least 60 days before end" of the designation period, but it does not limit how early that determination may be made. 8 U.S.C. § 1254a(b)(3)(A). And under the terms of the statute, a termination "shall not be effective earlier than 60 days after the date the notice is published or, *if later, the expiration of the most recent previous extension*." 8 U.S.C. § 1254a(b)(3)(B) (emphasis added). Thus, wholly independent from the vacatur, the Venezuela termination at minimum took effect on October 3, 2026, after the Mayorkas extension expired. *See* 8 U.S.C. § 1254a(d)(3) (providing that a termination applies "to

documentation and authorization issued or renewed after the effective date of the publication of notice . . . or, at the [Secretary's] option, after such period after the effective date . . . appropriate in order to provide for an orderly transition").

The same goes for the Haiti partial vacatur. The Haiti extension ended, by its own terms, on February 3, 2026. *See Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 54,733 (Nov. 28, 2025). Secretary Noem issued a new termination decision, independent of the vacatur, that took effect on that date. *See id.* Indeed, the challenge to the Haiti Partial Vacatur is so moot that the Supreme Court has *already* held that courts lack authority to consider statutory challenges to the *subsequent* November 2025 TPS termination. *Doe*, 609 U.S. at 336-37, 345. Any decision on the Haiti Partial Vacatur at this juncture would be an improper advisory opinion that would not provide anyone effective relief. *See NASD Dispute Resolution, Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) (dismissing moot appeal where intervening precedent in "a different case" "effectively granted the relief [the Appellants] sought").

Neither vacatur has continuing, future effect. They are moot, and the Court cannot press further in reviewing them. *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 3, 18 (1998) (explaining that courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong"); *accord Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also, e.g*, *Braham v. Nat'l Collegiate Athletic Ass'n*, 191 F.4th 947, 949 (9th Cir. 2026) (dismissing as moot where the "game clock has run out" on legal challenges).

Any effort to resurrect Plaintiffs' moot challenges to vacaturs fails. Although Plaintiffs point to the general rule that TPS designations automatically extend six months in the absence of a decision by the Secretary, 8 U.S.C. § 1254a(b)(3)(C), that has no bearing on this case where, in fact, the decisions to terminate TPS were made and have actually gone into effect. *Termination of the October 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9,040, 9,041 (Feb. 5, 2025); *Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 54,733 (Nov. 28, 2025). And because there is no designation of Venezuela or Haiti for TPS, there is no reason to think that Plaintiffs will "again" be subject to the vacatur of a TPS extension. *See Braham*, 191 F.4th at 950 ("[I]n order to apply the capable of repetition doctrine to private parties, there must be a reasons to expect that there will be future litigation of the same issue between *a present complaining party and a present defending party*.") (quotation omitted; emphasis original).

The possibility that a subset of aliens may be inadmissible because they disregarded the Secretary's TPS termination and remained unlawfully without pursuing other valid immigration status cannot save this case from mootness, because that represents a *different* claim that must be brought, if at all, in a different forum. *See* 8 U.S.C. § 1252 (providing for petitions for review of removal orders).

**3.** Finally, if the Court were to bypass both the judicial review bar and the mootness barriers, the district court's judgment must be reversed on the merits because the Secretary has implicit authority under the INA to vacate a TPS extension for the reasons the government has previously explained, and the GVR order now gives the

Court a chance to further consider. Gov't Opening Br. at 39-50 (Oct. 16, 2025); Gov't Reply Br. at 26-29 (Nov. 19, 2025); *see Pirani v. Slack Tech., Inc.*, 127 F.4th 1183, 1189 (9th Cir. 2025) (explaining that this Court "may consider and decide any matters left open" by the Supreme Court's mandate). At minimum, the Secretary had inherent authority to reconsider Venezuela's TPS extension months before it became effective on April 3, 2025. *See Haig v. Agee*, 453 U.S. 280, 290-91 (1981); *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024); *see also Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion."). Nowhere did Congress prohibit the exercise of that authority in the TPS statute. 8 U.S.C. § 1254a *et seq*. "[T]he machinery of government would not work if it were not allowed a little play in its joints." *Bain Peanut Co. of Tex. v. Pinson*, 282 U.S. 499, 501 (1931).

## III. THIS COURT CANNOT AFFIRM ON ALTERNATIVE CONSTITUTIONAL GROUNDS THE DISTRICT COURT DID NOT REACH

This Court cannot affirm on alternative constitutional grounds for two reasons. First, the district court entered summary judgment only on Plaintiffs' APA claims, leaving their constitutional claims unresolved. *Nat'l TPS Alliance v. Noem*, 798 F. Supp. 3d at 1164; *see Geo Group, Inc. v. Menocal*, 607 U.S. 438, 443-44 (2026) (explaining that, among other things, the final judgment rule "preserves the proper balance between trial and appellate courts"); Fed. R. Civ. P. 54(b). Second, as Justice Thomas explained,

those claims would fail because the judicial review bar applies just as squarely to constitutional claims as to non-constitutional claims. *Doe*, 609 U.S. at 352 ("[T]here is no indication in the text that reviewability may turn on the source of law for the underlying claim.").

Even if reviewable, Plaintiffs' equal-protection claims would fail on the merits. As *Doe* explained in holding that another group of plaintiffs were unlikely to succeed on their equal-protection challenge to the termination of Haiti's TPS designation, "[n]one of the cited statements by either the President or the Secretary was overtly racial," "in substance all expressed policy views that could rest on race-neutral justifications," and "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" are "a strong, race-neutral explanation" for the statements. *Id.* at 348-49. Moreover, even if Plaintiffs hypothetically proffered more evidence of the same sort, *Doe* makes clear that is insufficient. *Id.* at 350 n.7 (explaining that additional evidence, obtained from discovery in this case, was "cumulative of other evidence in the record" and did not affect the analysis).

## IV. THE DISTRICT COURT'S DECLARATORY JUDGMENT MUST BE VACATED

Finally, this Court must vacate the district court's ill-conceived epilogue: The December 10, 2025, declaratory judgment. 1-ER-6.[1] Ordinarily, a Supreme Court order staying a district court's judgment until the disposition of a timely writ of certiorari, like one here staying the entirety of the partial final judgment with respect to Venezuela's TPS designation, *see Nat'l TPS Alliance*, 146 S. Ct. at 23-24, reflects that the Supreme Court will write the final chapter on a legal dispute.

Unhappy with the Supreme Court's stay ruling, Plaintiffs implored the district court to declare, on the same claims and for the same reasons as those in the district court's *stayed* partial final judgment, 1-ER-2, 1-ER-4, that the vacatur and termination of TPS for Venezuela—and, underscoring Plaintiffs' gamesmanship, *only* Venezuela—was unlawful. 3-ER-130-140. Plaintiffs affirmatively waived any reliance on Federal Rule of Civil Procedure Rule 59 or 60(b) to justify their request because their effort to modify the original judgment came far too late. 1-ER-4 n.4; 2-ER-92; 3-ER-144-45; 3-ER-152-53. So, instead, for the reasons in its—already stayed—"merits analysis in its prior summary judgment order," the district court declared the Venezuela vacatur and termination unlawful. 1-ER-4; 1-ER-6. Because the district court violated the

[1] The citations in this section refer to the excerpts of record that Government is simultaneously filing in No. 26-187.

divestiture rule and ignored its role in the judicial hierarchy, this Court must vacate its declaratory judgment.

Indeed, regardless of how this Court rules on the merits above, it must vacate the district court's December 10 declaratory judgment because that judgment was entered after the government's September 5 appeal. *See Griggs*, 459 U.S. at 60-61; 3-ER-128-29. It is blackletter law that "the filing of a notice of appeal divests a district court of jurisdiction over those aspects of the case involved in the appeal." *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997); *see Griggs*, 459 U.S. at 60-61. Thus, when an appeal is from a final judgment, the district court "may not alter or expand upon the judgment" while the appeal is pending. *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000); *see Sumida v. Yumen*, 409 F.2d 654, 656–57 (9th Cir. 1969) ("A properly filed notice of appeal vests jurisdiction of the matter in the court of appeal; the district court thereafter had no power to *modify its judgment in the case or proceed further*….") (emphasis added). The divestiture rule is necessary to avoid "the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Stein*, 127 F.3d at 1189 (citation omitted); *see also Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175-76 (1989) (explaining that a district court cannot entertain a "postjudgment motion for discretionary prejudgment interest" after divested of jurisdiction by an appeal); *Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012) (amended order)

(concluding the filing of notices of appeal from order granting preliminary injunction divested district court of jurisdiction).

Every reason for the divestiture rule is amplified here. The Supreme Court had already stayed the district court's judgment on October 3, 2025. *Nat'l TPS Alliance*, 146 S. Ct. at 23-24. Further, the government's appeal was fully briefed on an expedited schedule by November 19, 2025—weeks before the declaratory judgment. By then issuing a declaratory judgment, the district court wasted time by "putting the same issues before two courts at the same time" in Nos. 25-4725 and 26-187. *Stein*, 127 F.3d at 1189. Finally, the district court caused confusion and expended scarce governmental and judicial resources as courts around the country were presented with arguments that they should follow the December 10 declaratory judgment and disregard the Supreme Court's stay order in the *same case* on the *same issues*. *See, e.g.*, *Herrera v. Noem*, 825 F. Supp. 3d 1025, 1034 (D. Ariz. Mar. 12, 2026) ("The Court disagrees that the *NTPSA* court had any authority to issue a declaratory judgment."); *Gonzalez v. Casey*, 3:26-cv-01265, 2026 WL 1333767, at *3 (S.D. Cal. May 13, 2026) (explaining that the declaratory judgment "creates a thorny question as to whether [Petitioner] is entitled to release on the basis of his TPS; the declaratory judgment decision held that the termination of TPS was unlawful, but the Supreme Court has stayed any coercive effect of the holdings, meaning [Petitioner] does not currently hold valid TPS.") (citations omitted); *Granadillo-Arambule v. Daley*, No. 26-cv-36, 2026 WL 1157161, *3 (E.D. Ky. Apr. 29, 2026) ("Despite having been stayed by the Supreme Court twice, the district court came back

for a third bite at the apple."). Because the district court here disregarded the *Griggs* divestiture rule, its declaratory judgment was "null and void," and this Court should vacate it. *In re Padilla*, 222 F.3d at 1190; *see Matter of Combined Metals Red. Co.*, 557 F.2d 179, 201 (9th Cir. 1977) ("[T]he district court erred in entering an order purporting to vacate its order denying Bennett's application to file late objections; the court's subsequent order is a nullity, and the appealed order must stand as it was when the notice of appeal was filed.").

The district court's justifications for disregarding the divestiture rule do not hold water. 1-ER-3-4. The authority of district courts to modify an appealed injunction, expressly reflected in Rule 62(d), is irrelevant to an appealed *partial final judgment*, particularly where the Supreme Court has intervened to establish the status quo. *See NRDC v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("[T]he district court possessed jurisdiction to modify the injunction while the consolidated appeal was pending, because the changes preserved the status quo and did not materially alter the status of the case on appeal.").

The Declaratory Judgment Act, 28 U.S.C. § 2201, similarly provides no justification for the district court's actions because that statute "only creates a remedy and is not an independent basis for jurisdiction." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *see Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) ("the Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts."). Rule 57 makes that doubly clear by specifying

that the Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." To provide declaratory relief then, a district court must adhere to the Rules of Civil Procedure *and* properly exercise jurisdiction. Here, the district court did neither. *See Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004) ("Once Williams filed his notice of appeal of the district court's judgment denying his habeas corpus petition, the district court lost jurisdiction over the petition.") (citing *Carriger v. Lewis*, 971 F.2d 329, 332 (9th Cir. 1992) (en banc)); *see, e.g.*, *Shorter v. Baca*, No. 19-56182, 2021 WL 4958857, *2 (9th Cir. Oct. 26, 2021) (unpub.) (applying the divestiture rule where "[Plaintiff] filed the Rule 60(b) motion almost two months after filing this appeal and sought to void the very orders over which we have jurisdiction.") (citing *Griggs*, 459 U.S. at 58).

In short, the district court was plainly divested of authority over APA challenges to the Venezuela Vacatur and Termination when the government timely appealed its partial final judgment (D. Ct. Dkt. 279) on September 9, 2025. 3-ER-285; *see Griggs*, 459 U.S. at 58. Permitting district courts to issue serial relief with respect to *identical* merits and jurisdictional issues that are *already* on appeal to—remarkably—circumvent a Supreme Court stay order is antithetical to the rule of law. *See DHS v. D.V.D.*, 145 S. Ct. 2627, 2630 (2025) (Kagan, J., concurring) ("I do not see how a district court can compel compliance with an order that this Court has stayed"); *In re Sherrod Brown*, No. 26-2240, 2026 WL 3017599, at *12 (4th Cir. Oct. 7, 2026) (unpub.) (Wilkinson, J., dissenting) ("The judicial system depends upon the demonstration of some modicum

of respect by lower courts to higher ones."). And the remedy for the district court's disregard of the divestiture rule is equally clear: the Court must vacate its declaratory judgment as a nullity. *See In re Padilla*, 222 F.3d at 1190; *Matter of Combined Metals Red. Co.*, 557 F.2d at 201; *see also Rodriguez v. Cnty. of LA*, 891 F.3d 776, 790-91 (9th Cir. 2018) (characterizing the divestiture rule as a mandatory claim processing rule).

If, however, the Court were to conclude that the district court did not violate the divestiture rule, it should reverse for all of the reasons that apply to the district court's original partial final judgment. The district court expressly incorporated its reasoning in that judgment as the basis for its declaratory judgment, so the same arguments demand reversal. *Nat'l TPS Alliance*, 2025 WL 3539156, at *1 ( reasoning that the declaratory judgment was "essentially derivative of the earlier judgment" and wholly "[b]ased on the merits analysis in its prior summary judgment order").

## CONCLUSION

At this late hour, the only live issue before the Court in No. 25-5724 is whether the TPS statute's judicial review bar, 8 U.S.C. § 1254a(b)(5)(A), forecloses Plaintiffs' statutory challenges to the Secretary's *termination* of Venezuela's 2023 TPS designation. *Doe* provides a clear answer: the bar "applies to all non-constitutional claims." 609 U.S. at 345. The district court's violation of the divestiture rule in No. 26-187 is equally clear. This Court must reverse.

To facilitate orderly review, the Government requests that this Court issue a merits decision by November 13 or, alternatively, issue an order by November 13 providing that the administrative stay will extend seven days after any decision in these appeals.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

RUTH ANN MUELLER
*Senior Litigation Counsel*

*/s/ Jeffrey M. Hartman*
JEFFREY M. HARTMAN
RACHEL BERMAN-VAPORIS
*Trial Attorneys*
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I certify that the body of the foregoing letter brief contains 5,046 words in compliance with the Court's November 3, 2026, order (ACMS No. 98) and Ninth Circuit Rule 32-3(2).

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation