UCLA Center for Immigration Law and Policy

AHILAN ARULANANTHAM
PROFESSOR FROM PRACTICE AND FACULTY CO-DIRECTOR
CENTER FOR IMMIGRATION LAW AND POLICY

UCLA SCHOOL OF LAW
BOX 951476
LOS ANGELES, CALIFORNIA 90095-1476
PHONE: (310) 825-1029
EMAIL: ARULANANTHAM@LAW.UCLA.EDU

November 10, 2026

Molly C. Dwyer
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

**RE: *National TPS Alliance v. Mullin* (Nos. 25-5724, 26-187)
Supplemental Brief re: Effect of *Mullin v. Dahlia Doe*, 609 U.S. 324 (2026) and Issues Raised in Consolidated Case**

Dear Ms. Dwyer,

This supplemental letter brief addresses the effect of *Mullin v. Dahlia Doe*, 609 U.S. 324 (2026) ("*Dahlia Doe*"), ACMS 98.1, and issues raised in *National TPS Alliance v. Mullin*, No. 26-187. ACMS 99.1.

## INTRODUCTION

Defendants would prefer to defend a different case than the one they have. They ask this Court to ignore their illegal, unprecedented decision to "vacate" an 18-month period of Temporary Protected Status ("TPS") granted to 600,000 Venezuelan refugees, and then to pretend their subsequent, illegal decision to terminate Venezuela's TPS took effect on a different date than it says. This Court should decline Defendants' invitation to rewrite history.

The defects in the agency actions Defendants *actually* took are straightforward and plainly reviewable. This Court already held it had jurisdiction over Plaintiffs' remaining claims in *National TPS Alliance v. Noem* (*NTPSA I*), 150 F.4th 1000, 1019–25 (9th Cir. 2025). Thus, the threshold question presented is whether *NTPSA I* is "clearly irreconcilable" with *Dahlia Doe*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Defendants contend *Dahlia Doe* necessarily abrogated *NTPSA I*, *see* ACMS 102.1 at 1, but they told the Supreme Court the opposite. In response, the Supreme Court explicitly declined to decide the distinct jurisdictional questions raised here. Because *Dahlia Doe* does not undercut this Court's prior jurisdictional holding or its conclusion that the vacatur and termination were unlawful, this Court is bound to affirm under *NTPSA I*. *Infra* Section I.

Even were this Court free to disregard *NTPSA I*, nothing in *Dahlia Doe* warrants reversing course. In arguing otherwise, Defendants ignore what courts have long recognized: a claim that an agency has acted in excess of statutory authority and violated a clear statutory mandate is distinct from a garden-variety claim that an agency abused its discretion or otherwise failed to comply with a statute. Agency authority claims trigger a particularly strong presumption favoring judicial review. *Infra* Section II.A.

Defendants also ignore the plain language of the TPS statute, which limits the scope of the review bar to decisions made "under" subsection (b). Thus, by its own terms, the review bar is co-extensive with the agency's decision-making authority. Congress did not intend to shield from review decisions *not* made under subsection (b), including decisions it did not intend the agency to make. *Infra* Sections II.A.4, C.

Defendants also contend Plaintiffs' vacatur claims are moot, but this is plainly wrong. Just weeks ago, Defendants told this Court they would be irreparably injured if the Venezuela vacatur took effect. ACMS 89.1. Now they say it has no effect. A claim is moot only if there is no effective relief the Court could provide. Defendants cannot meet that standard where both current immigration status and future immigration consequences turn on whether or not the Venezuela vacatur was lawful. And because the Haiti partial vacatur is capable of repetition, it also is not moot. *Infra* Section III.

Finally, Defendants err in seeking essentially summary reversal as to the district court's distinct declaratory relief ruling. While there are ample grounds for the Court to affirm that order, Plaintiffs respectfully request that those issues warrant more detailed treatment, and that this Court address them only if necessary after the primary appeal is resolved, with the benefit of full briefing. *Infra* Section IV.

## ARGUMENT

### I. *NTPSA I* Controls Because It Is Not Clearly Irreconcilable With *Dahlia Doe*.

*NTPSA I* held this Court had jurisdiction over Plaintiffs' vacatur-related claims because "[t]he extent of statutory authority granted to the Secretary is a first order question that is not a 'determination ... with respect to the designation, or termination or extension' of a country for TPS." 150 F.4th at 1017. It reached that conclusion in large part because the normally available presumption favoring judicial review is "particularly strong" for claims that "agency action was taken in excess of delegated authority." *Id.* at 1016 (citing *Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) and *Leedom v. Kyne,* 358 U.S. 184, 190 (1958)). It also found the vacatur unlawful and held that because the vacatur was unlawful the termination necessarily was too. *Id.* at 1024 ("If the vacatur is postponed, and the prior extension is restored, the termination cannot go into effect.").

Those holdings plainly dictate the outcome here unless they are *clearly irreconcilable* with *Dahlia Doe*. "Clear irreconcilability" is a "high standard." *Kivett v. Flagstar Bank, FSB*, 154 F.4th 640, 645 (9th Cir. 2025) (citations omitted). If it is possible to "apply our precedent consistently with that of the higher authority, we must do so." *Id.* (quoting *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019)).

"Even if a Supreme Court decision 'contain[s] language that might persuade us to decide [the prior case] differently if presented to us today[,] ... the fact that we might decide a case differently than a prior panel is not sufficient grounds for deeming the case overruled.'" *Id.*

*Dahlia Doe* does not satisfy that standard. Defendants claim otherwise, but their argument is meritless and contrary to what they told the Supreme Court. *Dahlia Doe* did not present a vacatur authority claim. Rather, it involved consolidated challenges to Defendants' decisions to terminate TPS for Haiti and Syria. The Court held "[t]he TPS statute plainly bars consideration of respondents' non-constitutional claims," i.e., that the challenged terminations violated the Administrative Procedure Act (APA) because they were preordained and made without statutorily required consultation or review. *Dahlia Doe*, 609 U.S. at 328.

*Dahlia Doe* explicitly declined to address whether the TPS statute limits jurisdiction to review a vacatur—the principal statutory claim in this case. The plaintiffs there repeatedly cited this case to stress the breadth of illegal actions that would be shielded by the government's interpretation of the review bar. In reply, defendants distinguished the decision to vacate an extension—which they described as "likely unreviewable"—from the claims in *Dahlia Doe*—which they described as "plainly

unreviewable." Reply Br. for Pet., *Mullin v. Dahlia Doe*, Nos. 25-1083 and 25-1084, 2026 WL 1081652, at *10 (Apr. 20, 2026). Citing that brief, the Supreme Court expressly declined to reach "whether or not" defendants' "assessment" regarding jurisdiction to review a vacatur and other hypothetical scenarios "is correct." *Dahlia Doe*, 609 U.S. at 344–45.

Defendants attempt to erase their narrowly circumscribed position before the Supreme Court, pointing to one line in *Dahlia Doe* stating "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Dahlia Doe*, 609 U.S. at 345. But the rest of *Dahlia Doe* makes clear this line refers to "all" three of the non-constitutional claims raised by the plaintiffs in that case—i.e., the claims before the Court. *Id.* at 328 (holding the TPS statute "bars consideration of respondents' non-constitutional claims"); *id.* at 337–38 (addressing jurisdiction to review "respondents' non-constitutional claims"). Defendants' contrary interpretation—that this single line should be read to refer generally to every conceivable "non-constitutional claim," including claims the Supreme Court explicitly declined to reach and other challenges to unauthorized decisions made under color of the TPS statute—contravenes what both the Court and the government said in that case.

Defendants also err in claiming this Court already held *Dahlia Doe* forecloses review of all non-constitutional challenges to TPS terminations. ACMS 102.1 at 4–5. The unpublished order from another TPS case Defendants cite says only that *Dahlia Doe* precludes judicial review of "*plaintiffs'* APA claims" in that case (involving Honduras, Nicaragua, and Nepal). Order at 2, *Nat'l TPS All. v. Mullin,* No. 26-199 (9th Cir. July 14, 2026), ACMS No. 44.1 (emphasis added). Unlike in this case, plaintiffs there conceded their statutory claims were indistinguishable from those in *Dahlia Doe*. *Id*. The other two brief orders Defendants cite also did not involve vacatur authority or other ultra vires claims. ACMS 102.1 at 5 (citing *Afr. Cmtys. Together v. Mullin*, 183 F.4th 76, 77 (1st Cir. 2026) and *Aung Doe v. Mullin*, No. 26-1294, 2026 WL 2093686 (7th Cir. July 16, 2026)). In contrast, several district courts have held post-*Dahlia Doe* that they retain jurisdiction to consider ultra vires claims. *See, e.g.*, *Doe v. Mullin*, No. 25 C 15483, 2026 WL 2279577, at *6 (N.D. Ill. Aug. 7, 2026) (finding jurisdiction over claim that Secretary lacks TPS termination authority); *Afr. Cmtys. Together v. Mullin*, No. 26-CV-11201-ADB, 2026 WL 2364398, at *11 (D. Mass. Aug. 14, 2026) (same).

Even were this Court to accept Defendants' implausible interpretation of *Dahlia Doe*, the single line on which they rely would be particularly unpersuasive dicta. The Supreme Court has instructed that "drive-by jurisdictional rulings—asserting or denying

jurisdiction without elaboration, or analysis of whether anything turned on the ruling—should be accorded no precedential effect." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 (2025) (cleaned up); *see also Torres v. Madrid*, 592 U.S. 306, 328–29 (2021) (Gorsuch, J., dissenting) ("[D]igressions speculating on how similar hypothetical cases might be resolved ... are dicta. ... [W]hatever utility it may have, dicta cannot bind future courts."). Under *Miller*, that is far too thin a basis on which to abrogate *NTPSA I*.

## II. *Dahlia Doe* Is Consistent With This Court's Prior Conclusion That Congress Did Not Shield Unauthorized Decisions From Review.

While *NTPSA I* controls, this Court could reach the same result from first principles, and nothing in *Dahlia Doe* suggests otherwise.

### A. The Vacaturs Are Reviewable.

1. This Court previously identified several reasons for concluding vacatur decisions fall outside the scope of the TPS statute's review bar. *See Nat'l TPS All. v. Noem* ("*NTPSA III*"), 166 F.4th 739, 756–58 (9th Cir. 2026), *cert. granted, judgment vacated sub nom. Mullin v. Nat'l TPS All.*, No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026). *Dahlia Doe* rejected one of them and arguably undermined another, but it left the other rationales intact, and they fully support this Court's holding.

*Dahlia Doe* rejected this Court's reliance on *McNary v. Haitian Refugee Center*, 498 U.S. 479 (1991) and related caselaw. *See Dahlia Doe*, 609 U.S. at 340–42. It also

declined to give much weight to potentially absurd results flowing from Defendants' reading, whereas this Court had relied in part on that concern. *Compare Dahlia Doe*, 609 U.S. at 343–44 *with NTPSA III*, 166 F.4th at 757, *cert. granted, judgment vacated sub nom. Mullin v. Nat'l TPS All.*

2. *Dahlia Doe* did not undermine the other reasons this Court advanced in support of its holding, and they fully support its core conclusion that the scope of the review bar is necessarily co-extensive with the agency's decision-making authority. Most importantly, this Court previously relied on a large body of caselaw holding that when an agency acts "outside the scope of its statutory mandate," its action necessarily falls outside the scope of a bar on reviewing agency actions "under," "pursuant to," or "provided for in" the statute. *NTPSA III*, 166 F.4th at 756, *cert. granted, judgment vacated sub nom. Mullin v. Nat'l TPS All.* (citing *NTPSA I*, 150 F.4th at 1017). *See also NTPSA I*, 150 F.4th at 1017–18 (citing *Amgen, Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004) (collecting cases)). In such cases, "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action" because "[t]he preclusion on review of [the agency's decisions]" can "extend[] no further than the [agency's] statutory authority to make them." *Amgen*, 357 F.3d at 112–13.

For example, in *Southwest Airlines Co. v. Transportation Security Administration*, the D.C. Circuit interpreted a statute that provided: "[d]eterminations of the Under Secretary under this subparagraph [pertaining to air carrier fees] are not subject to judicial review." 554 F.3d 1065, 1069, 1071 (D.C. Cir. 2009). The Court held the provision did not bar review of an unauthorized air carrier fee. *Id.* It explained that its "conclusion rests not on a review of a 'determination ... under' the subparagraph covered by the provision, but rather resolves the question whether TSA has made the kind of determination required by the statute." *Id.* at 1071. *See also Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1238–39 (D.C. Cir. 2020) (where statute forecloses review "of methods described in paragraph (2)(F)," "the question whether [the challenged action is authorized by paragraph (2)(F)] and the question whether the preclusion provision bars review of their claim are one and the same"); *COMSAT Corp. v. FCC*, 114 F.3d 223, 227 (D.C. Cir. 1997) (interpreting bar on review of "increases or decreases in fees ... pursuant to this [chapter]" to permit review where agency "acted outside the scope of its statutory mandate") (cleaned up).

Nothing in *Dahlia Doe* undermines this aspect of *NTPSA III*. On the contrary, *Dahlia Doe* cited *Amgen* approvingly in its jurisdictional discussion, 609 U.S. at 344, so this Court's prior reliance on *Amgen* for the proposition that jurisdiction-stripping

statutes do not typically "bar review of the question of the scope of statutory authority" remains sound. *NTPSA I*, 150 F.4th at 1018.

3. This Court also previously relied on the "particularly strong" presumption favoring judicial review "where the claim is that agency action was taken in excess of delegated authority." *NTPSA III*, 166 F.4th at 756, *cert. granted*, *judgment vacated sub nom. Mullin v. Nat'l TPS All. See also, e.g.*, *Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of State of Mont.*, 792 F.2d 782, 791–92 (9th Cir. 1986) ("Courts have widely held that claims that an agency has acted outside its statutory authority are reviewable even though its decision on the merits might be unreviewable as committed to agency discretion."). This presumption favoring review grows stronger still where an agency "is charged with violating a clear statutory mandate or prohibition." *Staacke v. U.S. Sec'y of Lab.*, 841 F.2d 278, 281 (9th Cir. 1988) (holding judicial review available in such cases "[e]ven where the statutory provision absolutely bars judicial review"). *See also Kyne*, 358 U.S. at 189 (federal district courts "[s]urely" have jurisdiction to review an agency's "attempted exercise of power that had been specifically withheld").

Contrary to Defendants' claims, *Dahlia Doe*'s rationale does not call into question this Court's reliance on the strong presumption favoring review in such cases.

Indeed, the *Dahlia Doe* majority relied on a similar presumption to exercise jurisdiction over constitutional claims, with five justices appearing to affirmatively find, rather than just assume, jurisdiction. *Dahlia Doe*, 609 U.S. at 345–46 (only four of six in majority assuming jurisdiction over constitutional challenge); *id.* at 365–68 (Kagan, J., dissenting) (three finding jurisdiction).

4. This Court's prior jurisdictional holding is also consistent with *Dahlia Doe*'s description of the types of claims that fall under the TPS statute's review bar. *Dahlia Doe* interprets 8 U.S.C. § 1254a(b)(5)(A) to prevent review of: (1) the final "decision" to designate, terminate or extend; (2) subsidiary decisions that "merge[d] into" that decision; and (3) decisions "relating to" that decision. 609 U.S. at 339–40. That interpretation is broad, but does not cover Plaintiffs' remaining claims.

First, as Defendants appear to agree, a vacatur is not a final decision to designate, terminate or extend TPS. ACMS 102.1 at 8–9 (arguing only that vacatur is a subsidiary decision). Rather, by their own terms, the challenged vacaturs purported simply to wipe the slate clean to "provide an opportunity for informed determinations regarding the TPS designations and clear guidance" "on a future date." *See* 90 Fed. Reg. 8805, 8807 (Feb. 3, 2025) (Venezuela); 90 Fed. Reg. 10511, 10514 (Feb. 24, 2025) (Following the

partial vacatur, "[t]he Secretary … intends to review the Haiti TPS designation by June 4, 2025.").

Second, unlike the decisions challenged in *Dahlia Doe*, the vacaturs here are not "subsidiary determinations" that "merge[d] into" the termination. *Dahlia Doe*, 609 U.S. at 344. The *Dahlia Doe* plaintiffs challenged the "decision to consult the State Department in a particular manner" and the "decision that country conditions ... justified termination." *Id.* at 339. The Supreme Court held these "merge[d] into the final agency action," which in that case was a termination. *Id.* at 344. Therefore, the Court held, those decisions could be reviewed only if the termination decision itself was reviewable. *Id.* Here, in contrast, each vacatur is a stand-alone decision separately announced in the Federal Register. Indeed, there is no dispute that the vacaturs themselves constitute independent final agency action. *Cf. Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 263 (E.D.N.Y. 2025) (reviewing and setting aside Haiti partial vacatur). For that reason, a vacatur is not a "subsidiary" decision under *Dahlia Doe*'s reasoning.

Defendants contend otherwise as to Venezuela, arguing that because the Venezuela termination is predicated on the vacatur, that vacatur should be treated as just a step in the process of termination, rather than a stand-alone decision. ACMS 102.1 at 8–9. Taken to its logical end, this would make every designation and extension a step in

the process of eventual termination—a nonsensical position. It also contravenes the text of Section 1254a(b)(5)(A), which treats "designation," "extension," and "termination" as distinct actions.

Third, a vacatur is not a "decision[]" "relating to" the ultimate decision to designate, terminate, or extend "under ... subsection" (b) of the TPS statute. *Dahlia Doe*, 609 U.S. at 339; 8 U.S.C. § 1254a(b)(5)(A). That is because, as described above, a decision made in excess of statutory authority is not a decision "under" the statute. *See supra* Section II.A.1–2.[1] Defendants wrongly claim otherwise, arguing Plaintiffs' position is irreconcilable with this Court's finding that the unlawful vacatur is inextricably intertwined with the termination. But Defendants ignore that the judicial review bar only applies to decisions "under … subsection [(b)]." 8 U.S.C. § 1254a(b)(5)(A). Defendants themselves previously acknowledged that a decision not made "under" subsection (b) of the TPS statute falls outside the review bar *even if* it relates in some sense to a designation, extension, or termination. They told the Supreme Court that agency decisions "[c]ancel[ing] … already-issued [TPS-related] employment

[1] That the Venezuela vacatur is not a decision "under [subsection (b)]" is confirmed by its contents. It says nothing about the conditions for extension under subsection (b) of the statute, but focuses on the "consolidated filing process[]"—a matter addressed under subsection (c). 90 Fed. Reg. at 8807. *See* 8 U.S.C. § 1254a(c)(1)(A)(iv).

authorization" or establishing "the conditions and procedures for [TPS holders to] receiv[e] work authorization" are not subject to the review bar. *See* Reply Br. for Pet., *Mullin v. Dahlia Doe*, Nos. 25-1083 and 25-1084, at 2026 WL 1081652, *9–10 (U.S. Apr. 20, 2026). While such decisions obviously "relate" to a TPS designation in some general sense, they fall under subsections (a) and (d) of the statute, not subsection (b), so they are not covered by the review bar. 8 U.S.C. § 1254a(a)(1)(B), (d). *Cf. E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 125 (1977) (where statute barred review of decisions under only one subsection, "the issue of jurisdiction to review the regulations is intertwined with the issue of the [source of the agency's] power to issue the regulations"). Defendants' concession reflects the general truth that "in a broad sense, everything 'relates to' everything else in some manner." *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 436 (1st Cir. 2016). It is equally true here.

Finally, it warrants mention that the Supreme Court endorsed that same distinction *in this case*. In its order staying preliminary relief, the Court stated its decision was "without prejudice to any challenge to Secretary Noem's … vacatur notice insofar as it purports to invalidate already-issued documents." *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2729 (2025) (mem.) (citing subsection (d), concerning authority to determine validity period of documents and effective date of termination). To the extent

the Supreme Court's stay orders make anything clear, they suggest that some TPS-related decisions are reviewable even where they relate in some sense to designation, extension, or termination decisions.

**B. The Vacaturs Are Unlawful.**

On the merits, this Court previously held the Secretary has no vacatur authority. *NTPSA I*, 150 F.4th at 1019. *Dahlia Doe* obviously does not abrogate that holding, as Defendants implicitly concede. *Dahlia Doe* recognizes that Congress enacted the TPS statute to "provide standards to govern the grant and termination" of nationality-based humanitarian protections. *Dahlia Doe*, 609 U.S. at 331. As this Court previously held, "[w]e may not render the statute a 'dead letter' by allowing the agency to act 'without complying with the procedural requirements' set forth by Congress." *NTPSA I*, 150 F.4th at 1021 (citation omitted).

**C. The Venezuela Termination Is Reviewable and Unlawful.**

Defendants assert that, even if the Venezuela vacatur remains reviewable after *Dahlia Doe*, the termination does not. ACMS 102.1 at 5–7. But, again, nothing in *Dahlia Doe* undermines this Court's conclusion on the issue. This Court held "[t]he Venezuela Termination was predicated on and inextricably intertwined with the Venezuela Vacatur; therefore, the illegality of the Vacatur must be fatal to the

Termination." *NTPSA III*, 166 F.4th at 766, *cert. granted*, *judgment vacated sub nom. Mullin v. Nat'l TPS All*. While *NTPSA III* was vacated, its reasoning remains valid and consistent with *NTPSA I*. *See* 150 F.4th at 1024 ("If the vacatur is postponed, and the prior extension is restored, the termination cannot go into effect.").

Defendants ask this Court to extricate the termination from the vacatur by rewriting it to take effect on October 3, 2026, instead of April 7, 2025. ACMS 102.1 at 6. Had it been so written, they contend, then it would have "already [taken] effect." *Id.* at 7. But just as this Court may not substitute its own reasoning for the agency's, so too it lacks authority to make up an entirely new decision to cure existing defects. *Washington v. Trump*, 847 F.3d 1151, 1167 (9th Cir. 2017) ("it is not our role to try, in effect, to rewrite the Executive Order"). *Cf. SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

Moreover, whether Defendants would have made the same decision to terminate TPS for Venezuela absent the unlawful vacatur—or, more importantly, whether they would do so *now*, after the January 2026 U.S. invasion and devastating June 2026 earthquakes—is not for either Defendants' counsel or this Court to decide. *Cf. Cal.*

*Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090–91 (9th Cir. 2011) (holding agency error may be deemed harmless only if it "clearly had no bearing on the procedure used or the substance of [the] decision reached") (citation omitted). It is notable that, after a court set aside the Haiti partial vacatur, Defendants did not implement the termination decision that had been predicated on it, but instead issued a new "superseding" termination decision months later. *See* 90 Fed. Reg. 54733, 54734 (Nov. 28, 2025). Similarly, no one knows what the Secretary would do now if required to make a new decision on Venezuela.

Finally, even if the termination were not inextricably intertwined with the vacatur, it would be reviewable because the Secretary has no authority to end a TPS designation before the "expiration of the most recent previous extension," and her decision to do so violated an express statutory command. 8 U.S.C. § 1254a(b)(3)(B) (providing that a TPS termination "shall not be effective earlier than ... the expiration of the most recent previous extension"); § 1254a(d)(3) (specifying rules for effective date of terminations). Like an unauthorized vacatur, a premature termination is not a decision "under" subsection (b) of the TPS statute, but rather a decision in excess of the authority granted by that subsection. *Id.* § 1254a(b)(5)(A). *See supra* Section II.A.2. It also violates the express command of subsection (b)(3)(B). Under those circumstances, this challenge to

the termination also triggers a "particularly strong" presumption favoring judicial review. *NTPSA III*, 166 F.4th at 756, *cert. granted*, *judgment vacated sub nom. Mullin v. Nat'l TPS All.*; *see also Staacke*, 841 F.2d at 281; *supra* Section II.A.3. Those conclusions would resolve this claim in Plaintiffs' favor even if *NTPSA I* were no longer good law.

**III. The Vacaturs Are Not Moot.**

Defendants concede the Venezuela termination "maintains present and future consequences." ACMS 91.1 at 6–7. Because the legality of the termination turns on the legality of the vacatur, Defendants' concession necessarily means the Venezuela vacatur is not moot.

If the Venezuela vacatur and termination are set aside, Venezuelan TPS holders would *currently* retain TPS. *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017) ("[A] case is not moot where any effective relief may be granted[.]"). As the government has recognized, absent a valid termination (including where a termination has been set aside due to litigation), TPS is automatically extended in six-month intervals. 8 U.S.C. § 1254a(b)(3)(C). *See, e.g.*, 91 Fed. Reg. 32069, 32070 (May 29, 2026) (automatic extension of Lebanon's designation due to agency's failure to make a

decision); 88 Fed. Reg. 40294, 40301 (June 21, 2023) (automatic extension of Nicaragua's designation due to litigation).

Even if the Venezuela termination could somehow stand without the vacatur, the vacatur has independent ongoing consequences for which this Court can provide effective relief. Unlike in the case of Haiti, Defendants never issued a new termination for Venezuela that is independent from the vacatur. As Defendants previously acknowledged, that distinction matters. ACMS 89.1 at 7 n.1 (not seeking stay as to Haiti partial vacatur because "it has no present effects on the status quo" given the Secretary's "new decision to terminate TPS for Haiti"). As a result of the superseding Haiti termination, neither the Haiti partial vacatur nor the termination predicated upon it ever went into effect, and there is no dispute that Haitian TPS holders were lawfully present during the entire purportedly "vacated" extension period. Defs.' Notice of Suppl. Auth., ACMS 65.1 (Jan. 7, 2026) (stating that, as a result of the superseding termination, "Haitian TPS holders will now retain TPS through the full duration of the previous extension").

In contrast, there is a live dispute about whether Venezuelan TPS holders are deemed to have accrued unlawful presence (i.e., were out of status) during the purportedly "vacated" TPS period. Important immigration consequences—including

bars to reentry and eligibility to adjust status—turn on resolution of this dispute. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II) (bars to reentry from unlawful presence); 8 U.S.C. § 1255(c)(2) (bars to adjustment for failure "to maintain continuously a lawful status"). *See, e.g.*, ACMS 90.5 ¶¶ 14–15 (Venezuelan NTPSA member considered ineligible to adjust and risking bars to reentry because of purported lost status during vacated TPS period). Because judgment in Plaintiffs' favor would protect them from these consequences, they have an ongoing stake in this litigation—even if, as Defendants suggest, they could present an independent claim challenging any inadmissibility or reentry bar. ACMS 102.1 at 12. *Cf. Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968) (habeas case remained live where conviction continued to bar voting and serving on juries).

Finally, while Plaintiffs agree the Haiti partial vacatur has no present effects, the voluntary cessation and capable-of-repetition exceptions prevent mootness. *West Virginia v. EPA*, 597 U.S. 697, 720 (2022) ("voluntary" actions moot claims only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") (citation omitted); *A.D. ex rel. L.D. v. Haw. Dep't of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013) (capable-of-repetition exception applies where there was reasonable likelihood party would be subject to action again and challenge would only be available

for at most two years). Defendants' only argument to the contrary improperly assumes they will win this litigation. ACMS 102.1 at 12 (arguing no risk of repetition because TPS has been terminated). That is not how mootness doctrine works. Should Plaintiffs prevail on their still-pending constitutional challenge to the Haiti termination, it is reasonable to assume Defendants could again try to end Haiti's designation prematurely; and Defendants have not shown it "absolutely clear" that they would abandon that endeavor. *See* 90 Fed. Reg. at 54733 (asserting DHS would have ended Haiti's TPS before the expiration of the previous extension, but for "interference by a federal district court judge"). Therefore, Plaintiffs' challenge to the Haiti partial vacatur is not moot.

## IV. The Court Should Not Decide the Declaratory Relief Issues Here, But Should Affirm If It Does.

The parties agree the district court's ruling in 26-187 (the declaratory relief order) should be reversed if this Court reverses in 25-5724 (the partial summary judgment ruling). *See* ECF 102.1 at 2. For that reason, Plaintiffs respectfully suggest the more appropriate course is for this Court to wait to decide the distinct declaratory relief issues only if necessary—*i.e.*, if this Court affirms the partial summary judgment ruling in 25-5724 and the Supreme Court upholds that decision (whether by denying certiorari or after merits review). Doing so would avoid a potentially unnecessary decision regarding the availability of declaratory relief that could have significant consequences beyond

this case. It would also allow a decision on full briefing. *Cf. SEC v. Jensen*, 835 F.3d 1100, 1113 n.6 (9th Cir. 2016) (recognizing the "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more") (citation omitted).

Should the Court nonetheless proceed in 26-187, it should affirm. No rule forecloses declaratory relief on claims as to which a party has already won some other form of relief, and the Supreme Court stays did not prevent declaratory relief here.[2] Defendants' arguments to the contrary are meritless.

The Supreme Court has specifically recognized that "a request for declaratory relief may be considered independently of whether other forms of relief are appropriate." *Powell v. McCormack*, 395 U.S. 486, 518 (1969) (citing Declaratory Judgment Act). That the Declaratory Judgment Act does not create Article III jurisdiction is immaterial. ACMS 102.1 at 18-19. It provides an independent basis for *relief*. That indisputable rule suffices to support the declaratory relief order here.

The district court did not "disregard … the divestiture rule" by granting declaratory relief after the summary judgment ruling was on appeal. ACMS 102.1 at 20.

---

[2] Plaintiffs sought declaratory relief only on their Venezuela claims because the district court had not ruled on Plaintiffs' APA challenge to the Haiti termination and, at the time, Haitian TPS holders retained TPS. This was not "gamesmanship." ACMS 102.1 at 15.

Rather, it held that rule inapplicable because the availability of declaratory relief was not an “aspect[] of the case involved in the appeal.” 1-ER-002. That conclusion follows from controlling precedent. *See Nat’l Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (holding district court retained jurisdiction to modify injunction even after defendants had appealed it); *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 568–73 (5th Cir. 2005) (affirming district court’s jurisdiction to award money damages while declaratory judgment was on appeal); *Bolt v. Merrimack Pharms., Inc.*, 2005 WL 2298423, at *4–5 (E.D. Cal. Sept. 20, 2005) (considering request for further relief while declaratory judgment was on appeal). Indeed, courts routinely enter further relief in complex cases while prior orders are on appeal. None of the cases Defendants cite, ACMS 102.1 at 16-17 & 19, establish the radical proposition that an appeal necessarily stops all proceedings in district court; it does not.

Nor did anything in the Supreme Court’s unreasoned stay orders preclude the district court from awarding other forms of relief. *See* ACMS 102.1 at 15. To the contrary, Defendants sought stays of the district court’s 705 and 706 orders based partly on arguments specific to the nature of relief. *See* Defs.’ Stay Appl. at 15, *Noem v. Nat’l TPS All.*, No. 24A1059 (U.S. May 1, 2025) (contending the district court “issu[ed]

impermissible universal relief that intrudes on central Executive Branch operations"); Defs.' Stay Appl. at 23, *Noem v. Nat'l TPS All.*, No. 25A326 (U.S. Sept. 19, 2025) (contending "universal relief" caused "irreparable harm"). Declaratory relief is materially different. *See, e.g.*, *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023) (describing declaratory relief as "'a much milder form' of relief") (citation omitted).

Moreover, the district court provided Defendants ample opportunity to seek a stay from this Court or the Supreme Court if they disagreed, but they chose not to. 1-ER-005.

Finally, the fact that district courts have diverged on the significance of the declaratory relief order in individual habeas cases only emphasizes the limited nature of declaratory relief, and says nothing about the district court's authority to grant it. *See* ACMS 102.1 at 17.[3]

---

[3] *Compare* ACMS 102.1 at 17–18 (citing cases declining to give declaratory relief order preclusive effect) *with Bello Oropeza v. Noem*, 2026 WL 1597192, at *8 (D. Ariz. May 21, 2026) (applying declaratory relief order to order release of habeas petitioner and collecting cases).

## V. An Administrative Stay Is Not Warranted.

This Court should deny Defendants' request for an administrative stay. ACMS 102.1 at 21. The balance of equities weighs strongly in Plaintiffs' favor. Defendants have not even argued any harm beyond the inability to carry out their desired policy. In contrast, Plaintiffs are being detained, deported, separated from their American children, and denied the ability to work and provide for their loved ones. ACMS 90.1–90.8. If this Court concludes Defendants have not prevailed in this appeal, it should not compound the human tragedy created by Defendants' illegal actions by awarding them any further stay.

Sincerely,

*<u>/s/ Ahilan T. Arulanantham</u>*

Ahilan T. Arulanantham (SBN 237841)
*Counsel of Record*
arulanantham@law.ucla.edu
Vanessa Young (SBN 352693)
youngviniegra@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong

lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Emily C. Zhu (SBN 366697)
ezhu@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

Mohammad Tajsar (SBN 280152)
mtajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

*Attorneys for Plaintiffs-Appellees*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-5724, 26-187

I am the attorney or self-represented party.

**This brief contains** 5,599 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated 11/3/2026.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Ahilan T. Arulanantham **Date** 11/10/2026

*(use "s/[typed name]" to sign electronically-filed documents)*