No. _______

# In the Supreme Court of the United States

MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY, ET AL., APPLICANTS

*v.*

NATIONAL TPS ALLIANCE, ET AL.

APPLICATION TO STAY THE JUDGMENT ISSUED
BY THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AND REQUEST FOR AN ADMINISTRATIVE STAY

D. JOHN SAUER
*Solicitor General*
*Counsel of Record*
*Department of Justice*
*Washington, D.C. 20530-0001*
*SupremeCtBriefs@usdoj.gov*
*(202) 514-2217*

TABLE OF CONTENTS

Statement ........ 5

A. Legal background ........ 5

B. Factual background ........ 7

C. Procedural background ........ 9

Argument ........ 14

A. The government is likely to succeed on the merits ........ 15

1. The TPS statute bars respondents' APA claims challenging the Secretary's termination decision ........ 15

2. The government is also likely to succeed against respondents' APA claims challenging the Secretary's vacatur decision ........ 18

B. The other factors support relief from the district court's order ........ 19

1. The issues raised by this case warrant this Court's review ........ 19

2. The equities favor a stay ........ 20

Conclusion ........ 24

## PARTIES TO THE PROCEEDING

Applicants (defendants-appellants below) are Markwayne Mullin, in his official capacity as Secretary of Homeland Security, the United States Department of Homeland Security (DHS), and the United States of America.

Respondents (plaintiffs-appellees below) are National TPS Alliance, Mariela González, Freddy Arape Rivas, M.H., Cecilia González Herrera, Alba Purica Hernández, E.R., Hendrina Vivas Castillo, Viles Dorsainvil, A.C.A., and Sherika Blanc.

## RELATED PROCEEDINGS

United States District Court (N.D. Cal.):

*National TPS Alliance* v. *Noem*, No. 25-cv-1766 (Mar. 31, 2025) (order postponing agency actions)

*National TPS Alliance* v. *Noem*, No. 25-cv-1766 (Apr. 4, 2025) (order denying motion for stay pending appeal)

*National TPS Alliance* v. *Noem*, No. 25-cv-1766 (Sept. 5, 2025) (order granting summary judgment)

*National TPS Alliance* v. *Noem*, No. 25-cv-1766 (Sept. 10, 2025) (order denying motion for stay pending appeal)

United States Court of Appeals (9th Cir.):

*National TPS Alliance* v. *Noem*, No. 25-2120 (Apr. 18, 2025) (order denying motion for stay pending appeal)

*National TPS Alliance* v. *Noem*, No. 25-2120 (Aug. 29, 2025) (order affirming grant of postponement)

*National TPS Alliance* v. *Noem*, No. 25-5724 (Sept. 17, 2025) (order denying motion for stay pending appeal)

*National TPS Alliance* v. *Noem*, No. 25-5724 (Jan. 28, 2026) (order affirming summary judgment)

*National TPS Alliance* v. *Noem*, No. 25-5724 (Mar. 11, 2026) (order denying petition for rehearing en banc)

*National TPS Alliance* v. *Mullin*, No. 25-5724 (Oct. 30, 2026) (order denying motion for stay pending appeal)

*National TPS Alliance* v. *Mullin*, No. 25-5724 (Nov. 3, 2026) (order granting administrative stay in part and withdrawing previous order)

Supreme Court of the United States:

*Noem* v. *National TPS Alliance*, No. 24A1059 (May 19, 2025) (order granting stay application)

*Noem* v. *National TPS Alliance*, No. 25A326 (Oct. 3, 2025) (order granting stay application)

*Mullin* v. *National TPS Alliance*, No. 26-48 (Oct. 5, 2026) (order granting certiorari, vacating the Ninth Circuit's judgment, and remanding)

# In the Supreme Court of the United States

No. _______

MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY, ET AL., APPLICANTS

*v.*

NATIONAL TPS ALLIANCE, ET AL.

APPLICATION TO STAY THE JUDGMENT ISSUED
BY THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AND REQUEST FOR AN ADMINISTRATIVE STAY

Pursuant to Rule 23 of the Rules of this Court and the All Writs Act, 28 U.S.C. 1651, the Solicitor General—on behalf of applicants Markwayne Mullin, et al.—respectfully files this application to stay the order granting summary judgment issued by the United States District Court for the Northern District of California (App., *infra*, 156a-224a), pending the consideration and disposition of the government's appeal to the United States Court of Appeals for the Ninth Circuit and, if the court of appeals affirms the judgment, pending the timely filing and disposition of a petition for a writ of certiorari and any further proceedings in this Court. The Solicitor General also respectfully requests an administrative stay of the district court's judgment pending the resolution of this application.

This application marks a remarkable third trip to this Court in the same case involving the termination of Venezuela's 2023 temporary protected status (TPS) designation. At this juncture, the grounds for a stay are overwhelming. As of Friday, November 20, the district court's long-dormant summary-judgment order from Sep-

tember 2025 setting aside the Secretary of Homeland Security's termination of Venezuela's TPS designation will spring into effect, inflicting severe and immediate harm.

The Ninth Circuit's refusal to grant a stay is inexplicable. The district court's judgment had been stayed under this Court's latest, October 2025 stay of that order pending disposition of a petition for a writ of certiorari. See *Noem* v. *National TPS Alliance*, 146 S. Ct. 23 (2025). On October 5, 2026, this Court granted certiorari, vacated the Ninth Circuit's judgment, and remanded for further proceedings in light of *Mullin* v. *Doe*, 609 U.S. 324 (2026)—a decision that unambiguously forecloses the district-court order at issue. The government immediately asked the Ninth Circuit for an administrative stay and a stay of the district court's order so that, upon issuance of this Court's mandate on November 6, the nineteen-month status quo would be maintained while the Ninth Circuit addresses the effect of *Doe*. Both parties' stay briefing addressed *Doe* at length. Yet the Ninth Circuit waited until October 30 to cursorily deny any stay—then backtracked four days later, on November 3, to grant an administrative stay until November 20 while ordering supplemental briefing on the effect of *Doe*. Since then, the court of appeals has been silent.

This Court should grant an immediate administrative stay and swiftly grant yet another stay in this case thereafter. Absent judicial intervention between now and November 20, the Department of Homeland Security will have to resurrect TPS status for hundreds of thousands of Venezuelans after a nineteen-month hiatus. During those nineteen months, with TPS no longer in effect, DHS terminated work authorizations, placed aliens in removal proceedings, secured removal orders, and detained thousands of aliens pending removal proceedings. Because aliens covered by a TPS designation may neither be removed nor be detained based upon their immi-

gration status alone, allowing Venezuela TPS to spring back into effect now would be enormously disruptive. This Office has been informed that the government could be forced to immediately release into the country some 1800 or so Venezuelan aliens from detention. Because the government could not rely on ankle monitoring, those aliens would have an overwhelming incentive to flee in the period between their release and this Court's resolution of this stay. Reviving TPS for Venezuelans would also prevent the government from executing up to 332 final orders of removal and would obligate the government to provide untold aliens with work authorization. An immediate administrative stay is justified based on these immediate harms alone.

More broadly, this is an obvious case for a stay pending appeal and disposition of a petition for a writ of certiorari. As to the likelihood of success on the merits, this Court previously stayed this very order, then issued a merits ruling in *Doe* holding that the TPS statute by its "plain" terms bars courts from reviewing "non-constitutional claims" challenging the Secretary's "decision to terminate [a] countr[y's] TPS designation[]." 609 U.S. at 339. This case involves a non-constitutional challenge to the termination of Venezuela's 2023 TPS designation. After *Doe*, that is plainly untenable.

The remaining stay factors also strongly support the government. Giving effect to the district court's order for even a moment at this late date will gravely harm the government, compelling it to release removable aliens into the country with no guarantee of ever successfully locating them and returning them to detention. It will also cause mass confusion by requiring work authorizations for thousands of aliens to flip on and off as litigation progresses. Even setting aside those extraordinary immediate harms, the government suffers further "irreparable harm" when a federal court enters an order that "exceed[s] the authority conferred" by Congress. *Trump* v.

*CASA, Inc.*, 606 U.S. 831, 860 (2025). Here, Congress "very clearly" withheld from federal courts the authority to review "non-constitutional claims" challenging the decision to terminate TPS designations. *Doe*, 609 U.S. at 340. Furthermore, by forcibly returning Venezuela's TPS designation over the Executive's express termination, the district court's order would also "impede[] the Government from advancing its compelling interests in border security and integrity," *Mullin* v. *Friends of the Ruidosa Church*, 2026 WL 3386954, at *2 (U.S. Nov. 9, 2026) (internal quotation marks omitted), by interfering with the government's decisions on whether and how to "expel or exclude aliens," *Fiallo* v. *Bell*, 430 U.S. 787, 792 (1977) (citation omitted). Those harms are especially acute here, where the termination decision was expressly predicated on the Secretary's assessment of the "national interest," "national security," and "public safety." 90 Fed. Reg. 9040, 9043-9044 (Feb. 5, 2025). And that is not even to mention the resources the government would have to "irrevocably expend[]" to temporarily release alien detainees, grant work authorizations, and undo those actions later. *Friends of the Ruidosa Church*, 2026 WL 3386954, at *2 (citation omitted). On the other side of the ledger, respondents below pointed to the same sorts of inadequate harms that they asserted—without success—the last two times this Court granted the government's stay request in this case.

This Court already balanced these very equities twice before and found that they tilted in the government's favor; that should be dispositive this third time. See *National TPS Alliance*, 146 S. Ct. at 24; *Trump* v. *Boyle*, 145 S. Ct. 2653, 2654 (2025). When the district court entered an order postponing the Secretary's termination decision, this Court stayed it. *Noem* v. *National TPS Alliance*, 145 S. Ct. 2728 (2025). When the district court followed up with its summary judgment order, this Court again granted a stay because, "[a]lthough the posture of the case has changed, the

parties' legal arguments and relative harms generally have not." *National TPS Alliance*, 146 S. Ct. at 24. Here, the posture has *not* changed; the exact same district-court order is under review. The Ninth Circuit should have granted the government's stay request as a matter of course instead of denying a stay, pulling that ruling back, then refusing to act through the eve of when the November 20 administrative stay will expire. Especially given this case's history, this Court should reject that gamesmanship, again grant the government's stay application, and issue an immediate administrative stay in the meantime.

## STATEMENT

### A. Legal Background

This Court is, by now, well aware of the features of the TPS program and its highly circumscribed judicial review mechanism. See *Mullin* v. *Doe*, 609 U.S. 324, 329-332 (2026). In 1990, Congress established a discretionary program to "provide short-term humanitarian relief for aliens who cannot safely return to their home countries due to events such as armed conflict or natural disaster." *Id.* at 329; see 8 U.S.C. 1254a(b)(1). The program authorizes the Secretary of Homeland Security, "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if he finds:

> (A) * * * that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
>
> (B) * * * that— (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected, (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and (iii) the foreign state officially has requested designation under this subparagraph; or

> (C) * * * that there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. 1254a(b)(1).[1]

When the Secretary designates a country for TPS, eligible individuals from that country who have been continuously physically present in the United States since the effective date of the designation (and have continuously resided in the United States since such date as the Secretary may designate) may not be removed from the United States, may not be detained on the basis of their immigration status, and are authorized to work here for the duration of the country's TPS designation. 8 U.S.C. 1254a(a), (c), (d)(4).

As the program's name suggests, designations shall be "temporary." 8 U.S.C. 1254a(a); see *Doe*, 609 U.S. at 329 (noting that the TPS program was meant to provide "short-term" relief). Initial designations and extensions thereof may not exceed eighteen months. 8 U.S.C. 1254a(b)(2) and (3)(C). The Secretary, in consultation with "'appropriate agencies,'" must review each designation at least 60 days before the designation period ends to "'determine whether the conditions for [the country's] designation'" continue to be met. *Doe*, 609 U.S. at 332 (quoting 8 U.S.C. 1254a(b)(3)(A)). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," he "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. 8 U.S.C. 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer

---

[1] While the provisions at issue refer to the Attorney General, Congress has transferred the authority to the Secretary of Homeland Security. See 6 U.S.C. 552(d), 557; *Doe*, 609 U.S. at 331.

meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." 8 U.S.C. 1254a(b)(3)(C). And if the Secretary does decide to terminate the designation, that termination "take[s] effect at least 60 days after the notice appears in the Federal Register," *Doe*, 609 U.S. at 332, "or, if later, the expiration of the most recent previous extension," 8 U.S.C. 1254a(b)(3)(B).

The TPS statute also provides that "the Secretary's TPS designation decisions are not subject to judicial review." *Doe*, 609 U.S. at 332. The operative provision states: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. 1254a(b)(5)(A). This Court confirmed in June that the reviewability bar means what it says, barring "all non-constitutional claims" challenging the Secretary's "discrete decision[s]" regarding a country's TPS designation. *Doe*, 609 U.S. at 339, 345.

**B. Factual Background**

1. In March 2021, Secretary Mayorkas designated Venezuela for TPS, citing extraordinary and temporary conditions that he determined prevented Venezuelans from safely returning. 86 Fed. Reg. 13,574 (Mar. 9, 2021) (2021 Designation); see generally 24A1059 Gov't Appl. 6-10 (explaining history of Venezuela's TPS designation); 25A326 Gov't Appl. 7-10 (same). In October 2023, he redesignated Venezuela for TPS. 88 Fed. Reg. 68,130 (Oct. 3, 2023) (2023 Designation). It is the latter designation which is relevant to this case.

On January 17, 2025, the last Friday of the prior administration, Secretary Mayorkas published a notification that the Department would extend the 2023 Designation for 18 months. 90 Fed. Reg. 5961 (2025 Extension). Secretary Mayorkas

purported to extend only "the existing October 3, 2023 designation of Venezuela for TPS," *id.* at 5966; his notification did not extend any other designation. The extension would become effective only on April 3, 2025, and would thus expire on October 2, 2026. See *ibid.* The 2025 Extension also purported to create a process to allow TPS beneficiaries under the 2021 Designation to "re-register under this extension"—that is, the extended 2023 Designation. *Id.* at 5693.

2. As announced on February 1, 2025, after consultation with relevant agencies, then-Secretary Noem decided to terminate the 2023 Designation. See 90 Fed. Reg. at 9044. She determined that "permitting the aliens to remain temporarily in the United States [would be] contrary to the national interest of the United States," 8 U.S.C. 1254a(b)(1)(C), and thus that the statutory conditions for designation were no longer met, 90 Fed. Reg. at 9042. She cited several factors that informed her "discretionary judgment." *Ibid.* The TPS program, she explained, had allowed "a significant population of inadmissible or illegal aliens without a path to lawful immigration status to settle in the interior of the United States." *Ibid.* The sheer number of individuals had stretched local resources, including "city shelters, police stations, and aid services," to their "maximum capacity." *Id.* at 9043. She also found that the TPS program had a potential "magnet effect," attracting additional Venezuelan nationals even beyond the current TPS beneficiaries, and cited "public safety" concerns as part of her determination. See *id.* at 9042, 9043 & n.18 (quoting 62 Fed. Reg. 16,608, 16,609 (Apr. 7, 1997)).

That termination decision followed Secretary Noem's separate interim decision to vacate the 2025 Extension. See 90 Fed. Reg. 8805, 8807 (Feb. 3, 2025). She made that decision because she determined that the 2025 Extension's basis was "thin and inadequately developed," *ibid*, and she identified a need "to untangle the confusion"

visited by the novel 2025 Extension and to "provide an opportunity for informed determinations regarding the TPS designations and clear guidance." *Ibid.* But the Secretary was clear that this vacatur decision was not to be the final or dispositive word on Venezuela's designation. Rather, the forthcoming termination decisions would ultimately resolve Venezuela's TPS designation. *Ibid.*

The Secretary determined the effective date of the termination of the 2023 Designation to be April 7, 2025—60 days after publication in the Federal Register. 90 Fed. Reg. at 9043 (citing 8 U.S.C. 1254a(b)(3)(B)). The Secretary thereafter also terminated the 2021 Designation, which termination took effect on November 7, 2025. 90 Fed. Reg. 43,225 (Sept. 8, 2025).[2] By terminating both the 2021 and 2023 Designations, the Secretary entirely superseded the prior stopgap vacatur decision. Every alien who received TPS under the 2025 Extension did so either through the 2021 Designation or the 2023 Designation, which are both now terminated. The Secretary's decision to vacate the 2025 Extension thus has no separate force apart from the termination decisions.

### C. Procedural Background

1. On February 18, 2025, respondents brought challenges under the Administrative Procedure Act (APA), 5 U.S.C. 551 *et seq.*, to the Secretary's determinations to vacate Secretary Mayorkas's extension of the 2023 Designation and to ultimately terminate that designation. Respondents include individuals who hold beneficiary status under the 2021 and 2023 Designations, plus an organizational plaintiff, the National TPS Alliance. Am. Compl. ¶¶ 15-24; see also D. Ct. Doc. 34 ¶¶ 35-39 (Feb. 20, 2025).

---

[2] The termination of the 2021 Designation has not been challenged by respondents and is not at issue in this case.

2. On March 31, 2025, the district court granted respondents' motion to postpone the effective date of the Secretary's termination and vacatur decisions. App., *infra*, 283a-360a. The court held that Section 1254a(b)(5)(A) did not bar judicial review of respondents' claims, including their arbitrary-and-capricious APA challenges. *Id.* at 307a-309a. On the merits, the court concluded that respondents were likely to succeed by reasoning that the Secretary's rationale for her actions was arbitrary and capricious in violation of the APA, and was likely motivated by racial animus in violation of the Fifth Amendment. *Id.* at 340a-357a.

The district court thereafter denied the government's motion to stay the postponement order pending appeal. App., *infra*, 278a-282a. The Ninth Circuit also denied the government's stay request. *Id.* at 277a. This Court then granted the government's emergency stay request on May 19, 2025, with only one Justice noting a dissent. *Noem* v. *National TPS Alliance*, 145 S. Ct. 2728, 2729 (2025).

3. On September 5, 2025, the district court granted respondents' motion for summary judgment on their APA claims, setting aside the Secretary's vacatur and termination decisions. App., *infra*, 156a-224a. That decision rendered the ongoing litigation over the postponement order moot.

In granting summary judgment to respondents, the district court once again rejected the government's threshold arguments, including that Section 1254a(b)(5)(A) precluded review of the Secretary's termination and vacatur decisions. App., *infra*, 179a-191a. On the merits, the district court held that the Secretary's termination decision was arbitrary and capricious and contrary to law. *Id.* at 204a-208a. The court concluded that the termination decision violated the APA because the Secretary "fail[ed] to engage in a meaningful consultation with government agencies" prior to making her decision, and because the Secretary "fail[ed] to conduct a meaningful

country conditions review." *Id.* at 206a. The court criticized the Secretary for not "obtain[ing] a contemporaneous or updated country conditions report." *Id.* at 207a. The district court also reasoned that the termination decision was somehow "predicated" on the vacatur decision, and thus that the two decisions must rise and fall together on the merits of any APA claim. *Id.* at 204a. Because respondents did not move for summary judgment on their equal-protection claims, the district court did not enter its order on that basis. *Id.* at 213a, 224a.

The district court again declined to stay its judgment pending appeal. App., *infra*, 149a-155a. The court rejected the government's reliance on this Court's prior stay order, noting that the "order did not provide any specific analysis on the merits of [respondents'] case (including whether judicial review of [respondents'] case is permissible)." *Id.* at 151a (footnote omitted). The court further stated that, in its view, the fact that the "record herein has been further developed" justified disregarding this Court's prior stay order. *Id.* at 152a.

On September 17, 2025, the court of appeals also (again) denied the government's request to stay the judgment pending appeal. App., *infra*, 134a-148a. The court of appeals reasoned that this Court's prior stay order was "textually limited to '[t]he March 31, 2025 order entered by the' district court," and thus did not address the final judgment the district court later entered. *Id.* at 138a (quoting *National TPS Alliance*, 145 S. Ct. at 2728-2729) (brackets in original). The court also refused to allow an "unreasoned stay order" to inform its analysis because the court claimed it could "only guess" as to this Court's rationale. *Id.* at 139a.

On October 3, 2025, this Court again disagreed with the Ninth Circuit, staying the district court's order as to the Secretary's vacatur and termination decisions pending the disposition of the government's appeal to the Ninth Circuit and petition for a

writ of certiorari. *Noem* v. *National TPS Alliance*, 146 S. Ct. 23, 24 (2025). This Court explained that, "[a]lthough the posture of the case has changed, the parties' legal arguments and relative harms generally have not." *Ibid.* Accordingly, "[t]he same result that [this Court] reached in May [was] appropriate here." *Ibid.*

4. On January 28, 2026, the court of appeals affirmed the district court's summary judgment order. App., *infra*, 56a-104a. The court reasoned that this Court's two stay orders had "not expressly decide[d] the issue of whether the Government was likely to succeed on the merits of this case," *id.* at 74a, and went on to hold that Section 1254a(b)(5)(A) did not foreclose respondents' APA claims, *id.* at 78a-82a, 99a. The court of appeals relied on, *inter alia*, this Court's decision in *McNary* v. *Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991); the "absurd results" that would purportedly follow from a contrary interpretation; and "the strong presumption of judicial reviewability." App., *infra*, at 78a-82a, 99a. On the merits, the court of appeals concluded that the Secretary's termination decision violated the APA. See *id.* at 99a-100a. Like the district court, the court of appeals considered only respondents' "statutory claims, not their constitutional claims." *Id.* at 85a. The Ninth Circuit subsequently denied the government's petition for rehearing en banc, over dissents from Judge Bumatay (joined by eight other judges) and Judge Nelson. *Id.* at 5a-55a.

On June 25, 2026, this Court held in *Mullin* v. *Doe*, 609 U.S. 324 (2026), that federal courts lack jurisdiction over APA and other non-constitutional claims challenging TPS terminations (there, of the Haiti and Syria designations) because Section 1254a(b)(5)(A) "bar[s]" judicial review of "all non-constitutional claims." *Id.* at 338, 345. *Doe* distinguished *McNary* as "turn[ing] on the specific wording of the provision at issue" in that case and explained that "lower courts" have "read far too much into th[at] decision[]" in "limit[ing]" the TPS judicial-review bar. *Id.* at 340-341. *Doe* also

rejected arguments that its "interpretation of the judicial-review bar could protect many shocking abuses of TPS," because "Congress would have ample means to stop that abuse." *Id.* at 344-345. And *Doe* explained that "the text of the TPS judicial-review bar very clearly overcomes the general presumption in favor of judicial review." *Id.* at 340.

In light of *Doe*, the government petitioned for a writ of certiorari from the court of appeals' affirmance of the district court's order, requesting that this Court grant certiorari, vacate the Ninth Circuit's judgment, and remand the case. Pet. 10-12, *Mullin* v. *National TPS Alliance*, No. 26-48 (July 9, 2026). Respondents agreed with that course, acknowledging "that the premises of" the Ninth Circuit's decision "have been altered by" *Doe*. Resp. to Pet. 1, *Mullin*, *supra* (No. 26-48). This Court granted the petition on October 5, 2026, vacating the Ninth Circuit's judgment and remanding the case for further consideration. *Mullin* v. *National TPS Alliance*, 2026 WL 2976626, at *1.

By operation of this Court's rules, its prior stay of the order at issue expired on November 6. See Sup. Ct. R. 45.3. The same day as the Court's GVR, on October 5, 2026, the government accordingly asked the Ninth Circuit for a stay pending appeal on remand and requested a ruling by October 26. C.A. Doc. 89. Additionally, the government asked the Ninth Circuit, if it were to deny a stay pending appeal, to enter an administrative stay for at least 21 days to allow the government "an orderly opportunity to seek additional relief." *Id.* at 2.[3]

On October 30, 2026, the Ninth Circuit denied the government's motion in a

---

[3] At the time, this Court's mandate had not yet issued and the case had therefore not yet returned to the Ninth Circuit. The government's stay motion was accordingly a request for an indicative ruling. Cf. Fed. R. Civ. P. 62.1(a) (permitting a district court to state that it would grant a motion upon remand even if it currently "lacks authority to grant [it] because of an appeal that has been docketed and is pending").

single, unreasoned paragraph. App., *infra*, 3a-4a. The court also denied the government's request for a 21-day administrative stay and granted no stay at all. *Id.* at 4a.

Four days later, on November 3, 2026, the court of appeals backtracked. App., *infra*, 1a-2a. Without explanation, the court declared its October 30 order "hereby withdrawn." *Id.* at 2a. Instead, the Ninth Circuit issued a 14-day administrative stay starting on November 6 (when this Court's mandate was set to issue). *Ibid.* The court of appeals entered an additional order requesting the parties to file by November 10 supplemental briefing "addressing the effect, if any, of *Mullin v. Doe*, 609 U.S. 324 (2026) on this case," C.A. Doc. 98 (Nov. 3, 2026)—even though that case had already been extensively discussed in the original stay motion briefing, see C.A. Doc. 89, at 12-15; C.A. Doc. 90-1, at 10-21 (Oct. 15, 2026); C.A. Doc. 91, at 3-7 (Oct. 21, 2026).

In order to ensure expeditious review, the government filed its supplemental brief on November 6—four days before the court of appeals' deadline, and on the same day that this Court's stay expired. C.A. Doc. 102. In its filing, the government also requested that the Ninth Circuit "issue a merits decision by November 13 or, alternatively, issue an order by November 13 providing that the administrative stay will extend seven days after any decision." *Id.* at 3. The Ninth Circuit has not acted on this request. Accordingly, its administrative stay is set to expire—and the district court's vacatur of the Secretary's termination of the 2023 Designation is set to spring into effect—on November 20.

## ARGUMENT

Under Rule 23 of the Rules of this Court and the All Writs Act, 28 U.S.C. 1651, the Court may stay a district court's judgment pending review in the court of appeals and in this Court. See, *e.g.*, *McHenry* v. *Texas Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025).

To obtain such relief, an applicant must show a likelihood of success on the merits, a reasonable probability of obtaining certiorari, and a likelihood of irreparable harm. See *Hollingsworth* v. *Perry*, 558 U.S. 183, 190 (2010) (per curiam). A stay is self-evidently warranted here.

**A. The Government Is Likely To Succeed On The Merits**

The district court's merits analysis is plainly wrong. As this Court conclusively held in *Doe*, the TPS statute precludes judicial review of the claims that the Secretary acted arbitrarily and capriciously in terminating the 2023 Designation. Because that termination independently ends Venezuela's 2023 TPS designation, the government is likely to succeed on that basis alone. To the extent the Court reaches respondents' challenge to the Secretary's vacatur decision (it need not), that too is a non-constitutional claim barred by *Doe*.

**1. The TPS statute bars respondents' APA claims challenging the Secretary's termination decision**

The district court granted summary judgment to respondents on their APA claims challenging the Secretary's determination to terminate Venezuela's 2023 TPS designation. See App., *infra*, 204a-208a; *id.* at 223a-224a. The court held that the Secretary "fail[ed] to engage in a meaningful consultation with government agencies" in reaching her determination and "fail[ed] to conduct a meaningful country conditions review," and that her decision was otherwise "arbitrary and capricious." *Id.* at 206a-208a. The court accordingly set aside the Secretary's termination decision, thus continuing Venezuela's TPS designation.

*Doe* confirms that this was error. The TPS statute is unambiguous: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS.

8 U.S.C. 1254a(b)(5)(A). *Doe* gave those "clear" words their "plain meaning," and held that this provision bars "all non-constitutional claims" that challenge the Secretary's "final decision to terminate" a country's "TPS designation[]." 609 U.S. at 339, 345. That included the same APA claims as here—claims asserting that the Secretary "had not properly consulted other Government agencies" and "ignor[ed]" "country conditions" evidence in terminating TPS designations. *Id.* at 338; see *id.* at 335-336 (discussing claim that Secretary "acted contrary to law by failing to engage in adequate consultation with other agencies"). Because each of those "non-constitutional claims" concerned "discrete decision[s] made by the Secretary" in the leadup to her ultimate termination decision, the TPS statute "barred" courts from reviewing them. *Id.* at 339-340.

That holding squarely controls this case. Like the lower courts in *Doe*, the district court here granted summary judgment to respondents because it held that the Secretary made her termination decision without "meaningful consultation" with other agencies and did not "conduct a meaningful country conditions review." App., *infra*, 206a; compare with *Doe*, 609 U.S. at 335-336, 338. But, as in *Doe*, the Secretary's decision to terminate a TPS designation, as well as her subsidiary "decision[s]" to "consult the State Department in a particular manner" and to evaluate "country conditions" in a particular way, are "discrete decision[s]" falling directly within the TPS statute's review bar. *Doe*, 609 U.S. at 339. The district court was thus barred from reviewing respondents' APA claims challenging those determinations.

Indeed, this Court's prior stay orders in this case already presaged that conclusion. In those proceedings too, the government argued that the TPS statute's judicial-review bar precludes review of respondents' APA claims challenging the Secretary's determinations with respect to Venezuela's TPS designation. 24A1059 Gov't

Appl. 16-20; 25A326 Gov't Appl. 16-19.

Given all of this, respondents below unsurprisingly "acknowledge[d]" that their "statutory challenges to the termination are no longer cognizable after" *Doe*, insisting only that their "vacatur claim remains cognizable." C.A. Doc. 90-1, at 5 (Oct. 15, 2026). That concession should be fatal to their suit. The Secretary's vacatur (which revoked the 2023 Designation's extension) is completely superseded by the termination (which eliminates the 2023 Designation outright). Under operation of statute, the termination became effective either "60 days after the date the notice is published or, *if later, the expiration of the most recent previous extension*." 8 U.S.C. 1254a(b)(3)(B) (emphasis added). Regardless of whether the Secretary's vacatur was effective or reviewable, the termination at minimum took effect on October 3, 2026, after the 2025 Extension expired. No alien can claim TPS coverage under the 2023 Designation in light of the Secretary's termination, irrespective of the vacatur. And because the termination is effective and unreviewable, respondents have no prospect of success in their APA challenges to it.

Notwithstanding the above, respondents—like the district court—attempt to tie the termination and vacatur together to render the termination collaterally reviewable. C.A. Doc. 90-1, at 18-19; see also App., *infra*, 204a. Respondents contend that, if the vacatur is invalid, then the Secretary's effective date for the termination (April 3, 2025) was incorrect. C.A. Doc. 90-1, at 12-15; see also C.A. Doc. 106, at 16-19 (Nov. 10, 2026). That does nothing to escape this Court's holding in *Doe*. A claim that the termination's effective date is incorrect is the exact sort of "subsidiary decision[]" that is part of the unreviewable termination. See *Doe*, 609 U.S. at 344-345. Regardless, any error on this score at most would mean the termination went into effect, by operation of the statute, upon "the expiration of the most recent previous

extension," which occurred at the end of October 2, 2026. 8 U.S.C. 1254a(b)(3)(B) and (d)(3).[4]

In sum, only the Secretary's decision to terminate Venezuela's TPS designation matters at this stage. *Doe* held that district courts may not review APA claims challenging that decision. The government's success on the merits is certain.

**2. The government is also likely to succeed against respondents' APA claims challenging the Secretary's vacatur decision**

Below, respondents spent the bulk of their briefing on the merits arguing that the district court retains jurisdiction to review the Secretary's vacatur decision notwithstanding *Doe*. C.A. Doc. 90-1, at 6-12. As explained, this Court need not reach this issue. Because the Secretary's termination decision completely supersedes the vacatur and is unreviewable, respondents cannot prevail in reinstating Venezuela's TPS designation in any event.

Regardless, even if respondents' challenges to the Secretary's vacatur decision were relevant, they too are meritless. As the government has previously explained, the Secretary has inherent authority to vacate an extension that has not yet taken effect. See 24A1059 Gov't Appl. 20-23; 25A326 Gov't Appl. 19-22. And like "all non-constitutional claims," *Doe*, 609 U.S. at 345, respondents' APA claims challenging the vacatur decision are beyond the district court's power to review. See *Mullin* v. *Friends of the Ruidosa Church*, 2026 WL 3386954, at *2 (U.S. Nov. 9, 2026) (noting that "claims simply alleging that the Executive Branch has exceeded its statutory authority are not constitutional claims" (internal quotation marks omitted)). The TPS statute bars APA challenges to "any determination * * * with respect to the

[4] While the statute requires the Secretary to make a determination "[a]t least 60 days before [the] end" of the designation period, 8 U.S.C. 1254a(b)(3)(A), it does not prohibit the Secretary from making that determination earlier.

designation, or termination or extension of a designation" for TPS. 8 U.S.C. 1254a(b)(5)(A). *Doe* interpreted that language to include "discrete decision[s]" that "relat[e]" to those enumerated actions. 609 U.S. at 339. The Secretary's vacatur of the 2025 Extension is such a "discrete decision" that "relat[ed]" to the "'designation * * * or extension of a designation'" for TPS. *Ibid.* (citations omitted). The vacatur is thus covered by the judicial-review bar. Indeed, the Court already concluded that the government was likely to succeed on this score when it stayed the district court's order the last time. *National TPS Alliance*, 146 S. Ct. at 24. While *Doe* does not expressly address vacatur, it hardly *strengthened* respondents' position.

### B. The Other Factors Support Relief From The District Court's Order

In deciding whether to grant a stay, this Court also considers whether the underlying issues warrant review; whether the applicants likely face irreparable harm; and, in close cases, the balance of equities. See *Hollingsworth*, 558 U.S. at 190. Those factors continue to overwhelmingly support relief.

#### 1. The issues raised by this case warrant this Court's review

As before, the issues raised by this case warrant this Court's review. This Court has repeatedly concluded as much in granting multiple stay applications regarding TPS and in granting plenary review in *Doe.* More broadly, the district court's order impermissibly intrudes on an area of operations that Congress left to the Executive Branch's discretion. Even outside of this exact case, this Court has repeatedly intervened to prevent similar intrusions. See, *e.g.*, *Friends of the Ruidosa Church*, 2026 WL 3386954, at *2; *DHS* v. *D.V.D.*, No. 26A406, 2026 WL 2917860 (Sept. 29, 2026); *Noem* v. *Vasquez Perdomo*, 146 S. Ct. 1 (2025); *Noem* v. *Doe*, 145 S. Ct. 1524 (2025).

Intervention is especially necessary given the court of appeals' disregard yet

again of this Court's prior stay orders. While this Court's "decisions regarding interim relief are not necessarily 'conclusive as to the merits,'" they must "'inform'" like cases. *NIH* v. *American Pub. Health Ass'n*, 145 S. Ct. 2658, 2663-2664 (2025) (Gorsuch, J., concurring in part and dissenting in part) (quoting *Trump* v. *Boyle*, 145 S. Ct. 2653, 2654 (2025)). They should carry particular force when the Court repeatedly grants interim relief on the very same issues in the very same case. And the only "pertinent respect," *Boyle*, 145 S. Ct. at 2654, in which this case has changed is that the government's position has become even stronger after this Court's merits decision in *Doe*. The same Ninth Circuit panel has nonetheless forced the government to return to this Court for a third time and rehash nearly identical arguments without even a hint of justification. This Court should reject that approach.

**2. The equities favor a stay**

The prior stay orders demonstrate how this Court should "exercise its equitable discretion" here. *Boyle*, 145 S. Ct. at 2654. Since then, the government's case for irreparable harm has become even more compelling. The termination decision has been effective for some nineteen months. Allowing the district court order to now spring back into effect, even temporarily, would visit acute harm on the government and the public interest and foment chaos.

Under the TPS statute, the government cannot "remove" aliens with "temporary protected status" while "such status is in effect." 8 U.S.C. 1254a(a)(1)(A). Nor can the government "detain[]" aliens with TPS "on the basis of [their] immigration status." 8 U.S.C. 1254a(d)(4). The government also must "authorize" such aliens "to engage in employment in the United States," and that "[w]ork authorization" must "be effective throughout the period the alien is in temporary protected status." 8 U.S.C. 1254a(a)(1)(B) and (a)(2). Should the district court reinstate Venezuela's

TPS designation now, the government would have to comply with all those requirements as to aliens claiming eligibility under the 2023 Designation.

Even in the interim, the consequences would be extraordinarily harmful and disruptive. This Office is informed that as many as 1800 or so Venezuelan nationals who are currently detained pending their removal proceedings would have to be released under the 2023 Designation. As this Court has frequently recognized, releasing such aliens carries the "risk that [they] may not later be found," *DHS* v. *Thuraissigiam*, 591 U.S. 103, 108 (2020), such that the government might ultimately *never* be able to remove them even after success on appeal. That flight risk is especially acute here. For certain potentially removable aliens, the government may "prescribe[]" "conditions" such as electronic monitoring on released aliens "pending a decision on whether the alien is to be removed." 8 U.S.C. 1226(a). But that authority has not been extended to aliens who *cannot* be removed, as aliens provided TPS are while that designation is in effect. Aliens released now would have every incentive to flee in any interim period before this Court issues another stay.

This Office has also been informed that approximately 332 of those detained aliens covered by the 2023 Designation are currently subject to an executable final order of removal. If the district court order becomes effective again, the government would lose the opportunity to execute the order in the near term, which may require short-term and rushed alterations of removal plans. See *Nken* v. *Holder*, 556 U.S. 418, 436 (2009) (noting that "[t]here is always a public interest in prompt execution of removal orders"). The government would also be obligated to provide work authorizations to a vast population, all to rapidly comply with an order that will almost certainly be once again stayed. The short-term disruption of having to comply with the district court's order, the strong risk that aliens will flee upon release, and the

"irrevocabl[e] expend[iture]" of government funds to undo all of these effects once the government almost certainly prevails on appeal constitute irreparable harm that calls out for immediate relief. *Friends of the Ruidosa Church*, 2026 WL 3386954, at *2 (citation omitted).

Additionally, as before, the district court's complete vacatur of the Secretary's termination decision "improper[ly] intru[des] on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *Trump* v. *CASA, Inc.*, 606 U.S. 831, 859 (2025) (internal quotation marks omitted; brackets in original); see *Maryland* v. *King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). That harm arises in an area that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control." *Fiallo* v. *Bell*, 430 U.S. 787, 792 (1977) (citation omitted). Reinstating Venezuela's 2023 TPS designation and rendering its beneficiaries unremovable harms the government's "compelling interests" in "border security and integrity," *Friends of the Ruidosa Church*, 2026 WL 3386954, at *2 (citation omitted), because it implicates its prerogative to decide the "procedure concerning the admissibility of aliens," *United States ex rel. Knauff* v. *Shaughnessy*, 338 U.S. 537, 542 (1950). Where the government is making "efforts to prioritize stricter enforcement of the immigration laws enacted by Congress," the courts should "decline to step outside [their] constitutionally assigned role to improperly *restrict* reasonable Executive Branch enforcement of the immigration laws." *Vasquez Perdomo*, 146 S. Ct. at 4, 6 (Kavanaugh, J., concurring in the grant of the application for stay). The harm here is particularly pronounced because the Secretary determined that even a six-month extension of TPS would harm the United States' "national security" and "public safety," while also straining police stations, city shelters, and aid services in local communities that had

reached a breaking point. 90 Fed. Reg. at 9043. A sudden reintroduction of Venezuela's TPS designation after it had been eliminated under this Court's stay for over eighteen months would undoubtedly inflict all the same harms.

Even if this were a close case—and it is anything but—this Court's prior stay orders continue to control the analysis on the balance of the equities, which continues to strongly favor the government. See *Boyle*, 145 S. Ct. at 2654. Respondents remain unable to show that the "relative harms" tip in their favor. *National TPS Alliance*, 146 S. Ct. at 24. Below, respondents pointed to the "attendant horrors" of being returned to Venezuela, "separation" from family members, third-country removal, and loss of employment authorization as their asserted harms. C.A. Doc. 90-1, at 20-21. Those are the exact harms that this Court has already considered and found wanting. See 24A1059 Resp. Opp. 1-2 (May 8, 2025) (arguing that stay will cause former TPS holders to "lose the right to live and work in this country" and "requir[e] them to return" to a "dangerous" country); 25A326 Resp. Opp. 4-5 (Sept. 29, 2025) (arguing that stay will cause family separation, job loss, detention, and "deport[ation] to a country that remains extremely unsafe"). With no "pertinent" change in the balance—beyond more acute immediate harms on the government's side of the ledger—there is no reason for this Court to "exercise its equitable discretion" any differently now. *Boyle*, 145 S. Ct. at 2654.

* * *

This is a paradigmatic case for an immediate administrative stay, as well as an ultimate stay of the district court's judgment pending appeal. The government is virtually certain to prevail on appeal, and allowing the injunction to go into effect at this late date will have disastrous consequences.

## CONCLUSION

This Court should stay the judgment of the United States District Court for the Northern District of California pending the resolution of the government's appeal to the United States Court of Appeals for the Ninth Circuit and any proceedings in this Court. The Court should also enter an administrative stay of the district court's judgment pending its consideration of this application

Respectfully submitted.

D. JOHN SAUER
*Solicitor General*

NOVEMBER 2026